# DECLARATION OF HON. SARAH M. BURR

I, Sarah M. Burr, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

## I.   Background

1. I was the Assistant Chief Immigration Judge in charge of the New York City Immigration Court from 2006 to 2011. At that time, the New York City Immigration Court had two locations. At 26 Federal Plaza in New York City, the court hears non-detained removal cases. At 201 Varick Street in New York City, the court hears detained removal cases. During my tenure as Assistant Chief Immigration Judge, I served under the nation's Chief Immigration Judge and I was the highest-ranking official from the Executive Office of Immigration Review ("EOIR") overseeing the administration of the New York City Immigration Courts.

2. I graduated from Benjamin N. Cardozo School of Law in 1980. After graduation, I clerked for Magistrate Judge John Caden of the Eastern District of New York. I then worked at the Legal Aid Society ("LAS") for fourteen years. From 1981 through 1986, I worked as a Staff Attorney in LAS' Criminal Appeals Bureau. From 1986 through 1990, I worked as a Senior Trial Attorney in LAS' Criminal Defense Division. For my final four years at LAS, I worked as an Immigration Specialist in the Criminal Defense Division practicing a hybrid of criminal and immigration law.

3. I was appointed by the U.S. Attorney General Janet Reno as an Immigration Judge to the New York City Immigration Court in February of 1994. I served as a judge on that court for approximately nineteen years until I retired in 2012. For six of those years, from 2006 to the end of 2012, I also served as Assistant Chief Immigration Judge in charge of the New York City Immigration Courts. Since retiring, I continue to be in contact with immigration judges currently on the bench, and stay up-to-date on recent developments through public reporting and reviewing developments in the law and policy.

4. As an Immigration Judge I served primarily on the non-detained component of the New York City Immigration Court, located at 26 Federal Plaza. In that capacity, I was responsible for presiding over an active docket of removal proceedings. Over my years on the bench I presided over many thousands of cases covering the full range of issues arising in such proceedings. At times, I was also detailed to the detained component of the New York City Immigration Court, located at 201 Varick Street, to courts in other states and to various New York State prisons for institutional hearings.

1

5. There is a single Chief Immigration Judge for EOIR. At the time of my service, each immigration court across the nation had an Assistant Chief Immigration Judge overseeing the operation of that court. As Assistant Chief Immigration Judge for the New York City Immigration Court, I supervised over thirty immigration judges, and two court administrators. I oversaw the administration of the court on the non-detained docket at 26 Federal Plaza, and on the detained docket at 201 Varick Street, as well as cases heard in certain New York State penal institutions as part of the Institutional Hearing Program ("IHP"). The IHP is a program that allows removal proceedings to proceed while individuals are serving sentences in state penal institutions.

6. Additionally, I coordinated with the Office of the Chief Immigration Judge on court policy and procedures, monitored judge performance, oversaw hiring and training of new judges, and carried a limited docket of cases. I also coordinated outreach to critical stakeholders including the U.S. Immigration Customs Enforcement agency ("ICE"), the U.S. Court of Appeals for the Second Circuit, the private bar, nonprofit service providers, and potential pro bono attorneys.

7. I provide this declaration based on my personal knowledge and experience, review of publicly available information, and review of the documents referenced below.

8. Based on my experience, I have been asked to assess the Department of Justice's ("DOJ") new guidance instructing immigration judges ("IJ") to allow the government to orally move to dismiss noncitizens' removal proceedings, and the government's new policy of arresting noncitizens who appear for their hearings in immigration court.

9. I have reviewed the following documents related to these policies:

    - Email from Kevin W. Riley, Regional Deputy Chief Immigration Judge to all Assistant Chief Immigration Judges ("ACIJ") Re: "Guidance on Case Adjudication" (May 30, 2025) (hereinafter "ACIJ Guidance"), attached as **Exhibit A.**

    - EOIR Operating Policies and Procedures Memorandum ("OPPM") 25-06 Re: Rescind and Cancel OPPM 23-01 (Jan. 28, 2025) (hereinafter "2025 EOIR Enforcement Guidance"), *available at* https://www.justice.gov/eoir/media/1387301/dl?inline.

