## DECLARATION OF ABDOUL GADIRI BAH, MEMBER OF THE DOOR

I, Abdoul Gadiri Bah, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am originally from Guinea. I arrived in the United States on or around January 31, 2024 when I was 18 years old.

2. In June 2024, I filed an application for asylum based on past persecution I experienced due to my ethnicity and political opinions. I was detained by the government multiple times in Guinea while attending protests and subjected to torture and ethnic insults. I fear future persecution in Guinea based on my ethnicity and political opinions.

3. I also filed for Special Immigrant Juvenile Status (SIJS) in or around November 2025, based on abandonment and neglect by both of my parents.

4. I have been a member of The Door since July 2024.

5. Before I was detained, I had a good life in New York. I lived in Brooklyn and worked doing deliveries to support myself. I enjoyed playing soccer and I played every Monday and Tuesday with my friends.

6. The thing that is most important to me is my education, so I focused on my studies. I took English classes at The Door so I could prepare to return to school to earn my high school diploma in the future.

7. I have never been arrested or had any involvement with the criminal justice system in the United States.

8. My first time going to immigration court was on May 29, 2025. I was scheduled for a Master Calendar Hearing at the 290 Broadway immigration courthouse. I

1

wasn't scared to go to court. I also wasn't scared of being arrested because I didn't think that I would be arrested just for going to my immigration hearing.

9. When I first entered the United States, I was temporarily detained and then released. When I was released, they told me that I needed to go to immigration court to continue my immigration process and explain why I shouldn't be deported. The officers gave me a document stating this, too. Because of my release and the instructions and document I received, I believed that I would be able to go through my immigration court case while living free in New York.

10. I told my friends and my legal guardian, my cousin Alsaini, that I had court, but I didn't make any plans for what I would do if I couldn't return home after court. For example, I left all of my things in the shelter where I was living, and I didn't tell my English teacher that I might not come back. I fully expected that I would return from court and continue my daily life.

11. For example, I had been in an accident in March 2025 and was still receiving treatment on the date of my hearing. I didn't bring any of my medication with me to the hearing. I just left it at home thinking that I would return. I also had scheduled a follow-up appointment with my doctor to see if I needed to have surgery because of my accident, or if my course of treatment was working well.

12. So, on May 29, 2025, I went to my scheduled hearing at the 290 Broadway immigration court. When it was time for my hearing, I sat in front of the judge and answered his questions about my case. It only took a few minutes. Then, he ended the hearing and told me that I could go home, and that I would come back in September 2026 for my next hearing.

13. I left the courtroom and traveled downstairs in an elevator. Once I exited the elevator, ICE agents arrested me. The agents who arrested me wore masks and did not identify themselves. I only understood they were ICE agents after I had been detained.

14. I was not prepared to be arrested because I had many friends who had previously attended hearings for their immigration cases without any problems, and because I haven't had any trouble with the police in the United States. I just kept to myself, focused on my studies, my work, and my friends and community.

15. I was detained at 26 Federal Plaza for two days following my arrest. It was horrible there. We had to sleep on the floor and weren't given any blankets. They brought us food only once or twice a day. Everything was disgusting, and there was no fresh air. After my two days at 26 Federal Plaza, they sent me to New Jersey for just one day and then they sent me back to 26 Federal Plaza for two more days. Then, they put me on a flight to Louisiana, where I have been ever since.

16. In Louisiana, we suffer. The beds are so uncomfortable, it's hard to sleep, and the food is so bad that it's hard to eat. When you're sick, the only medications they will give you are some Tylenol or Ibuprofen. I had to have stomach surgery once I moved to the United States, and I was also in an accident in March 2025. Because of these medical needs, I sometimes need better or stronger medications than what they give me here, like the ones I was taking based on my doctor's orders prior to my arrest. I also can't access other more substantial medical care here. For example, my legal guardian Alsaini spoke with my doctor to discuss my health

after I was detained. My doctor told Alsaini that I would need to have surgery, but I haven't been able to undergo any medical procedures while I've been detained. Instead, I just suffer.

17. I lost so many things after being arrested. I can't go to English classes anymore and I've stopped making progress in my learning. I can't work. I can't play sports. I can't see my friends or loved ones.

18. I especially miss my legal guardian, Alsaini. He's my cousin and he does everything to support me. He bought me clothes and food, he took me to the DMV so I could take my learner's permit test, and he's always been there for me to give me advice and support. I was in an accident in New York and he took me to the hospital and made sure I got the care I needed. He was even the one who told me about The Door and encouraged me to become a member. Now, I can't see him or easily contact him.

19. Instead of going to school, working, and spending time with my friends, I just sit in my cell. I don't do anything anymore – I lost everything.

20. I often ask myself why this happened to me. I didn't cause any problems in New York, and I did everything I could to contribute to my community and to make a good life for myself here.

21. I'm terrified of having to return to Guinea, and I'm even more scared now because an Immigration Judge in Louisiana dismissed my asylum case and gave me a removal order. If I went back to Guinea, there would be no hope for me.

