**DECLARATION OF MAMADOU SAIDOU BAH,
MEMBER OF THE DOOR**

I, Mamadou Saidou Bah, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am originally from Guinea. I arrived in the United States on or around December 4, 2023 when I was 19 years old.

2. In May 2024, I filed an application for asylum because I fear future persecution in Guinea based on my ethnicity and political opinions.

3. I also applied for Special Immigrant Juvenile Statues in December 2024 based on abandonment by my father. My application was approved on or around April 16, 2025.

4. I have been a member of The Door since February 2024.

5. I have never been arrested or had any involvement with the criminal justice system in the United States.

6. When I arrived at the U.S. border in 2023, the officers briefly detained me and then let me go. I learned from the officers that the next step in my case was to go to immigration court so I could defend myself against deportation and pursue my asylum claim. I also received a document that told me this information. My understanding was that I could pursue my immigration case while living freely in this country because of the document and instructions I was given, and because the officers let me leave detention.

7. Up until the beginning of June 2025, I was eager to go to immigration court and participate in my case. I knew that I was doing things the right way. I had followed the law and all of the instructions that the immigration authorities had given me. My experience at the border also made me believe that it was safe to

1

pursue my case in immigration court. So, I wasn't scared to be arrested just for going to court.

8. I planned my life around being able to safely go to court. For example, I have taken English classes to improve my understanding of the language and I sometimes do delivery work to support myself. I signed up for my classes with the expectation that I could continue them until my program was finished, and I have rented a bike for my delivery work with the expectation that I could continue doing that work to be able to afford my basic needs. I also set up appointments, like appointments with my doctor, for after the date of my immigration court hearings.

9. Then, around the beginning of June 2025, I started hearing news about people being arrested at immigration court. I heard stories from my friends and other members of my community about people going to court for their required hearing and not coming home. At the time, I knew one person who was living with me in the shelter who was arrested at court, though I recently learned that one more person from my shelter was arrested at court. I began to grow terrified of going to court for my first hearing, scheduled for August 14, 2025.

10. I decided that I would go to The Door to see if the lawyers there could help me in my case and protect me from being arrested. I attended The Door's drop-in legal clinic on July 9, 2025 and explained my fears about going to court. The legal staff didn't have enough time to have a full meeting with me during the clinic, so I scheduled a follow-up appointment with a member of the legal team.

11. On July 16, 2025, I went back to The Door and met with a legal staff member one-on-one. She spoke with me about my case and helped me write a *pro se* motion to ask the judge in my immigration case to hold my hearing online rather than in person. That way, I would be able to safely continue my asylum case without risking being arrested and detained by going to court. The Door staff filed my motion for me in person at immigration court later that week because they didn't want me to have to go to the courthouse, where I would be at risk of being arrested by ICE.

12. Over the next few weeks, I followed up with Door staff multiple times by message, call, and in-person to express my fears, ask for updates on my motion, and get advice from the legal team. I spoke with Door staff by call or message about my case at least six times between July 16, 2025 and August 13, 2025, and visited the drop-in clinic at The Door at least once during the same time period.

13. By early August, I still had not received a decision on my motion for a virtual hearing. The Door staff told me that they had been calling the court to ask about the status of my motion, but had not yet received any update. I was becoming more terrified by the day and could hardly concentrate on the rest of my life. I was so scared of being arrested by ICE and taken away from my home in New York.

14. During one of my conversations with Door staff in early August, the staff member mentioned to me that she could try to find someone who could accompany me to court on August 14 if I had to go there in person. I immediately accepted and the

3

staff member told me that she would share my information with the volunteer group.

15. Just two days before I was set to go to court, the Door staff person told me that there was a volunteer available to accompany me to court. The staff member connected me to the volunteer and helped explain the history of my case so that the volunteer could try to advocate for me if it became necessary.

16. The day before my court date, the Door staff person told me that she had again called the court to ask about my motion and had finally received an update from the judge. She told me that I would have to go to court in person the next day. Even with the support from The Door and the volunteer, I was so scared. I couldn't stop thinking about being arrested and detained by ICE, or being sent back to Guinea. I hardly slept that night.

17. On August 14, the volunteer and I went in person to immigration court at 26 Federal Plaza for my Master Calendar Hearing. The judge told me that I would have to come back to court in-person on February 12, 2026 to continue with my case. The volunteer and I left the courtroom together and she walked me all the way out of the building. I saw ICE all around the courthouse, like in the elevator or in the hallway, many of whom were wearing masks. Thanks to her support and the support of The Door, I was able to return home safely that day.

18. The experience of having to go to immigration court is traumatic for me. I am so fearful of being arrested the next time I have to go to court, especially because the judge will not let me attend court online. I spend so much time thinking about my

immigration case and worrying about what might happen to me. There's just too much stress on my mind.

19. I would lose so much if I were arrested. I would not be able to work anymore or continue to make progress in my education. I love to study, and my education is really important to me, but I know that I would not be able to continue with my classes if I were detained. I also would lose the opportunity to pursue my dream of having a career in construction and living peacefully in New York with the support of my community.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in St. Albans City, Vermont.

_____
Mamadou Saidou Bah

Executed this 3rd day of December, 2025