**SUPPLEMENTAL DECLARATION OF BETH BALTIMORE, DEPUTY DIRECTOR, THE DOOR'S LEGAL SERVICES CENTER**

I, Beth Baltimore, pursuant to 28 U.S.C. § 1746, declare as follows:

1.      I am the Deputy Director of the Door's Legal Services Center. I previously served as the Director of Pro Bono and Civil Legal Initiatives and Pro Bono Managing Attorney at The Door's Legal Services Center and have worked at The Door since January 2021.

2.      As part of the leadership team of The Door's Legal Services Center, I am responsible for shaping many of the legal team's organizational priorities, supervising staff and projects, and fundraising.

3.      I have personal knowledge of the facts contained in this declaration, which supplements and updates my August 10, 2025 declaration.

4.      Since my August 10, 2025 declaration was filed, The Door has continued to provide its membership of noncitizen young people with legal assistance in their immigration cases to help them secure any immigration benefits or humanitarian relief for which they are eligible.

5.      In addition to providing full representation to members in removal proceedings before immigration courts and members seeking to regularize their status through the filing affirmative humanitarian applications, The Door has continued to hold its weekly drop-in legal clinic (the "Drop-In Legal Clinic") where attorneys provide limited-scope assistance and advice to members regarding their immigration cases and offer referrals to other non-profit legal service providers.

6.      Since my August 10, 2025 declaration was filed, the government's policy broadly authorizing U.S. Immigration and Customs Enforcement ("ICE") to make arrests at immigration courthouses (the "Courthouse Arrest Policy"), has continued to impact our members and our work.

1

7.     The Door continues to devote a substantial amount of its resources to providing know-your-rights (KYR) materials to members, helping members prepare motions for remote appearances and other *pro se* motions, and advising members as to the Courthouse Arrest Policy. This work continues to require The Door to divert resources from its core mission of providing free comprehensive services to young people, including full scope legal representation in immigration cases.

8.     Our members in removal proceedings who must appear in immigration court are still at risk of being arrested and detained when they attend mandatory immigration court proceedings.

9.     Until this Court stayed the government's policy encouraging Immigration Judges ("IJs") to summarily dismiss noncitizens' regular removal proceedings without meaningful process (the "Dismissal Policy") in the geographic areas served by The Door, many of our members were also at risk of having their removal proceedings dismissed because of the Dismissal Policy, causing them to lose the opportunity to seek relief from removal.

10.    Some of The Door's members have pending immigration cases in courthouses located outside New York City, including at least three in New Jersey, one in North Carolina, one in Illinois, and one in Georgia. When Door members are required to appear in person at courthouses outside New York City, they are at risk of having their removal proceedings dismissed because of the Dismissal Policy and they are subject to arrest and detention because of the Courthouse Arrest Policy.

11.    At least three Door members have been arrested at immigration courthouses and detained since the Policies went into effect. We suspect more Door members have been arrested,

but it is difficult for The Door to learn of each member's arrest unless we are contacted by a member's friend or family member.

12.     At least 46 Door members who have attended our Drop-In Clinic from August to November 2025 have upcoming immigration court hearings between today and December 29, 2026. The majority of these appearances will likely require our members to attend in person.

13.     In my August 10, 2025 declaration, I described six Door members who had been affected or were at risk of being affected by the government's Courthouse Arrest and Dismissal Policies. Many of these members and others remain at risk of being affected by the government's Courthouse Arrest policy. For example:

14.     The Door – John Doe 1 is a member of The Door and a noncitizen. He entered the United States alone at nineteen years old to seek asylum. He filed a timely *pro se* asylum application with the court as well as a *pro se* I-360 SIJS application with USCIS. At the time I executed my August 10, 2025 declaration, he was being held in detention at the Metropolitan Detention Center (MDC) in Brooklyn, New York after his case had been dismissed and he had been arrested in the courthouse at 290 Broadway after a Master Calendar Hearing in his immigration case in June 2025. In October 2025, I filed a habeas petition on his behalf with pro bono counsel which was granted in November 2025. He was subsequently released from detention. He has appealed the dismissal of his removal proceeding, and the appeal remains pending at the Board of Immigration Appeals. His I-360 SIJS application was approved by USCIS in November 2025.

