# DECLARATION OF ALLISON CUTLER

I, Allison Cutler, declare the following under 28 U.S.C. § 1746, and state that under penalty of perjury the following is true and correct to the best of my knowledge and belief:

1. The facts set forth in this declaration are based on my personal knowledge, and if called as a witness, I would testify thereto. I am over eighteen years of age and of sound mind to declare the facts stated herein.

2. I am a Supervising Attorney for New York Legal Assistance Group's ("NYLAG") Pro Se Plus Project ("PSPP") in the Immigration Protection group. I have served in this role for approximately two years. Previously, I was a Staff Attorney for NYLAG's Immigration Protection group, providing legal assistance to survivors of domestic violence making immigration-based applications. In total, I have worked within NYLAG's Immigration Protection group for approximately ten years.

3. The PSPP is a collaboration between immigration legal services providers and community-based organizations that provides aid to newly arrived immigrants in New York City. It is a collaborative effort that seeks to bridge the gap in immigration service provision that results in many noncitizens proceeding with immigration-based applications without direct representation. In this program, NYLAG provides educational clinics to pro se asylum applicants so that these individuals can file asylum petitions, attend their scheduled court appearances, and litigate their claims on their own.

4. In my role as a Supervising Attorney for PSPP, I would regularly work with noncitizens to prepare and file asylum applications. For noncitizens held in immigration detention, I would often appear in-person on behalf of these persons as a friend of the court before immigration judges at 26 Federal Plaza.

5. As a result of my role as a Supervising Attorney with PSPP, I was familiar with the routine operation of immigration court proceedings at 26 Federal Plaza before federal immigration officers began their campaign of courthouse arrests in May 2025. Noncitizen asylum applicants would be processed through security, attend their court proceedings, receive a subsequent court date while their asylum petition was pending, and exit the courthouse without incident. It was not necessary for me to regularly attend court dates in-person alongside pro se litigants because they were not at risk of arrest and detention.

6. That changed in May 2025 when ICE began, to my knowledge and experience, for the first time, conducting federal immigration enforcement at the Immigration Courthouse at 26 Federal Plaza. On May 27, 2025, a pro se applicant from one of PSPP's community-based organizations was arrested while attending a master calendar hearing. After this arrest, I began regularly going to 26 Federal Plaza about twice a week to provide assistance to noncitizens attending their court dates.

7. The federal government's campaign of arrest and detention at court proceedings has had a dramatic impact on the operation of courtrooms. Groups of federal immigration

enforcement officers, many of whom are masked and armed, stand in the public areas of the courthouse, including outside of the courtrooms and in the waiting rooms, staring at the noncitizen respondents and their families. ICE officers physically block the exits to the courtrooms, sit inside the courtrooms, or wait just outside the courtrooms in the hallways and waiting rooms. Their presence, and what it signifies—potential arrest and separation from their families— creates a culture of fear and intimidation. Noncitizens are terrified while at the courthouse. I have assisted many of them experiencing panic attacks and sobbing while waiting to be called for their court appearances. Pro se litigants are typically the last individuals on an immigration judge's docket, so these people often wait multiple hours for their court appearance and spend those hours sobbing, panicking, and wracked with fear. Noncitizens often sob through the entirety of their court appearance because they see ICE officers waiting inside and do not know if they will be targeted for arrest.

8. At one court date, I saw a woman hysterically sobbing while she waited to be called for her court appearance. She sobbed for so long that her clothing was soaked with tears by the time the clerk called her to appear before the immigration judge.

9. At another court date, I saw a woman hysterically sobbing while with her child as she waited for her court appearance. She was crying and shaking so much that a nearby ICE officer asked me to tell the woman that she would not be detained. I told him that I could not tell the woman this unless I saw his list of forthcoming arrests, as I did not want to provide her with false or unverified reassurance. He refused to show me the list and instead insisted that the woman would not be detained. I agreed and told her that she would not be detained, and I spent the remaining time helping her through her panic attack while her young child watched.

10. On another occasion, I witnessed an ICE officer physically barricading the exit of Judge Thompson Jr.'s courtroom. The ICE officer lunged at a noncitizen still just inside the courtroom as he finished his appearance. The ICE officer then proceeded to chase the man inside the courtroom, jumping over the gallery benches and leaping over the wooden fence separating the gallery from the judge's bench. The ICE officer grabbed this man and dragged him outside of the courtroom into a stairwell. From inside the hallway, we could hear screams and sobbing in the stairwell coming from the man and then the sound of handcuffs.

11. ICE's enforcement operations disrupt court proceedings even from outside the courtroom. ICE officers often arrest noncitizens just outside the door of the courtroom. On several occasions, the level of noise created by ICE officers executing an arrest is so loud that the courtroom assistant had to go outside to reprimand the officers for disrupting the proceedings.

12. ICE's manner of arrest adds to the confusion and chaos. In the vast majority of these cases, they do not identify themselves to the noncitizen as law enforcement, and they do not tell the noncitizen that they are placing the noncitizen under arrest. As a result, the noncitizens are confused and frightened and resist because they do not understand why an

unidentified, masked individual is physically assaulting them. During arrests, many noncitizens have looked to me and asked if they are being arrested, because the ICE officers will not tell them what is occurring. I have seen ICE officers use physical violence against noncitizens just outside the courtroom door. I have witnessed ICE officers throw noncitizens against the wall and onto the ground. I have heard screams of pain from across the courthouse. These screams are so loud that they can be heard from multiple courtrooms away.

13. On two occasions, I witnessed ICE officers detain pregnant women who are in approximately their third trimesters. These women were detained despite my communication to ICE officers that they were pregnant and taking necessary medication and that such arrests violate ICE's own policies. The officers told me that they were "following orders" in response. ICE officers detain mothers in front of their young children and infants, with no concern for the obvious impact on these children.

14. The federal government's campaign of arrest and detention at immigration courthouses appears to be dissuading noncitizens from attending their court dates. Waiting areas outside of courtrooms now hold approximately half the standard number of individuals that would have appeared prior to the campaign's beginning.

15. This campaign has continued today. On November 25, 2025, a pro se applicant who PSPP assisted was detained while attending his master calendar hearing. After his detention, his mother, who had attended the court date with him, was inconsolable. She hysterically cried in the hallways of 26 Federal Plaza for a long time after officers had taken her son away.

Executed on this 2nd day of December, 2025 in New York, New York.

_____
Allison Cutler