## DECLARATION OF GILLIAN ROWLAND-KAIN
## INTERIM DIRECTOR OF PROGRAMS FOR IMMIGRANT ARC

*I, Gillian Rowland-Kain, make the following statements on behalf of Immigrant Advocates Response Collaborative (I-ARC). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I am the Interim Director of Programs at the Immigrant Advocates Response Collaborative ("I-ARC"), a 501(c)(3) nonprofit organization based in New York. I-ARC is a coalition of over eighty immigration legal service providers that work on increasing access to justice and legal counsel for all immigrant New Yorkers.

2. On August 7, 2025, I submitted a declaration describing I-ARC's observations of ICE courthouse arrests and coordinated case dismissals through early July 2025. I submit this updated declaration to supplement those prior observations and to provide additional information, based on my direct observations and I-ARC's records, about events between August 8 and December 1, 2025.

3. I-ARC's membership expands across New York State and requires organizations to have attorneys or Department of Justice accredited representatives on staff to join. Our members work on issues ranging from humanitarian, family-based petitions, to naturalization and adjustment of status. I-ARC facilitates coordination and communication among legal providers, responds to new enforcement trends, and challenges harmful immigration policies through collective advocacy.

4. In my capacity as Interim Director, I oversee the Legal Access and Membership and Capacity teams. My primary responsibilities include managing the day-to-day operations of the programs team, including facilitating team meetings, serving as the primary liaison between the programs team and organizational leadership, and overseeing the execution of key initiatives. I also lead I-ARC's rapid response efforts and other legal access programs such as the Friend of the Court initiative.

5. In March 2023, I-ARC launched its Friend of the Court ("FOTC") program to provide assistance to *pro se* respondents appearing in New York immigration courts. Our volunteers help non-detained noncitizens, particularly those appearing for the first time, by explaining court procedures, facilitating communication with immigration courts, and providing legal orientations and referrals.

6. Since March 2023, we have operated our FOTC program two days a week. We operate at the immigration courts at 290 Broadway, New York, NY, on Thursday mornings, and the immigration courts at 201 Varick Street, New York, NY, on Tuesday mornings. There is a room in each of these courts where we set up and store our materials and meet privately with people to facilitate program delivery.

7. In June 2025, I-ARC also launched a Court Observation Project that operates virtually and in person every weekday at all three New York City immigration courts and the

Buffalo immigration court. Since then, volunteers have systematically observed master calendar hearings and documented trends related to motions to dismiss, in absentia removal orders, and arrests by Immigration and Customs Enforcement ("ICE") within and immediately outside immigration court buildings.

8. I submit this declaration in support of Plaintiffs' summary judgment briefing, to provide updated information about the ongoing harms caused by ICE's courthouse arrest practices in New York immigration courts and the chilling effect those practices continue to have on immigrant New Yorkers' ability to safely participate in their immigration proceedings.

9. Arrests by ICE continue to disrupt immigration courthouses. From August 8 through December 1, 2025, our Court Observation Project volunteers have witnessed at least 32 arrests of individuals in or immediately outside New York immigration court buildings.

10. In September 2025, at the immigration court located at 290 Broadway, our FOTC team witnessed an especially aggressive arrest as a respondent was leaving the courtroom with his attorney. ICE agents intercepted the respondent and would not allow the attorney to speak privately with her client. When the attorney attempted to calm and reassure him, the agents accused her of "interfering" with the arrest. As they marched the respondent down the hallway, ICE agents pushed both the respondent and his attorney. When the attorney protested the agents yelled at her not to touch them, even as they continued to push both attorney and client forward.

11. Similarly, in October 2025 at 26 Federal Plaza, a volunteer observer reported that approximately fifteen masked ICE agents, many wearing tactical vests and other gear, were crammed into a narrow hallway outside the immigration courtrooms. As soon as a man exited his hearing, he was immediately surrounded by five agents and handcuffed. The man repeatedly shouted, "I am an American!" The women who had attended the hearing with him began screaming as well. The agents ushered the entire group, respondent and family members, toward the elevators, with the hallway filled with shouting and visible distress.

12. Also in September 2025, our volunteers witnessed the arrest of a transgender asylum seeker as she left the courtroom. During her hearing, she had clearly expressed her fear of returning to her home country, and the immigration judge had given her another hearing date so that she could submit her asylum application. Despite this, ICE agents arrested her when she exited the courtroom.

13. On November 13, 2025, our volunteers observed eight ICE agents arrest a single male respondent. We later learned that his three children were at school at the time of his arrest and that his wife was at home waiting for him to return from court. In this and other cases, respondents are taken into custody without any chance to make arrangements for

their children or to notify loved ones, resulting in sudden and traumatic separations.

14. The climate of fear caused by these arrests continues to substantially chill participation in immigration hearings. Respondents and family members increasingly express to I-ARC staff and volunteers that they are afraid to come to immigration court in person because of the risk of arrest and detention.

15. From August 8 through December 1, 2025, our volunteers witnessed immigration judges issue no fewer than 237 in absentia removal orders. These observations were recorded during our daily court observation shifts at all three New York City immigration courts and the Buffalo immigration court. The sheer number of in absentia orders we have documented during this period is starkly higher than what our team observed before ICE began its current pattern of courthouse arrests.

16. Although our Court Observation Project cannot determine the reason for each individual's failure to appear, the timing and volume of these in absentia orders, occurring in the same period when ICE agents are regularly arresting people at or just outside the courthouse doors, strongly reinforce our concern that many respondents are too afraid to risk appearing in person for their hearings.

17. The incidents described above are not isolated. Together with the observations documented in my prior declaration, they show that ICE's practice of conducting arrests in and around immigration courthouses has become a regular and disruptive feature of New York's immigration courts. These tactics undermine respondents' ability to safely attend hearings, erode trust in the court process, and exacerbate fear and confusion for pro se individuals who are already struggling to navigate complex immigration proceedings.

18. As a result of ICE's ongoing courthouse arrest practices, noncitizens and their families, many of whom have pending claims for asylum or other protection, continue to suffer irreparable harm, including sudden detention, family separation, and the loss of meaningful access to the full and fair hearings that immigration law and regulations are supposed to provide.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 1, 2025.

_____
Gillian Rowland-Kain