## SECOND SUPPLEMENTAL DECLARATION OF BETH BALTIMORE, DEPUTY DIRECTOR, THE DOOR'S LEGAL SERVICES CENTER

I, Beth Baltimore, pursuant to 28 U.S.C. § 1746, declare as follows:

1.  I am the Deputy Director of the Door's Legal Services Center. I previously served as the Director of Pro Bono and Civil Legal Initiatives and Pro Bono Managing Attorney at The Door's Legal Services Center and have worked at The Door since January 2021.

2.  As part of the leadership team of The Door's Legal Services Center, I am responsible for shaping many of the legal team's organizational priorities, supervising staff and projects, and fundraising.

3.  I have personal knowledge of the facts contained in this Declaration, which supplements and updates my August 10, 2025 and December 3, 2025 Declarations.

4.  The Door continues to provide its membership of noncitizen young people with legal assistance in their immigration cases to help them secure any immigration benefits or humanitarian relief for which they are eligible.

5.  Our work continues to be impacted by the government's policy of encouraging Immigration Judges ("IJs") to summarily dismiss noncitizens' regular removal proceedings without meaningful process and without requiring the government demonstrate changed circumstances specific to the noncitizen's case (the "Dismissal Policy"), notwithstanding the government's purported withdrawal of the Dismissal Policy.

6.  It is impossible for The Door to determine how many of our members had their immigration cases dismissed as a result of the Dismissal Policy because of the challenges in reaching our members once they are detained—which typically follows dismissal. In reviewing our waitlist, staff came across numerous members who were no longer living in New York City because they were now detained. However, waitlist members who are in detention are often not

1

easily accessible, impacting The Door's ability to communicate with our members and provide them with services, and requiring The Door to spend more time and resources to locate the member and make arrangements to determine whether we can represent them.

7.      At its weekly drop-in legal clinic (the "Drop-In Legal Clinic"), where attorneys provide limited-scope assistance and advice to members regarding their immigration cases, The Door continues to field concerns from members about the possibility that their removal proceedings will be dismissed and how that would impact their immigration status. The Drop-In Legal Clinic continues to see a higher-than-normal volume of Door members requesting legal assistance, as described in my December 3, 2025 Declaration. The Door continues to keep additional staff working in the Drop-In Legal Clinic, taking these staff away from their pre-existing work providing direct, full scope representation of members.

8.      We are planning to further increase the number of staff at the Drop-In Legal Clinic. While our current legal team focuses on affirmative immigration cases for young people not in removal proceedings, we plan to change the focus in early 2026 because of the great need to provide assistance to people whose removal proceedings have been dismissed pursuant to the Dismissal Policy and people who are afraid of going to immigration court for fear of being arrested. We also plan to add a staff attorney to the clinic in the Fall of 2026 through the Immigrant Justice Corps ("IJC") fellowship program. We have not included our past IJC fellows at the Drop-in Legal Clinic, but made the decision that this was where we needed even more staff.

9.      To help our members address the consequences of the Dismissal Policy, The Door is in the process of updating its know-your-rights (KYR) materials to address the Dismissal Policy and provide information and resources for members whose removal proceedings were dismissed pursuant to the Dismissal Policy.

10.     The Door is also providing training for its staff on how to respond to questions from members whose removal proceedings were dismissed pursuant to the Dismissal Policy. The Door did not typically have to field these questions before, since the government did not routinely dismiss removal proceedings before the introduction of the Dismissal Policy.

11.     In addition, The Door has devoted resources to performing legal work on behalf of members whose removal proceedings were dismissed pursuant to the Dismissal Policy. For example, The Door is currently representing John Doe 1 at the Board of Immigration Appeals ("BIA") on his appeal of the dismissal of his removal proceeding. Door staff recently submitted a brief to the BIA on John Doe 1's behalf.

12.     The Door's work in response to the Dismissal Policy continues to require The Door to divert resources from its core mission of providing free comprehensive services to young people.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed in New York, New York.

_____
Beth Baltimore

Executed this 7th day of January 2026