# EXHIBIT A



OOD
PM 25-51
Effective: September 23, 2025

To: All of EOIR
From: Roman Chaban, Acting Deputy Director
Date: September 23, 2025

**WITHDRAWAL OF MAY 30, 2025 EMAIL**

| | |
|---|---|
| PURPOSE: | Withdraws an email sent on May 30, 2025 |
| OWNER: | Office of the Director |
| AUTHORITY: | 8 C.F.R. § 1003.0(b) |
| CANCELLATION: | None[1] |

On May 30, 2025, an Acting Regional Deputy Chief Immigration Judge (RDCIJ) sent an email (May 30 Email) with the subject line "Guidance on Case Adjudication" to all EOIR Assistant Chief Immigration Judges. The email was an attempt to provide guidance—and a reminder of relevant authority—in adjudicating motions to dismiss or terminate. The May 30 Email was not incorporated into the EOIR Policy Manual nor otherwise disseminated publicly. Further, EOIR has never represented that the May 30 Email constituted an agency policy or otherwise represented a binding directive to Immigration Judges to decide cases a particular way.

The May 30 Email was not an EOIR policy, nor could it have been because it was not contained in the EOIR Policy Manual. *See* EOIR Policy Manual, Part I, Ch. 1.1(a) (noting generally that any EOIR operational policies related to case adjudications not contained in the Policy Manual are not in effect); *see also* Policy Memorandum (PM) 25-2, *EOIR's Core Policy Values*, 4 (Jan.27, 2025) (prohibiting operational policies related to case adjudications[2] unless they are published in the Policy Manual). Further, no RDCIJ has the authority to set policy for the agency, except (like all Immigration Judges) through adjudications. *Cf.* 8 C.F.R. §§ 1003.0(b)(1)(i), 1003.9(b)(1) (authorizing only the EOIR Director and the Chief Immigration Judge to "[i]ssue operational instructions and policy").

Moreover, the May 30 Email could not direct or bind any Immigration Judge to make a specific decision in a case in a particular way. No individual in EOIR leadership, including an RDCIJ, may

---

[1] As discussed herein, the email sent on May 30, 2025, was not an agency policy, nor did it have any binding, prescriptive effect. Thus, it would be strange to speak of "cancelling" it, even if an email could be "cancelled." Rather, the email is being withdrawn.

[2] Policies that do not relate to case adjudications (*e.g.* office parking policies, information technology security policies) are not required to be published in the EOIR Policy Manual. *See* PM 25-2, at 4 n.7.

direct an Immigration Judge to decide a case in a particular way. *See* 8 C.F.R. §§ 1003.0(c) (stating that the Director does not have the authority "to direct the result of an adjudication assigned to . . . an [I]mmigration [J]udge"), 1003.9(c) ("The Chief Immigration Judge shall have no authority to direct the result of an adjudication assigned to another [I]mmigration [J]udge . . . ."); *accord* PM 25-42, *Adjudicator Independence and Impartiality* (Aug, 22, 2025) (concluding that "[t]herefore, no EOIR employee or officer can direct any adjudicator to rule in a particular way on a matter before him or her in the first instance").

To be sure, the May 30 Email's attempt to paraphrase relevant law was poorly drafted. Nevertheless, its core idea that Immigration Judges have authority to grant oral motions to dismiss or terminate in court is longstanding, well-established, and—at least until spring 2025—not particularly controversial. Indeed, between 2021 and 2025, Immigration Judges granted thousands—if not tens of thousands—of oral motions to dismiss or terminate cases in court with almost no noted issues.[3] Additionally, although 8 C.F.R. § 1003.23 provides a default that pre-decision motions should be in writing, that default carries an important caveat: "[*u*]*nless otherwise permitted by the* [*I*]*mmigration* [*J*]*udge.*" 8 C.F.R. § 1003.23(a) (emphasis added). Thus, the relevant regulatory language is clear that Immigration Judges may permit oral motions in court to dismiss or terminate.

Further, as all Immigration Judges know, the Immigration Court Practice Manual (ICPM), which is a subsection of the EOIR Policy Manual, is not binding if "the Immigration Judge directs otherwise in a particular case."[4] ICPM Ch. 1.1(b). Moreover, the ICPM cannot and does not limit an IJ's discretion in handling a particular case. *See* ICPM Ch. 1.1(c) ("Nothing in this manual shall limit the discretion of Immigration Judges to act in accordance with law and regulation."); *see also* 8 C.F.R. § 1003.10(b) (authorizing Immigration Judges to take any action consistent with the law "necessary or appropriate for the disposition" of a case). Thus, the ICPM's references to response periods for motions has never been interpreted as absolute in all cases, can be changed or overridden by an Immigration Judge by the ICPM's own terms, and cannot supersede an Immigration Judge's authority under 8 C.F.R. § 1003.10(b).

