UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER; and THE DOOR,<br><br>    *Plaintiffs*,<br><br>v.<br><br>Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; Sirce E. OWEN, in her official capacity as Acting Director, Executive Office of Immigration Review; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice,<br><br>    *Defendants*. | Case No. 25-cv-06366 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REVISE THE COURT'S OPINION AND ORDER DATED SEPTEMBER 12, 2025 (ECF 51)**

i

## TABLE OF CONTENTS

Page No.

TABLE OF AUTHORITIES ...................................................................................................ii-iii

PRELIMINARY STATEMENT ....................................................................................................1

BACKGROUND .............................................................................................................................3

STANDARD....................................................................................................................................8

ARGUMENT...................................................................................................................................9

    A.    The Court should revisit its Stay Opinion...................................................................9

    B.    The Court should find that Plaintiffs are likely to succeed on their claim that the
          Immigration Court Arrest Policy is arbitrary and capricious.......................................9

    C.    The Court should find that Plaintiffs meet the remaining requirements for
          preliminary relief. ....................................................................................................15

    D.    The Court should stay the government's rescission of the April 27, 2021 Memo's
          protections on arrests at immigration courts............................................................18

CONCLUSION..............................................................................................................................18

TABLE OF AUTHORITIES

Page No.

**Cases**

*Alabama Legislative Black Caucus v. Alabama*,
    575 U.S. 254 (2015).................................................................................................. 16

*Aurelius Cap. Master, Ltd. v. Republic of Argentina*,
    644 F. App'x 98 (2d Cir. 2016) .................................................................................. 8

*Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*,
    167 F.4th 605 (2d Cir. 2026) ..................................................................................... 16

*Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*,
    96 F.4th 351 (2d Cir. 2024) ....................................................................................... 18

*DHS v. Regents of the Univ. of California*,
    591 U.S. 1 (2020)........................................................................................... 10, 14, 15

*Encino Motorcars v. Navarro*,
    579 U.S. 211 (2016) ........................................................................................... *passim*

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)............................................................................................ 13, 14

*Haitian Evangelical Clergy Ass'n v. Trump*,
    789 F. Supp. 3d 255 (E.D.N.Y. 2025) ....................................................................... 17

*Katz v. Donna Karan Co., L.L.C.*,
    872 F.3d 114 (2d Cir. 2017)....................................................................................... 17

*Kingdom v. Trump*,
    No. 25–CV-691, 2025 WL 1568238 (D.D.C. June 3, 2025) ...................................... 17

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
    463 U.S. 29 (1983)................................................................................. 10, 12, 13, 14

*New York v. U.S. Dep't of Homeland Sec.*,
    969 F.3d 42 (2d. Cir. 2020)........................................................................................ 16

*NML Cap., Ltd. v. Republic of Argentina*,
    No. 08-CV-6978, 2016 WL 836773 (S.D.N.Y. Mar. 2, 2016) ................................... 8

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003)....................................................................................... 8

*Pablo Sequen, et al. v. Albarran et al.*,
    No. 25-CV-06487 (N.D. Cal Apr. 2, 2026) ............................................................... 10

*Parmar v. Jeetish Imps., Inc.*,
    180 F.3d 401 (2d Cir. 1999)........................................................................................ 8

*R.F.M. v. Nielsen*,
    365 F. Supp. 3d 350 (S.D.N.Y. 2019).......................................................................... 10

*Saget v. Trump*,
    375 F. Supp. 3d 280 (E.D.N.Y. 2019) .................................................................... 10, 17

*Salazar v. King*,
    822 F.3d 61 (2d Cir. 2016)........................................................................................... 10

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017) ......................................................................... 4

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947).................................................................................................... 10

*Sierra Club v. U.S. Army Corps of Eng'rs*,
    732 F.2d 253 (2d Cir. 1984)........................................................................................... 9

*Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*,
    619 F.3d 207 (2d Cir. 2010)........................................................................................... 8

*Stern v. Highland Lake Homeowners*,
    No. 18-CV-4622, 2021 WL 1164718 (S.D.N.Y. Mar. 26, 2021)...................................... 9

*Texas v. Biden*,
    646 F. Supp. 3d 753 (N.D. Tex. 2022) ......................................................................... 18

*United States v. LoRusso*,
    695 F.2d 45 (2d. Cir. 1982)........................................................................................... 8

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
    956 F.2d 1245 (2d Cir. 1992)......................................................................................... 8

*Wages and White Lion Invs., L.L.C. v. U.S. Food and Drug Admin.*,
    16 F.4th 1130 (5th Cir. 2021) ...................................................................................... 18

*You, Xiu Qing v. Nielsen*,
    321 F. Supp. 3d 451 (S.D.N.Y. 2018)........................................................................... 17

**Rules**

Federal Rule of Civil Procedure 54(b)......................................................................... 8, 9

## PRELIMINARY STATEMENT

The Court's September 12, 2025 Opinion and Order denying Plaintiffs' motion for a stay of the government's unprecedented policy of arresting noncitizens at immigration court rests on "a material mistaken statement of fact that the government made to the Court and Plaintiffs." ECF 77 ("March 24, 2026 Letter"). The agency guidance "that the government relied on in presenting its arguments in this case . . . does not and has never applied" to the policy challenged here. *See id.*