    - EOIR OPPM 23-01: Enforcement Actions in or Near OCIJ Space (Dec. 11, 2023) (hereinafter "2023 EOIR Enforcement Guidance"), attached as **Exhibit B.**

- EOIR OPPM No. 96-6: Arrests by INS Officers In or Near Immigration Court Facilities (Sept. 30, 1996) (hereinafter "1996 EOIR Enforcement Guidance"), attached as **Exhibit C.**

- ICE Policy No. 11072.4, Civil Immigration Enforcement Actions In or Near Courthouses (May 27, 2025) (hereinafter, "2025 DHS Guidance"), *available at* https://www.ice.gov/doclib/foia/policy/11072.4.pdf.

- ICE Policy No. 11072.3, Interim Guidance: Civil Immigration Enforcement Actions in or near Courthouses (Jan. 21, 2025) (hereinafter "2025 DHS Interim Guidance"), *available at* https://www.ice.gov/doclib/foia/policy/11072.3_CivilImmEnfActionsCourthouses_01.21.2025.pdf.

- Memorandum for U.S. Immigration and Customs Enforcement (ICE) and U.S. Customs and Border Protection (CBP) Re: Civil Immigration Enforcement Actions in or near Courthouses (Apr. 27, 2021) (hereinafter, "2021 DHS Guidance"), *available at* https://www.ice.gov/sites/default/files/documents/ciEnforcementActionsCourthouses2.pdf.

10. I am also familiar with ICE's new policy of arresting individuals in immigration court based on public reporting.

## II. The 2025 ACIJ Guidance

11. On May 30, 2025, Regional Deputy Chief Immigration Judge Kevin Riley sent an email to all ACIJs informing them of new guidance on case adjudication. The email stated that EOIR "has experienced significant changes in its caseload" over the last few months and, as a result, there have been "several developments with non-detained cases in the past few weeks." The email specified two developments: (1) "DHS is carrying out enforcement actions in EOIR space" and (2) "DHS attorneys have moved to dismiss cases . . . currently pending in court."

12. As a result of these developments, the email provided the following guidance to ACIJs to "ensure the expeditious adjudication of cases:" (1) Cases should not be reset for oral decision and instead oral decisions must be completed on the same day that hearing testimony and arguments are concluded. If a case is continued after testimony and arguments without issuance of an oral decision, then a written decision must issue. (2) DHS motions to dismiss may be made orally and decided from the bench, without the

requirement of additional documentation or briefing. (3) IJs should familiarize themselves with Policy Memo 25-06 (the 2025 EOIR Enforcement Guidance), which contains guidance on DHS enforcement actions at or near EOIR facilities.

13. The email additionally provides "generally helpful" information regarding DHS motions to dismiss, including the regulatory authority on which such motions are based, the eligibility of some respondents to be placed in Expedited Removal ("ER") proceedings, and the procedures and consequences of ER proceedings.

14. The new Guidance departs significantly from agency regulations and the EOIR practice manual regarding filings such as motions to dismiss. When the government makes a motion to dismiss a respondent's removal proceeding and seeks a ruling during the hearing, they must make such motion in writing and 15 days in advance of the hearing. Once a motion is filed, the respondent is given ten days to respond. The IJ may order the submission of additional documentation or evidence in support of the government's motion to dismiss, and may hold a hearing on the matter. This process both provides the government an opportunity to explain its basis for dismissal, and ensures that the respondent has notice of the basis for the government's motion and an opportunity to respond.

15. The new guidance dispenses with many of these procedural safeguards to prioritize expediency over fairness and accuracy. Due process extends to all people in the United States, whether present lawfully or unlawfully. Fundamental fairness is the lynchpin of due process. With respect to motion practice, that involves notice of the motion, an opportunity to respond, and a reasoned decision by the judge. None of those safeguards are present under the current guidance.

16. I am aware through public reporting and documentation that respondents are given no advance notice of dismissal. They are learning of the government's motion to dismiss for the first time when they show up to court for their hearings.