22. Life is so hard for me here in Louisiana. I'm losing hope. There are days when I want to kill myself. It's hard to keep living like this. All I want is the chance to finish my asylum and SIJS cases and to go back to my life in New York.

23. I reviewed a copy of this declaration in French, a language that I understand, before signing, and I understand its contents. The French translation that I reviewed is attached as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in Oakdale, Louisiana.

_____
Abdoul Gadiri Bah

Executed this 2 day of December, 2025

# Exhibit A

## DÉCLARATION D'ABDOUL GADIRI BAH, MEMBRE DE THE DOOR

Je soussigné, Abdoul Gadiri Bah, en vertu de l'article 28 U.S.C. § 1746, déclare ce qui suit :

1. Je suis originaire de Guinée. Je suis arrivé aux États-Unis autour du 31 janvier 2024, alors que j'avais 18 ans.

2. En juin 2024, j'ai déposé une demande d'asile sur la base des persécutions passées que j'ai subies en raison de mon origine ethnique et de mes opinions politiques. J'ai été emprisonné par le gouvernement à plusieurs reprises en Guinée alors que j'assistais à des manifestations et j'ai subi des tortures et des insultes à caractère racial. Je crains de futures persécutions en Guinée en raison de mon origine ethnique et de mes opinions politiques.

3. J'ai également déposé une demande de Statut de Jeune Immigrant Spécial (SIJS) (Special Immigrant Juvenile Status, SIJS) vers novembre 2025, en raison de l'abandon et de la négligence de la part de mes deux parents.

4. Je suis membre de The Door depuis juillet 2024.

5. Avant d'être emprisonné, je menais une belle vie à New York. Je vivais à Brooklyn et je travaillais en tant que livreur pour subvenir à mes besoins. Je jouais au football tous les lundis et mardis avec mes amis.

6. Le plus important pour moi, c'est mon éducation, donc je me suis concentré sur mes études. J'ai suivi des cours d'anglais avec The Door afin de pouvoir reprendre mes études pour obtenir mon diplôme d'études secondaires plus tard.

7. Je n'ai jamais été arrêtée ni impliquée dans le système de justice pénale aux États-Unis.

1

8. Ma première visite au tribunal de l'immigration a eu lieu le 29 mai 2025. Une audience de calendrier principal (« Master Calendar Hearing ») avait été prévue pour moi au tribunal de l'immigration situé au 290 Broadway. Je n'avais pas peur de me rendre au tribunal. Je n'avais pas non plus peur d'être arrêté parce que je ne pensais pas l'être simplement pour avoir assisté à mon audience d'immigration.

9. La première fois que je suis arrivé aux États-Unis, j'ai été emprisonné temporairement, puis relâché. Lorsque j'ai été libéré, on m'a dit que je devais me rendre au tribunal de l'immigration pour poursuivre mon processus d'immigration et m'expliquer pourquoi je ne devrais pas être expulsé. Les officiers m'ont également remis un document me l'indiquant. En raison de ma libération et des instructions ainsi que du document que j'avais reçus, je pensais que je pourrais mener ma procédure devant le tribunal de l'immigration tout en vivant librement à New York.

10. J'ai dit à mes amis et à mon tuteur légal, mon cousin Alsaini, que j'avais une audience, mais je n'ai fait aucun plan pour le cas où je ne pourrais pas rentrer chez moi après le tribunal. Par exemple, j'ai laissé toutes mes affaires dans le foyer où je vivais, et je n'ai pas dit à mon professeur d'anglais que je pourrais ne pas revenir. Je m'attendais pleinement à revenir du tribunal et à reprendre le cours normal de ma vie.

11. Par exemple, j'avais eu un accident en mars 2025 et je recevais toujours un traitement à la date de mon audience. Je n'ai apporté aucun de mes médicaments avec moi à l'audience. Je les ai simplement laissés chez moi en pensant que je reviendrais. J'avais également prévu un rendez-vous de suivi avec mon médecin

2

pour voir si j'avais besoin d'une intervention chirurgicale suite à mon accident, ou si mon traitement était efficace.

12. Donc, le 29 mai 2025, je me suis présenté à mon audience prévue au tribunal de l'immigration de 290 Broadway. Au moment de mon audience, j'ai répondu aux questions du juge sur mon affaire. Cela n'a pris que quelques minutes. Puis, il a mis fin à l'audience et m'a dit que je pouvais rentrer chez moi, et que je reviendrais en septembre 2026 pour ma prochaine audience.

13. J'ai quitté la salle d'audience et j'ai pris l'ascenseur pour me rendre à l'étage inférieur. En sortant de l'ascenseur, les agents de l'ICE m'ont arrêté. Les agents qui m'ont arrêté étaient masqués et ne se sont pas identifiés. Je n'ai compris qu'ils étaient des agents de l'ICE qu'après avoir été mis en détention.