15.     The Door – John Doe 2 is a member of The Door and a noncitizen. He entered the United States without family as a 19-year-old in order to seek asylum. He has a pending asylum application. John Doe 2 has an individual hearing in his removal proceeding scheduled for July

2029. Although the hearing is scheduled to take place online, there is no guarantee that it will not be changed to require him to appear in person.

16.     The Door – John Doe 3 is a member of The Door and a noncitizen. He entered the United States without family when he was 18 years old in order to seek asylum. He has a pending asylum application. John Doe 3 has an upcoming Master Calendar Hearing scheduled for February 2026. However, the Immigration Judge hearing his case was fired in November 2025, so this date may change. John Doe 3 does not know whether his next hearing will be in person or online, as it has not yet been rescheduled or reassigned to a different Immigration Judge.

17.     The Door – John Doe 4 is a member of The Door and a noncitizen. He entered the United States without family when he was 22 years old in order to seek asylum. He has a pending asylum application. John Doe 4 has an upcoming Master Calendar Hearing scheduled for June 2026 in person.

18.     The Door – John Doe 5 is a member of The Door and a noncitizen. He entered the United States without family when he was 19 years old in order to seek asylum. He has a pending asylum application and is pursuing SIJS *pro se*. John Doe 5 has an upcoming Master Calendar Hearing scheduled for April 2026 in person.

19.     The Door – John Doe 6 (Mamadou Saidou Bah ("Mamadou")) is a member of The Door and a noncitizen. He entered the United States without family as a 19-year-old in order to seek asylum. He applied for SIJS and his petition was approved on or around April 16, 2025, and he has a pending asylum application. After extensive counseling from The Door and with the support of a Door-facilitated volunteer who accompanied Mamadou to court, Mamadou attended a hearing in his immigration case at 26 Federal Plaza in person on August 14, 2025. The judge scheduled another in-person Master Calendar Hearing in his case on February 12, 2026. Mamadou

is terrified to attend his upcoming court appearance due to the continued risk of being arrested at the courthouse. The Door plans to assist Mamadou with *pro se* motion(s) before his next hearing date to try to prevent him from needing to attend court in person.

20.      Abdoul Gadiri Bah ("Abdoul") is a member of The Door and a noncitizen. He entered the United States without family when he was 18 years old in order to seek asylum. Prior to his detention, he applied for asylum and obtained the Family Court orders necessary to apply for SIJS. Abdoul appeared for his first hearing in immigration court at 290 Broadway in New York City on May 29, 2025. The Immigration Judge scheduled him for another appearance in September 2026, but as he was leaving the courtroom, Abdoul was arrested by ICE. He was initially detained at 26 Federal Plaza, brought to New Jersey, and then later flown to Louisiana, where he remains detained. Since being detained, Abdoul has not been able to attend English classes, nor has he been able to work.  He has also lost access to all of the in-person services available at The Door.

21.      The Door – John Doe 9 was not included in my August 10, 2025 declaration. He is a member of The Door and a noncitizen. He entered the United States without family as a 19-year-old in order to seek asylum. He attended his mandatory immigration court hearing at 26 Federal Plaza in August 2025 and was arrested upon leaving the courtroom. John Doe 9 applied for SIJS in October 2025 and was granted asylum in November 2025. He was detained for over three months in Pennsylvania, causing him to miss in-person high school classes and lose access to all of the in-person services available at The Door, such as health care, education, mental health counseling and crisis intervention, college preparation services, career development, housing support, arts, sports and recreational activities, and nutritious meals.

22.      As these individuals demonstrate, Door members have been and will be harmed by the Courthouse Arrest and Dismissal Policies. Members continue to report to Door staff they are

terrified, anxious, and confused about the possibility of being arrested and detained while attending court appearances and losing the ability to seek immigration relief as a result of the government's policies.

23.     Mamadou (John Doe 6) and Abdoul are submitting their own declarations in support of this motion. Although several other Door members considered submitting declarations as well, they were terrified that making their identity public would harm their prospects in their immigration cases or otherwise cause the government to target them for arrest, detention, and deportation. They decided the risk was too great and ultimately chose not to submit declarations that would make their identities known.

24.     In addition, and as stated in my August 10, 2025 declaration, The Door has long engaged in core activities supporting young people who are not United States citizens and who are seeking immigration relief, including by providing them with legal advice and representation.

25.     Providing full scope representation to individual members is The Door's core work. We enter into full representation of these members and remain as their attorneys throughout each step of their case.

26.     Since around 2013, The Door's Legal Services Center has hosted the Drop-In Legal Clinic once a week. The majority of Drop-In Legal Clinic attendees live in shelters or are unstably housed.

27.     Over the past few years, we have met hundreds of young people through the Drop-In Legal Clinic who are in search of quality advice and representation in their immigration cases. Young people who come to the clinic are screened for eligibility for immigration relief, given KYR information, and advised on their immigration cases. If these young people are not already Door members, they become members after their visit to the Drop-In Legal Clinic.

28.    Prior to the implementation of the government's new policies in May 2025, Door members appearing *pro se* in immigration proceedings would typically attend hearings in their cases in person, without any fear of being arrested by ICE agents. We advised them that it was important to appear at all hearings because failing to appear would most likely lead to entry of a removal order against them *in absentia*. Door members generally followed our advice, as they did not fear—and we did not advise them to fear—being arrested at court.

29.    Since the implementation of the government's new Policies, we are no longer able to advise our members that they can attend hearings in their immigration cases without risking arrest. We continue to advise them that it is important to attend hearings because failing to appear risks entry of an *in absentia* removal order, and we try to assist members in making motions to appear remotely. But we can no longer tell members that there is no danger that they will be arrested if they are forced to attend hearings in person.

30.    Since my last declaration was filed on August 10, 2025, the government's Courthouse Arrest and Dismissal Policies have continued to force The Door to divert resources from its core activity of providing full scope representation to members in immigration proceedings and impeded The Door's mission of assisting our noncitizen members with their immigration cases.

31.    The number of people seeking legal advice at the Drop-In Legal Clinic remains dramatically higher than it was before the Policies went into effect, so much so that we have expanded the hours of the clinic and continued to schedule additional times to meet with Drop-In Legal Clinic attendees to accommodate everyone with advice and support for their upcoming immigration court hearings. Additionally, we have provided court accompaniment to numerous unrepresented Door members who deeply feared arrest at the Courthouse. The increased volume

and urgency of Door members' need for legal assistance relating to the Courthouse Arrest and Dismissal Policies has required The Door to keep additional staff working in the Drop-In Legal Clinic, taking these staff away from their pre-existing work providing direct, full scope representation of members.

32.     Since my last declaration was filed on August 10, 2025, we have continued to be forced to divert resources from other Door activities in order to provide prompt legal advice and assistance to our members at the Drop-In Legal Clinic and to meet the increased demand for urgent, high-stakes legal services in response to the government's new Policies. We obtained additional SIJS funding from the New York City Council over the summer and allocated it all to the Drop-In Legal Clinic. We hired a full-time paralegal and staff attorney to keep up with this work, and are in the process of hiring a supervising attorney. These staff lines are unique as they are dedicated to staffing the Drop-In Legal Clinic rather than providing full scope legal representation.

33.     During or around the week of August 18, 2025, the Executive Office of Immigration Review (EOIR) changed the information provided on its automated case information system (ACIS). Prior to the change, someone could enter their "A" number and see their next hearing date and whether they were scheduled to appear virtually or in person. In August 2025, the ACIS website removed information about virtual appearances so the website no longer states whether the next court date is virtual or in person. This change made it much harder for Door staff to advise members about their next court appearances and left Door members anxious and confused.

34.     The government's Courthouse Arrest and Dismissal policies have also continued to frustrate The Door's mission to help its members secure immigration relief by causing members

to be arrested and detained (and, in some cases, transported to detention facilities located outside of New York City), causing them to lose the opportunity to secure immigration relief.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in New York, New York.

_____
Beth Baltimore

Executed this 3rd day of December 2025