---

[3] Whether Immigration Judges who previously granted oral motions to terminate or dismiss as a matter of routine but now refuse to do so, not based on the law but because they have personal or policy disagreements with what they perceive as the intent behind the motions, are violating ethics and professional responsibility rules is beyond the scope of this PM. *Cf.* PM 25-33, *Neutrality and Impartiality in Immigration Court Proceedings* (Jun. 27, 2025); PM 25-42; *accord* 5 C.F.R. §§ 2635.101(b)(8), (14) (requiring Immigration Judges to "act impartially and not give preferential treatment to any private organization or individual" and to "endeavor to avoid any actions creating the appearance that they are violating the law or the ethical standards" applicable to individuals employed by the United States Government); Ethics and Professionalism Guide for Immigration Judges, Secs. V (requiring Immigration Judges to "act impartially and . . . not give preferential treatment to any organization or individual when adjudicating the merits of a particular case"), VI (requiring Immigration Judges to "endeavor to avoid any actions that, in the judgment of a reasonable person with knowledge of the relevant facts, would create the appearance that he or she is violating the law or applicable ethical standards"), VIII (prohibiting Immigration Judges from being "swayed by partisan interests or public clamor"), and X (prohibiting Immigration Judges from "in the performance of official duties, by words or conduct, manifest[ing] improper bias or prejudice").

[4] The ICPM purports to be binding on the parties unless an Immigration Judge directs otherwise; however, the legal authority for it to bind the parties is decidedly unclear. The ICPM was issued as sub-regulatory guidance without any specific statutory or regulatory authorization and without utilizing rulemaking procedures specified in the Administrative Procedure Act. Thus, whether *any* part of the ICPM not contained in a statute or regulation can even be legally binding is an open question and one that is beyond the scope of this PM.

Even if the May 30 Email had been more precisely drafted, for all of the reasons noted above, it still would not have represented an EOIR policy or a directive to an Immigration Judge to decide a case a particular way. Indeed, no competent Immigration Judge would have understood the May 30 Email to represent either a formal policy of the agency or a directive with binding effect to decide a case or issue a particular way.

Predictably, a lawsuit was filed against EOIR over the May 30 Email. *See Afr. Communities Together v. Lyons*, No. 25-CV-6366 (S.D.N.Y.).[5] The implicit, underlying premise of the lawsuit appears to be that Immigration Judges were too incompetent (or too corrupt) to realize that the May 30 Email (1) was not a policy, (2) did not, and could not, supersede any applicable statutes or regulations, and (3) did not, and could not, direct them on how to handle or rule on a case.[6]

On September 12, 2025, pursuant to 5 U.S.C. § 705, the District Court issued a stay of the May 30 Email within Manhattan and the Bronx in New York City.[7] *Afr. Communities Together*, 2025 WL 2633396 (S.D.N.Y. Sept. 12, 2025). In doing so, the District Court made clear that Immigration Judges retained the same authority they had prior to the May 30 Email:

> To avoid doubt on the subject, this Order does not diminish or expand the discretion or authority accorded to Immigration Judges in the controlling statute and regulations regarding, among other matters, requiring or permitting oral motions, requiring or permitting responses to motions, deciding matters orally or in writing and the grounds for dismissal of a removal petition, except that the exercise of such discretion and authority is unrestrained by the [May 30 Email].

*Afr. Communities Together*, 2025 WL 2633396 at *22. Thus, even after the stay of the May 30 Email, Immigration Judges retain the authority to permit oral motions (and oral responses) in court, including the authority to grant (or deny) such motions in accordance with the law.

Because the May 30 Email was never a policy and could never have been legally directive in any event, no Immigration Judge should have relied on it or used it to decide a case, nor should any Immigration Judge be doing so currently. Consequently, the stay of that Email should have no impact on EOIR operations. Nevertheless, to eliminate any remaining uncertainty, this PM now formally withdraws the May 30 Email. All Immigration Judges should continue to not rely on it in adjudicating cases.

---

[5] The lawsuit also challenged various purported policies of the Department of Homeland Security.

[6] The lawsuit was supported by declarations from two retired Immigration Judges, though only one made unsubstantiated insinuations about former colleagues. The other declaration, troublingly, alleged that an Assistant Chief Immigration Judge (ACIJ) had directed him to grant certain motions contrary to both law and EOIR policy. If such allegations are true, then the ACIJ would face potential disciplinary action, if the ACIJ is still with the agency.

[7] As relevant to the May 30 Email, 5 U.S.C. § 705 only authorizes a District Court to stay an "agency action." In turn, an agency action constitutes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13); *see also* 5 U.S.C. § 701(b)(2) (incorporating the definition of "agency action" in 5 U.S.C. § 551 into use in 5 U.S.C. §§ 701-706). The May 30 Email was neither a rule, order, license, sanction, relief, or the equivalent or denial thereof, nor a failure to act, and EOIR has never represented otherwise. *See generally* 5 U.S.C. § 551 (defining, *inter alia*, rule, order, license, sanction, and relief). Thus, the May 30 Email does not meet the statutory definition of an "agency action" subject to 5 U.S.C. § 705. Although the District Court discussed whether the May 30 Email was a "*final* agency action," it did not address the antecedent question of whether (or how) the May 30 Email met the statutory definition of "agency action" in the first instance.

This PM is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person. Nothing herein should be construed as mandating a particular outcome in any specific case. Nothing in this PM limits an adjudicator's independent judgment and discretion in adjudicating cases or an adjudicator's authority under applicable law.  Please contact your supervisor if you have any questions.