In an opposition brief filed on August 20, 2025 (ECF 39), and at oral argument on September 2, 2025, the government told the Court that a May 27, 2025 memorandum (the "May 27, 2025 Memo") set out the new policy permitting widespread arrests at immigration courts and explained why ICE had abandoned the agency's prior policy largely prohibiting such arrests, memorialized in an April 27, 2021 memorandum (the "April 27, 2021 Memo"). Indeed, the government's *entire* argument as to why its new policy vastly expanding immigration courthouse arrests was not arbitrary and capricious under the Administrative Procedure Act ("APA") rested exclusively on the content of the May 27, 2025 Memo. ECF 39 at 23–25 (citing justifications and limiting language about how arrests should be conducted from the May 27, 2025 Memo). Thus, the government argued that the May 27, 2025 Memo provided a basis for its abandonment of the April 2021 policy limiting arrests at immigration courts.

Relying on these false statements, the Court denied Plaintiffs' motion for a stay. September 12, 2025 Opinion and Order, ECF 51 ("Stay Op."). Specifically, the Court relied on the government's briefing and argument regarding the May 27, 2025 Memo—using quotes from that memo and characterizations of it consistent with the government's now-retracted representations—to find Plaintiffs unlikely to succeed on their claim that the policy is arbitrary and capricious, concluding that ICE had acknowledged its change in policy, did not "fail to

1

consider an important aspect of the problem," and stated the required "good reasons" for abandoning its 2021 restrictions. Stay Op. at 38–45. Given that the Court's decision explicitly relied on a factual premise that the government now concedes was false, the parties agree that this Court must revisit that portion of the Stay Opinion.

On the corrected record, this Court should stay the government's new, unprecedented policy and award Plaintiffs the relief they have always sought: reinstatement of the agency's prior policy largely prohibiting arrests at immigration courthouses. In its Stay Opinion, the Court held that the APA required ICE to: (1) acknowledge the change from its prior policy, (2) articulate "good reasons" for that reversal, and (3) explain why it is departing from the prior policy's core principle protecting access to immigration courts. Stay Op. at 38. On each factor, the Court relied on ICE's now-disclaimed May 27, 2025 Memo to find ICE satisfied those requirements. ICE offered no other justification.

Applying the same legal analysis that the Court previously used to the now-corrected record demonstrates that ICE's rescission of the 2021 policy severely limiting arrests at immigration courts in favor of a policy instead broadly permitting such arrests was arbitrary and capricious under the APA. It remains undisputed that the government abandoned the April 2021 policy and embarked on a campaign of mass arrests inside immigration courthouses; it is now clear that there is no evidence that the agency engaged in reasoned decision-making when enacting this dramatic change in policy. With the May 27, 2025 Memo out of the picture, all that remains is the prior policy articulated in the April 27, 2021 Memo.

Finally, because the remaining preliminary relief factors not reached in the Court's prior decision—irreparable harm and the balancing of the equities—weigh overwhelmingly in Plaintiffs' favor, the Court should grant the requested stay. In the seven months during which the

government perpetuated its misrepresentation upon the Court, Plaintiffs, their members, and the general public have suffered serious, irreparable harm. Hundreds of real people—with families, schools, medical appointments, jobs, and lives—arrived at immigration courts to attend mandatory hearings only to be summarily arrested by ICE agents outside the courtrooms as they left pursuant to ICE's unreasoned policy. They have been sent to detention centers around the country, where many remain even today.

## BACKGROUND

### *ICE rescinds its prior policy severely limiting immigration court arrests and adopts a new policy broadly permitting such arrests*

On January 21, 2025, the Trump Administration abandoned ICE's prior virtual prohibition on civil immigration arrests at immigration courts by rescinding the April 27, 2021 Memo which prohibited civil immigration arrests "in or near a courthouse," explicitly "including immigration courts," except in limited exigent circumstances. Belsher Decl. Ex. 1 (ECF 24-1); Cassin Decl. ¶ 9 (ECF 23-6). Additionally, the government's 2025 interim guidance broadly permitted "agents [to] conduct civil immigration enforcement actions in or near courthouses." Belsher Decl. Ex. 3 (ECF 24-3). This interim guidance mirrored an earlier 2018 Memorandum that had generally expanded arrest authority at federal, state, and local/municipal courts, but had not applied to immigration courts by its terms or in practice. *Id.*; ECF 23-6 ¶ 20. On May 27, 2025, the Acting Director of ICE circulated a slightly revised and finalized version of the January 21, 2025 Memo. Belsher Decl. Ex. 4 (ECF 24-4). Neither 2025 memorandum mentions immigration courts.

Nonetheless, it is uncontroverted in the record that in May of 2025, ICE began a nationwide campaign of widespread arrests at immigration courts. In support of their stay motion, Plaintiffs submitted numerous, uncontested declarations from impacted noncitizens, practitioners, and former Immigration Judges demonstrating that this new policy existed—and was unprecedented

and highly disruptive. ECF 23 at 2–3 (citing and discussing Plaintiffs' evidence in the record). The harms resulting from the new policy have been immediate and severe: absent limitations on who ICE will arrest, each and every noncitizen must now make a choice to either attend their mandatory hearings and face unlawful arrest resulting in loss of employment, family separation, and the interruption of medical care or live with *in absentia* removal order hanging over their heads. ECF 23 at 5–8.

Also undisputed is that the Immigration Court Arrest Policy implemented in May 2025 departed from previous agency policy. For decades, ICE had largely refrained from conducting arrests at immigration courts. ECF 1 ¶¶ 4, 18–26; ECF 23 at 2, 7. The reasons were straightforward: ICE had already determined noncitizens in non-detained removal proceedings need not be detained, *see Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (noting noncitizens in non-detained immigration proceedings have already received a determination that detention is unnecessary), and arresting them at immigration court would chill access to those courts and disrupt the fair administration of justice, ECF 23 at 10–13; Fleischaker Decl. ¶¶ 10, 21, 32 (ECF 23-6); Burr Decl. ¶¶ 33-35 (ECF 23-2). The April 27, 2021 Memo formalized this understanding noting law enforcement's "special responsibility to ensure [] access to" immigration courthouses and citing as a "core principle" underlying this policy that "[e]xecuting civil immigration enforcement actions in or near [them] may chill individuals' access to [immigration] courthouses, and as a result, impair the fair administration of justice." ECF 24-1 at 2. As a result, prior to the policy challenged here, civil arrests at immigration courts were extremely rare. ECF 23-6 ¶¶ 29, 34; Rowland-Kain Decl. ¶ 29 (ECF 23-11); Levenson Decl. ¶¶ 4–5 (ECF 23-10); Umama Decl. ¶¶ 2, 10 (ECF 23-12).

***Plaintiffs file the present action and seek a stay***

On August 1, 2025, Plaintiffs African Communities Together ("ACT") and The Door filed this APA challenge to ICE's "policy that abandons restrictions ICE had previously adopted to protect noncitizens' access to the courts by broadly authorizing arrests at immigration courthouses" ("Immigration Court Arrest Policy").[1] ECF 1 ¶ 3. Plaintiffs separately challenged "an Executive Office of Immigration Review ('EOIR') policy that encourages Immigration Judges ('IJs') to depart from the agency's own regulations and Immigration Court Practice Manual by summarily dismissing noncitizens' full removal proceedings without any meaningful process ('EOIR Dismissal Policy')." *Id.* The combined effect of these policies was to deny noncitizens full and fair hearings and instead summarily arrest and detain them. *Id.* ¶¶ 48–54. Shortly thereafter, on August 11, 2025, Plaintiffs sought a preliminary stay of the policies. *See* ECF 22.

Specifically, Plaintiffs requested the Court "stay or postpone . . . [ICE's] policy *abandoning* its prior restrictions on immigration courthouse arrests," with the effect of reinstating the April 27, 2021 Memo during the pendency of this case. ECF 22 at 1 (emphasis added); *cf.* ECF 45 at 15 (addressing the Court's authority to restore the last undisputed status quo as the appropriate form of preliminary relief). Specifically, Plaintiffs' proposed order asked the Court to stay "Defendants' rescission of their prior policy limiting arrests in and around immigration courthouses—as evidenced by their rescission of relevant portions of the April 27, 2021 ICE Memo"—and restore the prior policy for the pendency of this litigation. ECF 22-1 at 2.

---

[1] Plaintiffs' Complaint titled this policy the "ICE Courthouse Arrest Policy." *See* ECF 1 ¶ 3. However, to avoid any confusion resulting from Defendants' change in position that the agency's written courthouse arrest policy (the May 27, 2025 ICE Memo) does not apply to immigrations courts, *see* ECF 77, Plaintiffs will refer to the policy challenged here as the "Immigration Court Arrest Policy" to differentiate from the policy the Defendants state applies to all courthouses except immigration courthouses.

Plaintiffs' motion seeking a stay of the Immigration Court Arrest Policy argued that the rescission of the April 27, 2021 Memo is arbitrary and capricious because the agency failed to provide "good reasons" for departing from its prior policy and failed to consider an important aspect of the problem recognized by prior administrations—that arrests at immigration courts chill access and impede the fair administration of justice, ECF 23 at 9–12. Plaintiffs have argued throughout this litigation, including in their motion to stay, that the May 27, 2025 Memo neither provides a sufficient statement of ICE's Immigration Court Arrest Policy nor provides a reasoned justification for it. *Id*.; ECF 45 at 2–8. As this Court noted during oral argument on the stay motion, the Memo appears to *exclude* immigration courts. Sept. 2, 2025 Tr. 24:18-23 (ECF 62).

Nonetheless, in briefing and at oral argument, the government's *consistent and exclusive* defense to Plaintiffs' claim that the policy change was arbitrary and capricious was that the May 27, 2025 Memo provided a reasoned explanation. The government pointed to that memo as the source of the arrest policy ICE agents followed at immigration courts, including guidance to minimize the harms of such arrests. The government claimed the memo explained the agency's reasoning for abandoning its prior policy largely prohibiting such arrests and provided the agency's justifications for the policy change. ECF 39 at 23–25; ECF 66 at 16; ECF 74 at 2; Sept. 2, 2025 Tr. (ECF 62). Finally, the government argued the May 27, 2025 Memo addressed the prior April 27, 2021 Memo's concerns about chilled access through its provisions mandating "discreet" enforcement, and that it "strikes a balance between ICE's legitimate interests in enforcing immigration law . . . and the goal of minimizing interference with judicial proceedings." ECF 39 at 23–24.[2]

---

[2] In fact, Defendants maintained this position even in summary judgment briefing, devoting a full section to arguing "*The ICE Guidance Applies to Immigration Courts*," in response to Plaintiffs' argument it does not. ECF 70 at 5–8.

*The Court's Opinion and Order*

On September 12, 2025, this Court issued an Opinion and Order denying in part Plaintiffs' motion to stay the government's policies. While the Court found that the Immigration Court Arrest Policy was subject to review under the APA, it ultimately concluded that Plaintiffs were unlikely to succeed on the merits of their claim that the Immigration Court Arrest Policy is arbitrary and capricious.[3] The Court relied on the government's representations that the May 27, 2025 Memo applied to arrests in immigration courts and credited the Memo's direction that such arrests would be conducted "discreetly" to minimize their "impact on court proceedings[,]" Stay Op. at 44, and that ICE officers would "avoid unnecessarily alarming the public or disrupting court operations" and "limit their time at courthouses." *Id.* at 45 n.22. The Court further found the Memo provided "facially 'good reasons'" for the change. *Id.* at 44. As a result, the Court held that Plaintiffs were unlikely to succeed on their argument that the Immigration Court Arrest Policy is arbitrary and capricious. *Id*. at 45.

In the six months since this Court issued its Opinion and Order, the government's arrests at immigration courts have continued apace, causing irreparable harm to Plaintiffs, their members, and the public at large. In January 2026, the parties completed briefing on cross-motions for summary judgment. ECF 74, 75.

*The government's admission of a material misrepresentation*

On March 24, 2026, the government notified Plaintiffs' counsel and the Court of a "material mistaken statement of fact" at the core of their case. ECF 77 at 1. The government conceded that the May 27, 2025 Memo "does not and *has never* applied to" civil immigration arrests at immigration courts and that accordingly, their only defense to Plaintiffs' arbitrary and

---

[3] The Court made other findings on Plaintiffs' other claims are not at issue in this motion and so are not discussed herein.

7

capricious claim must be "withdraw[n]." *Id.* (emphasis added). The government further conceded that the portion of this Court's Opinion denying Plaintiffs' motion to stay the policy, "which relied on the [g]overnment's prior [false] representations regarding the applicability of" the memorandum, will "need to be reconsidered." *Id.* at 1–2 (citing government briefs filed at ECF 39, 66, 70, and 74; the government's Sept. 2, 2025 oral argument, ECF 62; and this Court's Sept. 12, 2025, opinion and order, ECF 51). Plaintiffs responded to this admission the following day. ECF 78. The Court subsequently held a conference on April 15, 2026, and ordered a briefing schedule on the present motion.

## STANDARD

"A district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgement." *United States v. LoRusso*, 695 F.2d 45, 53 (2d. Cir. 1982); *see also NML Cap., Ltd. v. Republic of Argentina*, No. 08-CV-6978, 2016 WL 836773, *6 (S.D.N.Y. Mar. 2, 2016) (finding courts have "wide discretion" to revise injunctions), *aff'd sub nom. Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98 (2d Cir. 2016). Moreover, Rule 54(b) of the Federal Rules of Civil Procedure permits district courts "to revise . . . any non-final order 'at any time before the entry of a judgment.'" *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 212 (2d Cir. 2010) (quoting Fed. R. Civ. P. 54(b)); *see also Parmar v. Jeetish Imps., Inc.*, 180 F.3d 401, 402 (2d Cir. 1999) ("All interlocutory orders remain subject to modification or adjustment prior to the entry of a final judgment adjudicating the claims to which they pertain.") (citing Fed. R. Civ. P. 54(b)).

Modification under Rule 54(b) is appropriate where there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice. *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 166 (2d Cir. 2003); *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d

8

1245, 1255 (2d Cir. 1992); *see also NML Cap., Ltd.*, 2016 WL 836773, at *7 (noting modification is appropriate "when 'there has been such a change in the circumstances as to make modification of the decree equitable'") (quoting *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 257 (2d Cir. 1984)).

**ARGUMENT**

### A.   The Court should revisit its Stay Opinion.

The parties agree that this Court should revise the portion of its Stay Opinion denying Plaintiffs relief on their claim that the Immigration Court Arrest Policy is arbitrary and capricious. *See* ECF 77 at 2 (acknowledging the Stay Opinion will "need to be reconsidered"). The government's admission that its central defense—relied on by this Court in denying Plaintiffs' requested relief—was in fact a material misrepresentation is a paradigmatic case for modification under Rule 54(b). *Stern v. Highland Lake Homeowners*, No. 18-CV-4622, 2021 WL 1164718, at *5 (S.D.N.Y. Mar. 26, 2021) ("A litigant's use of fraud or misrepresentations to the court and other parties is a powerful equitable basis to reconsider or vacate an order procured through such deception.").

Where, as here, the government has withdrawn its central piece of evidence relied on by the Court in its decision, the government itself concedes the decision needs reconsideration, and irreparable harm is ongoing, revision would be "consonant with justice." *Id*.

### B.   The Court should find that Plaintiffs are likely to succeed on their claim that the Immigration Court Arrest Policy is arbitrary and capricious.

As a threshold matter, the government did not contest that its rescission of the April 2021 Memo was final agency action. *See generally* ECF 39. Nor could they. As the government recently admitted in related litigation, "the rescission of the [April 27, 2021 Memo] by the Interim [January 2025] Guidance and the May [2025] Guidance was necessary to lift the prior restrictions on civil

9

immigration enforcement action at immigration courthouses," and "permits Plaintiffs to assert a claim under the [APA] challenging civil enforcement actions in or near courthouses[,]" notwithstanding the government's recent change in position with respect to the applicability of the new guidance to immigration courts. Response of Federal Defendants to Notice of Supplementary Material and Clarification of Courthouse Arrest Policies, *Pablo Sequen, et al. v. Albarran et al.*, No. 25-CV-06487 (N.D. Cal Apr. 2, 2026), ECF 199. Accordingly, the parties appear to agree that the recission of the April 27, 2021 Memo constitutes a final agency action that Plaintiffs may challenge under the APA. *See Salazar v. King*, 822 F.3d 61, 82–83 (2d Cir. 2016).

Agency action is arbitrary and capricious where an agency changes its previous position—including when it "abandons [a] decades-old practice"—without (1) "display[ing] awareness that it is changing position," (2) "show[ing] that there are good reasons for the new policy," or (3) balancing those good reasons against "engendered serious reliance interests." *Encino Motorcars v. Navarro*, 579 U.S. 211, 221–22 (2016) (citation omitted); *see also* Stay Op. at 38. This requirement exists irrespective of whether the policy at issue is written. *See R.F.M. v. Nielsen*, 365 F. Supp. 3d 350, 379 (S.D.N.Y. 2019) ("[L]ack of a reasoned explanation for a policy" that was a "departure from years of agency practice" is unlawful.) (cleaned up); *Saget v. Trump*, 375 F. Supp. 3d 280, 355 (E.D.N.Y. 2019) ("requirement" to explain "not limited to formal rules or official policies and applies equally to practices implied from agency conduct."). Independently, agency action is also arbitrary and capricious when the agency has "failed to consider important aspect[s] of the problem." *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 25 (2020) (cleaned up). To engage in "reasoned decisionmaking," agencies must "look at the costs as well as the benefits" of their actions. *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 52, 54 (1983). To "comply with [] procedural requirements[,]" *Regents of U.C.*, 591 U.S. at 21, agencies reversing course

10

"must [] set forth with such clarity as to [make] understandable" the action's basis, *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (*Chenery II*).

The government's decision to revoke the April 27, 2021 Memo's protections for immigration court arrests is arbitrary and capricious on three independent grounds: (1) the agency did not acknowledge its policy reversal with respect to arrests at immigration courts, let alone state what the new policy would be; (2) the agency has not provided an adequate explanation of its policy reversal or balanced its reasons for the new policy against "engendered serious reliance interests," *Encino Motorcars*, 579 U.S. at 222 (cleaned up); and (3) the agency failed to consider several important aspects of the problem as well as reasonable alternatives. On each of these three points, the government exclusively relied on the May 2025 memo to argue ICE's rescission was not arbitrary and capricious, *see* ECF 39 at 23–25, and the Stay Opinion in turn relied on the government's representations about the 2025 guidance to deny the stay, Stay Op. at 40–45. On the corrected record, ICE offered *no* stated justification for, acknowledgement of, or explanation defining its new policy, and the same analysis confirms the rescission was arbitrary and capricious

### 1.    ICE's *sub silentio* departure from prior policy is arbitrary and capricious.

First, ICE did not "display awareness it [was] changing [its] position" with respect to arrests at immigration courts. *Encino Motorcars*, 579 U.S. at 221 (citation omitted). For decades prior to ICE's implementation of its Courthouse Arrest Policy in 2025, including *prior* to the issuance of the April 27, 2021 Memo, the agency had severely limited arrests in and around immigration courthouses to ensure that noncitizens would not be chilled from attending their required proceedings. *See* ECF 24-1; ECF 24-3; ECF 24-4; ECF 23-6 ¶¶ 20–22, 25–29, 31; ECF 23-2 ¶¶ 33–34; ECF 23-11 ¶¶ 22(b), 29. While the interim January 21, 2025 Memo rescinded the April 27, 2021 Memo, neither the interim nor final May 27, 2025 Memo even mentioned immigration courts, much less stated what the new policy would be with respect to those courts.

11

*See* ECF 24-3 at 1; *see generally id*.; ECF 24-4. The government has now confirmed these memos "never applied" to immigration courts and did not set out the policy applicable to those courts. ECF 77 at 1. This failure to acknowledge the change in policy is fatal under the APA. *See State Farm*, 463 U.S. at 56–57; *Encino Motorcars*, 579 U.S. at 222.

The government's reversal of the April 27, 2021 Memo without reference to the prior or future policy for arrests at immigration courts is sufficient for the Court to end its analysis there. However, the corrected record now confirms that the government's new policy also departs from decades of prior practice. *See* ECF 23 at 2, 7; ECF 45-2 ¶¶ 14–15. In discussing the written agency memoranda on courthouse arrests preceding the April 27, 2021 Memo, the Court had understandably (given the government's misrepresentations) accepted that memoranda issued by ICE from 2014 onwards had all applied to immigration courts. Stay Op. at 39–40. But the government's admission that the May 27, 2025 Memo does not apply to immigration courts—and never has—vitiates that assumption. *See* ECF 39 at 24 (arguing the May 27, 2025 Memo is "little different than its predecessors"); ECF 77. The ICE memorandum dated January 10, 2018, is a near-verbatim copy of the May 27, 2025 Memo, and so cannot be read to apply to immigration courts.[4] In fact, the only ICE guidance directly applicable to immigration courts was the 2021 memo.

Plaintiffs' evidence confirms that the longstanding policy and practice was that noncitizens could attend their immigration court proceedings without threat of arrest. ECF 45 at 6–7; ECF 45-2 ¶¶ 10–15. Every fact in the corrected, uncontested record confirms that prior to May 2025, arrests at immigration court were rare. *See* ECF 23-6 ¶¶ 26–36; ECF 23-11 ¶ 29; ECF 23-2 ¶ 33; ECF 23-

---

[4] In its Stay Opinion, the Court also referenced a 1996 memorandum issued by the Executive Office for Immigration Review noting an agreement between the immigration courts and ICE's predecessor agency (the INS) permitting ICE to arrest some noncitizens at the conclusion of their removal proceedings. The government does not rely on this memo, did not include it in their administrative record, and in any event, the memo proves the existence of the default policy that immigration enforcement would not take place at immigration courts.

10 ¶ 5; ECF 23-7 ¶¶ 8, 19; ECF 45-2 ¶¶ 14–15. Since the Immigration Court Arrest Policy went into effect in May 2025, these arrests have skyrocketed. *See* ECF 23-6 ¶¶ 26–29, 31-36; ECF 23-4 ¶ 14; ECF 23-11 ¶¶ 17, 22(a)–(e), 27, 29; ECF 23-5 ¶¶ 5, 12-13, 15; ECF 24-13; ECF 24-16; ECF 23-9 ¶¶ 12–15, 20–21; ECF 23-7 ¶¶ 4, 8, 10–11, 14, 17; ECF 23-10 ¶¶ 11, 25; ECF 24-8; ECF 24-9; ECF 24-10. The before and after of the policy is therefore not simply a matter of degree, as the Court was led to believe, Stay Op. at 43, but a complete 180-degree reversal from longstanding policy and practice. Under the prior policy, for decades, most people could attend immigration court assured they could return to their families, jobs, and communities; under the new policy, no one is safe. ICE's failure to acknowledge the unprecedented nature of its new Immigration Court Arrest Policy is therefore a "*sub silentio*" departure from prior policy and is arbitrary and capricious. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *see Encino Motorcars*, 579 U.S. at 221–22.

2. **ICE failed to provide good reasons for its policy reversal or balance its reasons against serious reliance interests.**

Second, since the May 27, 2025 Memo does not apply to immigration courts, as the agency admits, ICE has failed to provide *any* reasons for its unprecedented policy. By the government's own admission, the "facially" good reasons this Court identified in the May 27, 2025 Memo— safety and difficulty locating noncitizens in certain jurisdictions—do not apply to arrests at immigration courts. ECF 77. Nothing in the corrected record before the Court provides *any* reasoning for ICE's recission of the April 27, 2021 Memo and subsequent implementation of the Immigration Court Arrest Policy. Since the Court may not infer the agency's reasoning from mere silence, the agency's unreasoned change in policy is arbitrary and capricious. *See State Farm*, 463 U.S. at 57.

Further, the government's misrepresentations related to the May 27, 2025 Memo—relying

on it as legal cover to arrest thousands of individuals only to disclaim its applicability nearly a year later—confirms that ICE failed to balance its reasons for the new policy against "engendered serious reliance interests." *Encino Motorcars*, 579 U.S. at 222 (cleaned up); *Regents of U.C.*, 591 U.S. at 30. Specifically, those pursuing relief in immigration court, as well as court officials, have long expected that noncitizens could appear in immigration court to vindicate their rights and interests without risk of civil arrest. *See* ECF 23-2 ¶ 34; ECF 23-6 ¶¶ 35–36; ECF 23-3 ¶ 6 (discussing how noncitizen arrested at hearing had not brought important prescription medication); ECF 23-7 ¶¶ 18, 25 (discussing arrested noncitizens missed medical care, left cars in parking lots, and did not have time to give home keys to partner); ECF 23-10 ¶ 14 (discussing noncitizens "quickly text[ing] loved ones or ma[king] brief calls to say goodbye"). Noncitizens have relied on this expectation to attend court proceedings without making childcare, elder care, healthcare, and employment arrangements in the event of arrest. *See* ECF 23-3 ¶ 6; ECF 23-7 ¶¶ 18, 25; ECF 23-11 ¶ 20. Courts have relied on this expectation to set deadlines, manage their dockets, and ensure decorum in their courts. *See* ECF 23-6 ¶¶ 32–33, 35; ECF 23-2 ¶ 34; ECF 23-5 ¶ 15; ECF 23-12 ¶¶ 9–10. The new policy does not even acknowledge these "serious reliance interests," let alone take them "into account." *Fox Television Stations*, 556 U.S. at 515.[5]

**3.    ICE failed to consider important aspects of the problem or reasonable alternatives.**

Third and finally, the Immigration Court Arrest Policy is arbitrary and capricious because ICE failed to consider the "core principle" animating its decade-long practice and policy of minimizing arrests at immigration court: "access to courthouses" and "the fair administration of

---

[5] Separate and apart from the reliance interests of noncitizens generally in being able to attend immigration court hearings without fear of arrest, Plaintiffs' members also have also been impacted by their reliance on the prior policy. As discussed *infra* at page 16, Plaintiffs have now identified members of the Plaintiff organizations who have these reliance interests and the Court is permitted to consider this new evidence in the instant motion.

justice." ECF 24-1 at 1; *State Farm*, 463 U.S. at 43. In reversing course, the agency did not even mention these principles much less consider them. In its Stay Opinion, this Court suggested that the government had impliedly balanced these considerations by encouraging officers "to avoid unnecessarily alarming the public or disrupting court operations" and to conduct arrests "discreetly." Stay Op. at 44, 45 n.22 (quoting May 27, 2025 ICE Memo). Now, the government has admitted that it was never their policy to conduct these arrests "discreetly" or otherwise in line with the terms of the May 27, 2025 ICE Memo. ECF 77 at 1. As the corrected, undisputed record evidence shows, the Immigration Court Arrest Policy the government actually enacted after rescinding the April 27, 2021 Memo's limitations has been enormously disruptive and has undoubtably alarmed the public. *See* ECF 23 at 2–4, 5–8 (discussing record evidence in support of Plaintiffs' motion for a stay); ECF 45-1; ECF 45-2; ECF 45-3; ECF 68 at 1–6, 7–8, 10–11 (discussing record evidence in support of Plaintiffs' motion for summary judgment). The government has never argued—and cannot now be permitted to argue—that the agency elsewhere considered how its new policy would chill access to immigration courts and impede the fair administration of justice. *See Regents of U.C.*, 591 U.S. at 22 (finding courts may not consider "*post hoc* rationalizations" for agency action). Accordingly, the agency has failed to consider an important aspect of the problem.

## C.    The Court should find that Plaintiffs meet the remaining requirements for preliminary relief.

In its prior decision, the Court did not reach the final factors in the stay standard—irreparable harm and balance of the equities—on their claim that the ICE Courthouse Arrest Policy is arbitrary and capricious. Should the Court revise its finding and hold Plaintiffs are likely to succeed on that claim, it should further find that Plaintiffs satisfy these final two requirements for a stay for all of the reasons stated in Plaintiffs' briefs.

15

Specifically, the Immigration Court Arrest Policy irreparably harms The Door by interfering with The Door's core business activities of (1) providing full scope representation to individual members, specifically noncitizens in removal proceedings; (2) helping members to seek immigration relief, including via provision of limited representation or legal advice (*e.g.* drop-in clinic); and (3) providing in-person services, such as healthcare, education, and mental health counseling. ECF 23-1 at ¶¶ 14, 25–29, 31, 33–34, 37.[6]

Plaintiffs' members have been irreparably harmed and face the imminent threat of irreparable harm in the form of their abrupt unlawful detention. *See* ECF 23 at 22–23; ECF 45 at 13–14; ECF 23-8 ¶¶ 12–43 (discussing past harm to members of ACT and potential future harm to members, including arrest, detention, separation from loved ones, poor conditions in detention, loss of access to services and education); ECF 23-1 ¶¶ 35–43 (same for members of The Door). Because these injuries cannot be remedied through damages, they constitute irreparable harm. *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d. Cir. 2020) (recognizing that "because money damages are prohibited, [injuries inflicted by unlawful agency are] are irreparable").

In its Stay Opinion, the Court found that neither Plaintiff satisfied the requirements of associational standing because they had not identified members with standing by name. Stay Op. at 14–16. To the extent the Court is inclined to revisit the question, Plaintiffs have since cured the defect. *See* ECF 68-1; ECF 68-2; ECF 68-3 ¶¶ 19–20; ECF 68-4; ECF 68-14 ¶ 10; *see Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270–71 (2015) (finding district court should

---

[6] Since this Court's Stay Opinion, which correctly found Plaintiff The Door has standing, the Second Circuit issued a decision holding that to demonstrate standing an advocacy organization must demonstrate a "'perceptibl[e] impair[ment]' [of] 'core business activities.'" *Connecticut Fair Hous. Ctr. v. CoreLogic Rental Prop. Sols., LLC*, 167 F.4th 605, 617 (2d Cir. 2026). For many reasons, that decision has limited application to *direct service* organizations like The Door—as contrasted with *advocacy* organizations like the plaintiff in that case—and in any event The Door has demonstrated it meets any applicable standard. To the extent the Court sees any need to revisit the issue—which it should not— Plaintiffs are prepared to further brief the issue and/or provide supplemental declarations. *See Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 270–71 (2015) (finding district court should "allow or require" a plaintiff to supplement the record to demonstrate standing where it has concerns) (cleaned up).

"allow or require" a plaintiff to supplement the record to demonstrate standing where it has concerns) (cleaned up); *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("precisely because the plaintiff bears the burden of alleging facts demonstrating standing, we have encouraged district courts to 'give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction' where necessary" (citation omitted)).

Finally, the public interest strongly favors a stay of ICE's policy of conducting immigration courthouse arrests, which is not only unlawful agency action, but has also caused innumerable harms to noncitizens and their families, including profound emotional and physical distress, the separation of families, loss of employment and income, disruption of medical care, and loss of caregiving. ECF 23-10 ¶¶ 14, 19-20, 22–25; ECF 23-5 ¶ 15; ECF 23-3 ¶¶ 4, 6; ECF 23-7 ¶¶ 12, 15, 17–18, 20, 25, 26–31; ECF 23-11 ¶ 20. And, on the corrected record, the government has stated no countervailing interest in implementing an unexplained and improperly promulgated change in policy. *See Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 276 (E.D.N.Y. 2025) (in granting a 705 stay, holding that "'the perpetuation of unlawful agency action is not in the public interest'") (quoting *Saget*, 375 F. Supp. 3d at 377 (citations omitted)); *see also Kingdom v. Trump*, No. 25-CV-691, 2025 WL 1568238, at *12 (D.D.C. June 3, 2025) (weighing public interest in favor of a 705 stay when it found a likely APA violation, since "the Administrative Procedure Act [was] the output of democratic processes, namely the constitutional schema of bicameralism and presentment"); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 469 (S.D.N.Y. 2018) ("The public interest is in enforcing all the immigration laws" and when the government's "actions have likely violated those laws[,] . . . the public interest also lies in preventing [the government's] further abuse").

17

**D.     The Court should stay the government's rescission of the April 27, 2021 Memo's protections on arrests at immigration courts.**

Should the Court agree that Plaintiffs meet the requirements for preliminary relief, it should order the relief Plaintiffs sought in their motion—a stay of the rescission of the April 27, 2021 Memo's protections and corresponding restoration of the prior policy's guidance on courthouse arrests. ECF 22-1 at 2; ECF 45 at 15. This relief constitutes a return to "the 'status quo ante'– that is, the last actual, peaceable, uncontested status which preceded the pending controversy." Stay Op. at 23 (quoting *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024)). And as this Court explained, "[t]he 'status quo' in this case is . . . ICE's exercise of its arrest authority around immigration courthouses prior to" ICE's rescission of the April 27, 2021 Memo, when that guidance remained in full effect. *Id.* at 23–24 (also framing the stay as one that would "'suspend administrative alteration of [that] status quo'") (quoting *Texas v. Biden*, 646 F. Supp. 3d 753, 771 (N.D. Tex. 2022); *Wages and White Lion Invs., L.L.C. v. U.S. Food and Drug Admin.*, 16 F.4th 1130, 1144 (5th Cir. 2021)).

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion to revise the Stay Opinion, find that Plaintiffs meet the requirements for preliminary relief on their claim that the Defendants' change in arrest policy at immigration courts is arbitrary and capricious, and stay that change in policy.

18

Dated: April 22, 2026
New York, New York


Respectfully submitted,


NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION


  /s  _____

Amy Belsher
Elizabeth Gyori
Wafa Junaid
Claire Molholm
Thomas Munson
M. Porter*
Robert Hodgson
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300


AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION


  /s  _____

Noor Zafar
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500


AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION


  /s  _____

Michael K.T. Tan
Hannah Steinberg*
Oscar Sarabia Roman*
425 California Street, Suite 700
San Francisco, CA 94104
Tel: (415) 343-0770


EMERY CELLI BRINCKERHOFF ABADY
WARD & MAAZEL LLP


  /s  _____

Katherine Rosenfeld
Samuel Shapiro
Emily Wanger
One Rockefeller Plaza, 8th Floor
New York, NY 10020
Tel: (212) 763-5000


MAKE THE ROAD NEW YORK


  /s  _____

Harold Solis
Paige Austin
301 Grove Street
Brooklyn, NY 11237
Tel: (718) 418-7690


\* Admitted pro hac vice

*Counsel for Plaintiffs*


19

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the allocated page limit (twenty-five pages) pursuant to Rule 3(D) of this Court's Individual Practices in Civil Cases.

/s/ *Katherine Rosenfeld*
Katherine Rosenfeld