17. In many cases, the government is not explaining the reasons for its motion, which is to dismiss regular removal proceedings and place respondents in expedited removal. The Guidance informs IJs that individuals who were not "continuously present for 2 years before inadmissibility was determined . . ." may be placed in expedited removal, and explains that such individuals are subject to mandatory detention and can only obtain review of any asylum claims through the credible fear process.

18. Regular removal proceedings have a number of procedural safeguards. 8 C.F.R. §§ 1003.1(b), 1240.15. They are conducted before an IJ; respondents may be represented by

counsel and have the right to examine the evidence against them, present their own evidence, and cross-examine government witnesses. Decisions made by an IJ can be appealed to the Board of Immigration Appeals (BIA) and then to the Federal Court of Appeals for the judicial circuit where removal proceedings terminate.

19. Expedited removal proceedings dispense with many of these safeguards. Noncitizens subject to Expedited Removal are ordered removed by an immigration officer without further review, and the only exception to this rule is if they indicate an intention to apply for asylum, pass their credible fear interview, and are placed in regular removal proceedings. If the asylum officer determines that they failed to establish credible fear, they may seek review from an IJ as the final avenue of review.

20. The Guidance cites 8 C.F.R. § 239.2(a)(7) as a basis for dismissal, but that regulation has traditionally been interpreted to require a showing of "changed circumstances" specific to a respondent's case. Examples of changed circumstances in a respondent's case that could lead to dismissal would include if person naturalized, or successfully adjusted their status while removal proceedings were pending. The Guidance, on the other hand, seems to suggest that general eligibility for placement in expedited removal satisfies the text of the regulation. But this contradicts the historical practice of immigration judges in construing the regulation. Moreover, motions to terminate proceedings (which are made by respondents) and dismiss proceedings (which are made by the government) are generally uncommon, and it is especially rare for the government to seek dismissal.

21. Under the Guidance, once an oral motion to dismiss a respondent's regular removal proceedings is made, the respondent is not provided an opportunity to respond; in fact, the Guidance instructs IJs that "a 10-day response period is not required."

22. The Guidance informs IJs that they can issue a decision on the same day from the bench, and instructs them that—if they choose to do so—they must issue oral decisions on the same day that the motion to dismiss is made. This gives judges and respondents' attorneys little or no time to consider a last-minute motion by the government, let alone probe the government's reasons for dismissal or seek a meaningful response from respondents. This is not due process by any stretch of imagination. It also places an unnecessary burden on immigration judges and intrudes on judges' management of their busy dockets and impedes thoughtful consideration of the issues.

### III.     The 1996, 2023, and 2025 EOIR Courthouse Enforcement Guidance

23. EOIR is housed within the U.S. Department of Justice. The Department of Homeland Security ("DHS") is a separate agency that houses ICE. EOIR and DHS operate independently of each other, but there are situations when the boundaries of each agency's authority must be delineated. Such is the case here regarding the presence of enforcement personnel within the courthouse parameters. This issue, which involves guidance by EOIR to the judges, and guidance to ICE agents by DHS, has been the subject of a number of EOIR memoranda over the years. While the EOIR memoranda do not create new policy, they reflect EOIR's understanding of DHS guidance regarding courthouse arrests. Historically, EOIR and DHS have worked together to ensure the smooth functioning of the courts.

24. In September 1996, the Office of the Chief Immigration Judge ("OCIJ") issued a Memorandum of Understanding ("MOU") between the Immigration and Naturalization Service ("INS")[1] and EOIR that set forth guidelines relating to arrests at EOIR facilities. The MOU was responding to the "chilling effect" that the presence of INS officers in courtrooms can have on the conduct of the hearing, and a new INS policy permitting arrests in courtrooms. This was the MOU in effect during my tenure as an immigration judge and as an ACIJ.

25. The MOU sought to balance the authority of IJs to control their courtrooms with the INS's obligation to promptly remove noncitizens with final orders. In striking this balance, it permitted IJs to remove INS officers from their courtrooms on a case-by-case basis if they determine that "the presence of the officer is having a chilling effect on the respondent's ability to present his or her case." Any such removals were to be followed up with documentation to supervisory officials. 1996 EOIR Guidance at 3.

26. The MOU barred arrests in the courtroom "absent exigent circumstances," and required INS to "make its best efforts" to inform a courtroom administrator when an officer will be present to make an arrest *outside* the courtroom. It also required INS officers to provide security assistance to the immigration court when requested, if an arrest near the courtroom poses immediate safety risks to the IJ or court staff. 1996 EOIR Guidance at 3.

27. On December 11, 2023, EOIR rescinded and superseded the 1996 MOU with the 2023 EOIR Enforcement Guidance.

28. The 2023 Guidance recognized the April 27, 2021 Memo issued by ICE and CBP ("2021 DHS Guidance") and concurred with its policies of "prohibiting DHS officials from

---

[1] This was the predecessor agency to U.S. Immigrations and Customs Enforcement ("ICE").

carrying out enforcement actions in or near [Office of the Chief Immigration Judge (OCIJ)] space" because it would: "inevitably produce a 'chilling effect' on noncitizens who appear before our immigration courts"; "disincentivize noncitizens from appearing for their hearings, which in turn would create inefficiencies for all parties involved and hinder the ability of OCIJ to carry out the mission of the agency"; "create safety risks for those who may be present during such enforcement actions, including children and adults appearing for hearings, OCIJ employees, and other building or facilities personnel"; and "help[] to reinforce the separate and distinct roles of DHS and [EOIR] in the eyes of the public." 2023 EOIR Enforcement Guidance at 2. The 2023 EOIR Guidance recognizes the same exceptions to the prohibition on courthouse arrests that the 2021 DHS Guidance does. *Id*. at 2-3.

29. The 2023 EOIR Guidance constituted an expansion of the 1996 MOU because it recognized and concurred with ICE's broader definition of "OCIJ space" to include both courtrooms and all other areas of court environs. *Id*. at 1.

30. On January 28, 2025, EOIR issued new guidance rescinding the 2023 EOIR Enforcement Guidance. The 2025 EOIR Guidance departs dramatically from the 1996 and 2023 EOIR Guidance. Rather than attempt to strike a balance between safety, access to justice, and enforcement needs—like the previous guidance—the 2025 Enforcement Guidance adopts a blanket policy permitting courthouse enforcement actions.

31. In justifying the departure from previous guidance, the 2025 EOIR Enforcement Guidance cites to the 2025 DHS Interim Guidance, which in turn allows ICE to "apprehend, arrest, interview or search" noncitizens "in or near courthouses . . . where such action is not precluded by laws imposed by the jurisdiction in which the enforcement action will take place." 2025 DHS Interim Guidance at 2. It also allows for courthouse enforcement action against "family members or friends accompanying the targeted" individual on a case-by-case basis. *Id*. The final 2025 DHS Guidance is substantially similar to the Interim Guidance, except that it does not limit courthouse arrests to instances where such action is not prohibited by local laws. 2025 DHS Guidance at 1–2.

32. The 2025 EOIR Guidance disregards the chilling effect of enforcement actions on noncitizens appearing for immigration hearings, speculates that courthouse enforcement will not deter individuals from attending their hearings, downplays the safety risks inherent in widespread courthouse arrests, and ignores the separation between DHS's and EOIR's roles. 2025 EOIR Guidance at 2.

**IV.     The Unprecedented Expansion of Enforcement Actions at Immigration Courthouses**

33. For the 17 years that I served as an Immigration Judge, I do not recall ever having an ICE agent arrest a respondent in my courtroom or in the nearby hallway. As the ACIJ from 2006 until 2011, I was never informed by a Court Administrator of a planned ICE arrest inside or near a courtroom at 26 Federal Plaza. Immigration Judges heard and decided cases and ICE agents went about their business apart from court space. The current guidance necessarily involves the immigration court in the business of enforcement, and that is a perversion of the administration of justice, as well as a safety concern.

34. The fear of being arrested at the courthouse will deter people from attending their hearings. Not only does this increase the risk that they will be issued in absentia removal orders, but it will also impede the orderly administration of immigration judges' dockets, waste judicial resources in preparing for calendared hearings for which a respondent does not appear, and impede the ability of IJs to carry out one of the key purposes of the INA: to allow for the meaningful participation in removal proceedings by respondents through the procedures laid out by Congress and the Executive.

35. The Immigration Court at 26 Federal Plaza is a busy place- the hallways and courtrooms can be crowded, and they often are. This is no place for enforcement actions, where respondents, their families, witnesses and attorneys are milling about. Additionally, there are court personnel, DHS attorneys, interpreters, law clerks, often law school students observing. Arresting respondents in these spaces, often with their families and children nearby, is not only traumatic but also poses grave safety risks for targeted individuals, their families, and other bystanders. Not only do such arrests increase the risk of injury to bystanders, but this risk is exacerbated by the tactics ICE agents are using by wearing masks, wearing plainclothes, and often not carrying visible markers or identification as law enforcement. In such circumstances, people may not be aware that they are being apprehended by government officials and instead believe that they are being kidnapped or abducted by private parties. A courtroom is supposed to be a calm place where justice is dispensed, not a front row seat to people being arrested and families being separated. Whatever the "policy" reason for this practice, it is misguided and dangerous.

Date: August 5, 2025                                                             _____

                                                                                                   Hon. Sarah M. Burr

# EXHIBIT A

From: Riley, Kevin W. (EOIR) <Kevin.W.Riley@usdoj.gov>
Sent: Friday, May 30, 2025 5:43 PM
To: EOIR-OCIJ All of ACIJs <EOIR-ocij.all.of.acijs@doj365.onmicrosoft.com>
Cc: Taylor, Philip P. (EOIR) <Philip.P.Taylor@usdoj.gov>; Riley, Teresa (EOIR) <Teresa.Riley2@usdoj.gov>; Little, Anna C. (EOIR) - C.Little@usdoj.gov>
Subject: Guidance on Case Adjudication

ACIJs –

During the past few months, EOIR has experienced significant changes in its caseload. EOIR's detained caseload has greatly increased in the past few months, and to meet the demands of the increasing workload on the detained dockets, we have re-emphasized goals for detained dockets and reallocated judges from non-detained dockets to detained dockets. There have also been several developments with non-detained cases in the past few weeks. DHS is carrying out enforcement actions in or near EOIR space. Further, DHS attorneys have moved to dismiss cases that are currently pending in court. Given the recent developments the following guidance is provided to ensure the expeditious adjudication of cases:

1. Cases should not be reset for Oral Decision. Oral Decisions must be completed within the same hearing slot on the day testimony and arguments are concluded. If a case is continued after testimony and arguments are concluded without issuance of an oral decision, then a written decision must be issued.

2. DHS Motions to Dismiss may be made orally and decided from the bench. No additional documentation or briefing is required.

The following information regarding DHS Motions to Dismiss may be generally helpful.

The Motion to Dismiss is regulatory based upon INA 239.2(a)(6) *[NTA improvidently issued]* or INA 239.2(a)(7) *[circumstances have changed to such an extent that continuation is no longer in the best interest of the government]*. Generally, if DHS has met the regulatory burden, the oral motion to dismiss may be granted. A 10-day response period is not required.

Respondents who were not continuously present for 2 years before inadmissibility was determined by an immigration officer under 212(a)(6) or 212(a)(7) of the INA may be placed in Expedited Removal (ER) Proceedings under INA 235.3 at the discretion of the AG. Expedited Removal Orders ( ERO) carry a 5y bar to reentry to the US

Respondents in expedited removal proceedings are subject to mandatory detention. Fear claims are reviewed by USCIS via credible fear interviews. Negative credible fear findings are subject to Credible Fear Review before the court. If negative credible fear determinations are affirmed by the court, Respondents are subject to the expedited removal order of the immigration officer. If negative credible fear determinations are vacated by the court, Respondents are placed in 240 Proceedings. Reasonable Fear Determinations, Reasonable Fear Review and Withholding Only Proceedings involve aliens subject to expedited removal under section 238(b) *(aggravated felons)* and aliens subject to reinstatement of prior orders of removal under 241(a)(5) who have a reasonable fear of persecution and torture

3. DHS Enforcement actions at or near EOIR facilities: Please ensure that you, the Judges under your supervisions and your administrative staff are familiar with Policy Memo 25-06, which is found here. If you encounter any unusual circumstances with an enforcement action, please reach out to your RDCIJ to discuss.

Please ensure your judges are aware of the above guidance. If you have any questions, please contact your supervisor to discuss.

Thank you for all that you do.

Kevin Riley & Philip Taylor

Regional Deputy Chief Immigration Judges (Acting)

# EXHIBIT B



U.S. Department of Justice
Executive Office for Immigration Review
Office of the Chief Immigration Judge

**MEMORANDUM**

| | |
|---|---|
| TO: | All Assistant Chief Immigration Judges |
| | All Immigration Judges |
| | All Court Administrators |
| | All Court Personnel |
| FROM: | Sheila McNulty  *SHEILA MCNULTY   Digitally signed by SHEILA MCNULTY   Date: 2023.12.11 16:16:58 -06'00'* |
| | Chief Immigration Judge |
| DATE: | December 11, 2023 |
| RECISSION: | Operating Policies and Procedures Memorandum 96-6, *Arrests by INS Officers In or Near Immigration Court Facilities* (September 30, 1996) |
| SUBJECT: | **Operating Policies and Procedures Memorandum 23-01: Enforcement Actions in or Near OCIJ Space** |

### I.  Introduction

This Operating Policies and Procedures Memorandum ("OPPM") is intended to provide updated guidance regarding enforcement actions by the Department of Homeland Security ("DHS") in or near Office of the Chief Immigration Judge ("OCIJ") space. This OPPM supersedes and rescinds OPPM 96-6, *Arrests by INS Officers in or Near Immigration Court Facilities*, dated September 30, 1996.

### II.  Definitions

For the purposes of this memorandum, the term "OCIJ space" refers to OCIJ offices, conference rooms, pro bono rooms, courtrooms, hallways, waiting areas, restrooms, elevator banks, or any other space on any floor of a federal or commercial building where OCIJ conducts business. "Near" OCIJ space means in the close vicinity of OCIJ space, including the entrance and exit of the building in which OCIJ conducts business, as well as adjoining or related areas such as adjacent parking lots or transportation points (e.g., a bus stop directly outside of the building). "Near" OCIJ space does not include adjacent buildings or structures that are not part of OCIJ space or otherwise are not used for court-related business.

1

The term "enforcement action" refers to law enforcement activities carried out by DHS personnel, including personnel from Immigration and Customs Enforcement ("ICE") and Customs and Border Protection ("CBP"). Examples of enforcement actions include civil apprehensions, service of subpoenas, searches, seizures, interviews, and surveillance. The term "enforcement action" also includes attendance at immigration court hearings for the purpose of carrying out one of the actions described above. The term "enforcement action" does not include actions such as appearing on behalf of DHS before an immigration court, appearing as a witness before the court, or collecting or requesting records from court offices pursuant to established policies.

### III.  Prohibition on Enforcement Actions in or Near OCIJ Space

At the outset, OCIJ recognizes DHS's authority and responsibility to enforce the immigration laws of the United States, including, where appropriate, taking custody of noncitizens who have been ordered removed from the United States. In April 2021, ICE and CBP jointly issued a memorandum providing updated guidance regarding civil enforcement actions in or near courthouses, including immigration courts ("DHS Memorandum").[1] Pursuant to the DHS Memorandum, civil immigration enforcement actions may not be taken in or near an immigration court except in several limited circumstances described in Section IV, below.

For the following reasons, OCIJ concurs with the policies outlined in the DHS Memorandum prohibiting DHS officials from carrying out enforcement actions in or near OCIJ space. First, permitting enforcement actions in or near OCIJ space would inevitably produce a "chilling effect" on noncitizens who appear before our immigration courts. *See* DHS Memorandum ("Executing civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses and, as a result, impair the fair administration of justice."). Second, permitting enforcement actions in or near OCIJ space would disincentivize noncitizens from appearing for their hearings, which in turn would create inefficiencies for all parties involved and hinder the ability of OCIJ to carry out the mission of the agency. Third, allowing enforcement actions to take place in or near OCIJ space may create safety risks for those who may be present during such enforcement actions, including children and adults appearing for hearings, OCIJ employees, and other building or facilities personnel. Lastly, prohibiting enforcement actions from occurring in or near OCIJ space helps to reinforce the separate and distinct roles of DHS and the Executive Office for Immigration Review ("EOIR") in the eyes of the public.

### IV.  Exceptions

The guidance outlined in this memorandum does not apply to detained immigration court settings. Additionally, OCIJ recognizes that DHS may be required to effectuate enforcement actions in or near OCIJ space under limited exigent circumstances. Such exigent circumstances include situations involving: (1) a threat to national security; (2) imminent risk of death, violence, or physical harm to any person; (3) hot pursuit of an individual who poses a public safety threat; (4) imminent risk that evidence material to a criminal case will be destroyed; and (5) instances in

---

[1] Joint Memorandum by Tae Johnson, Acting Director, ICE, and Troy Miller, Acting Commissioner, CBP, *Civil Immigration Enforcement Actions in or near Courthouses* (April 27, 2021), available at https://www.cbp.gov/sites/default/files/assets/documents/2021-Apr/Enforcement-Actions-in-Courthouses-04-26-21.pdf.

2

which a safe alternative location for the enforcement action does not exist. When possible, DHS should communicate with OCIJ prior to effectuating such enforcement actions in or near OCIJ space and should provide security assistance as needed. Additionally, to the fullest extent possible, enforcement actions taken in or near OCIJ space under these exigent circumstances should be conducted: (1) in a nonpublic area of OCIJ space, outside of public view; (2) in collaboration with court security personnel; (3) utilizing the court's non-public entrances and exits; and (4) at the conclusion of the judicial proceeding that brought the individual to the court.

### V.     Reporting of Enforcement Actions

OCIJ employees who observe enforcement actions being carried out in or near OCIJ space should inform the Assistant Chief Immigration Judge and Court Administrator at their respective court or adjudication center within twenty-four (24) hours of the incident.

# EXHIBIT C



U.S. Department of Justice

Executive Office for Immigration Review

*Office of the Chief Immigration Judge*

---

Chief Immigration Judge

*5107 Leesburg Pike, Suite 2545*
*Falls Church, Virginia 22041*

September 30, 1996

## MEMORANDUM

TO:        All Assistant Chief Immigration Judges
All Immigration Judges
All Court Administrators
All Court Personnel

FROM:    The Office of the Chief Immigration Judge

SUBJECT:  Operating Policy and Procedures Memorandum No. 96-6:
<u>Arrests by INS Officers In or Near Immigration Court Facilities</u>

      Pursuant to the concerns raised by several Immigration Judges, I have been negotiating with the General Counsel for the Immigration and Naturalization Service (INS) concerning the presence of INS officers in our courtrooms during non-detained hearings. There have been several recent instances where the presence of INS officers in the courtroom has produced a "chilling" effect on the conduct of the hearing. In addition, the INS's newly-instituted policy of arresting individuals denied relief at the conclusion of the individual calendar hearing, a policy fully supported by the Attorney General, necessitated an agreement between the two agencies.

      Attached hereto and incorporated herein is a Memorandum of Understanding (MOU) between the INS and the Immigration Courts concerning the presence of INS officers in non-detained hearings. Fundamental to this MOU is paragraph 1 -- that INS recognizes the authority of Immigration Judges to control their courtrooms. That authority includes excluding any person, including an INS officer, on a case-by-case basis that the judges feels is detrimental to the conduct of the proceeding. There will be no arrests in the courtroom, absent exigent circumstances. <u>See</u> MOU, paragraph 3.

      Nevertheless, we must be mindful that the INS has an obligation to remove from the United States aliens against whom final orders of exclusion or deportation are entered. This may require arresting such aliens in close proximity to our courtrooms. The MOU includes specific safeguards to ensure the safety of court personnel and to minimize disruption to the court process.

      I expect full compliance with the reporting requirements in cases where INS officers are

removed. The judge should report an incident, in writing, to his or her Assistant Chief Immigration Judge within twenty-four (24) hours. See MOU paragraph 2. This may be accomplished by facsimile or via e-mail. Similarly, the Court Administrator should use the same procedure to report violent incidents. See MOU, paragraph 7.

It is the primary responsibility of the INS, and not the Immigration Court, to inform friends and family of the arrested person what is occurring. The notice referred to in paragraph 5 of the MOU will be developed in the near future and will be made available for distribution, where necessary, in each courtroom.

I am confident that adherence to this OPPM and MOU will resolve any future conflicts relating to this issue. If you have any questions, please contact your supervisor.

Michael J. Creppy
Chief Immigration Judge

Attachment

# MEMORANDUM OF UNDERSTANDING

## I. Preamble

This memorandum of understanding between the Immigration and Naturalization Service (INS) and the Executive Office for Immigration Review (EOIR) sets forth guidelines relating to the exercise of arrest authority by INS officers in or near EOIR court facilities.

## II. Terms

1. INS recognizes the authority of the immigration judge to control his or her courtroom. The immigration judge has the authority to take action he or she deems necessary in order to conduct a fair hearing. This includes the authority to remove anyone from the courtroom who is out of order or disrespectful to the court, or whose presence may be detrimental to the conduct of a fair hearing.

2. EOIR recognizes the authority and responsibility of INS officers to enforce the immigration laws, including, where appropriate, taking custody of individuals believed to be unlawfully in the United States. Accordingly, there will be no prohibition against the presence of INS officers in the courtroom during part or all of the immigration judge hearing unless the judge specifically determines, on a case-by-case basis, that the presence of the officer is having a chilling effect on the respondent's ability to present his or her case. Any removal of an INS officer from a courtroom will be documented and forwarded by the immigration judge to the Office of the Chief Immigration Judge within 24 hours. The INS attorney at the hearing will also report the removal promptly to the Office of the General Counsel.

3. There will be no arrests in the courtroom, except in exigent circumstances. INS will make its best efforts to inform the court administrator when an officer will be present for the possible purpose of making an arrest outside the courtroom.

4. Duly trained and certified INS officers may be armed while in the courtroom in their official capacities, but may not unnecessarily display their weapons.

5. INS and EOIR will jointly develop a written statement that can be given to friends and family members concerning what to do if an alien they are accompanying is arrested by the INS after an immigration hearing. The statement, in English and Spanish, will make it clear that all questions with regard to an arrest should be raised to the INS and not to the immigration judge or immigration court. It will also provide an INS telephone number which friends and family may call for information concerning an arrested alien. Small handbill sized versions of this statement will be carried by INS officers and by officials or employees of the court, and where feasible will be provided to friends and family at the time of arrest if immediate questions arise.

6. If an arrest near the courtroom gives rise to immediate risks to the safety of the immigration judge or court staff, the INS officers involved will provide security assistance to the immigration court when requested.

7. Any violent incidents that occur as a result of an INS arrest at the court shall be reported by the court administrator to the Office of the Chief Immigration Judge, and by the INS attorney to the Office of the General Counsel, within 24 hours of the incident.

8. The INS General Counsel and the Chief Immigration Judge will meet and evaluate this agreement in 90 days to determine whether modification is necessary.

David A. Martin
General Counsel
Immigration and Naturalization Service

Date: Sept. 19, 1996

Michael J. Creppy
Chief Immigration Judge
Executive Office for Immigration Review

Date: Sept. 24, 1996