14. Je ne m'attendais pas à être arrêté parce que j'avais de nombreux amis qui avaient déjà assisté à des audiences pour leurs affaires d'immigration sans aucun problème, et parce que je n'ai eu aucun problème avec la police aux États-Unis. Je m'occupais de mes affaires, concentré sur mes études, mon travail, ainsi que sur mes amis et ma communauté.

15. J'ai été détenu au 26 Federal Plaza pendant deux jours après mon arrestation. C'était horrible là-bas. Nous devions dormir par terre et nous n'avons pas reçu de couverture. On nous a apporté de la nourriture une ou deux fois par jour. Tout était dégoûtant et il n'y avait pas d'air frais. Après mes deux jours au 26 Federal Plaza, on m'a envoyé dans le New Jersey pour une journée seulement, puis on m'a renvoyé au 26 Federal Plaza pour deux jours supplémentaires. Puis, on m'a mis dans un vol pour la Louisiane, où je suis resté depuis.

16. En Louisiane, nous souffrons. Les lits sont si inconfortables qu'il est difficile de dormir, et la nourriture est si mauvaise qu'elle est difficile à manger. Si on est malade, les seuls médicaments qu'on nous donne sont du Tylenol ou de l'ibuprofène. J'ai dû subir une chirurgie de l'estomac quand j'ai déménagé aux États-Unis, et j'ai également eu un accident en mars 2025. En raison de ces besoins médicaux, j'ai parfois besoin de meilleurs médicaments ou de médicaments plus puissants que ceux qu'on me donne ici, comme ceux que je prenais sur ordonnance de mon médecin avant mon arrestation. Je ne peux pas non plus accéder à d'autres soins médicaux plus importants ici. Par exemple, mon tuteur légal Alsaini a parlé avec mon médecin pour discuter de ma santé après avoir été emprisonné. Mon médecin a dit à Alsaini que j'aurais besoin d'une intervention chirurgicale, mais je n'ai pas pu subir de procédures médicales pendant ma détention. Par conséquent, je suis en souffrance.

17. J'ai perdu tant de choses après avoir été arrêté. Je ne peux plus suivre de cours d'anglais et j'ai cessé de progresser dans mon apprentissage. Je ne peux pas travailler. Je ne peux pas faire de sport. Je ne peux pas ni mes amis ni mes proches.

18. Mon tuteur légal, Alsaini, me manque particulièrement. C'est mon cousin, et il fait tout pour me soutenir. Il m'a acheté des vêtements et de la nourriture, il m'a emmené au DMV pour que je puisse passer mon test de permis d'apprenti conducteur, et il a toujours été là pour me donner des conseils et me soutenir. J'ai eu un accident à New York et il m'a emmené à l'hôpital pour s'assurer que je recevais les soins dont j'avais besoin. C'est même lui qui m'a parlé de The Door

4

et m'a encouragé à en devenir membre. Maintenant, je ne peux pas le voir ni le contacter facilement.

19. Au lieu d'aller en cours, de travailler et de passer du temps avec mes amis, je reste simplement assis dans ma cellule. Je ne fais plus rien, j'ai tout perdu.

20. Je me demande souvent pourquoi cela m'est arrivé. Je n'ai pas causé de problèmes à New York, et j'ai fait tout ce que je pouvais pour aider ma communauté et pour mener une belle vie ici.

21. J'ai très peur de devoir retourner en Guinée et j'ai encore plus peur maintenant parce qu'un juge de l'immigration en Louisiane a rejeté ma demande d'asile et m'a ordonné de quitter le territoire. Si je retournais en Guinée, il n'y aurait plus aucun espoir pour moi.

22. La vie est très difficile pour moi ici en Louisiane. Je perds espoir. Il y a des jours où j'ai envie de me tuer. C'est difficile de continuer à vivre comme ça. Tout ce que je veux, c'est pouvoir régler ma procédure d'asile et de SIJS et de retrouver ma vie à New York.

23. J'ai examiné un exemplaire de cette déclaration en français, langue que je comprends, avant de la signer, et j'en ai parfaitement compris le contenu. La traduction française que j'ai examinée est jointe en Annexe A.

Je déclare, sous peine de parjure, que les faits exposés ci-dessus sont vrais et exacts et que cette déclaration a été rédigée à Oakdale, en Louisiane.

_____
Abdoul Gadiri Bah

Fait ce 2 jour de décembre 2025

5



City of New York, State of New York, County of New York

I, Jacqueline Yorke, hereby certify that the document "**Declaration of Abdoul Gadiri Bah, Member of The Door 12-2-2025**" is, to the best of my knowledge and belief, a true and accurate translation from English into French (FR).

_____
Jacqueline Yorke

Sworn to before me this
December 3, 2025

_____
Signature, Notary Public

```
WENDY POON
Notary Public - State of New York
No. 01PO0000184
Qualified in Queens County
My Commission Expires February 02, 20 27
```

_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001 | T 212.400.8840 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE