**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| AFRICAN COMMUNITIES TOGETHER; and THE DOOR,<br><br>        *Plaintiffs*,<br><br>v.<br><br>Todd M. LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the U.S. Department of Homeland Security; Sirce E. OWEN, in her official capacity as Acting Director, Executive Office of Immigration Review; and Pamela BONDI, in her official capacity as Attorney General, U.S. Department of Justice,<br><br>        *Defendants*. | Case No. 25-cv-06366 |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF MOTION**
**TO REVISE THE COURT'S OPINION AND ORDER DATED**
**SEPTEMBER 12, 2025**

TABLE OF CONTENTS

PAGE NO.

INTRODUCTION ...........................................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    ICE's Rescission of the 2021 Memo and Implementation of the Immigration
        Court Arrest Policy Is Subject to APA Review. .......................................................2

    II.    The Government Fails to Address Plaintiffs' Irreparable Harms, Relying
        Instead on Foreclosed and Erroneous Arguments. ...................................................5

    III.    The Balance of Equities and the Public Interest Strongly Favor a Stay. .................8

    IV.    Relief Under 8 U.S.C. § 705 Relief Stays the Agency Action. ...............................9

CONCLUSION................................................................................................................................10

TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Cabrera v. U.S. Dep't of Labor*,
No. 25-cv-1909, 2025 WL 2092026 (D.D.C. July 25, 2025) ............................................. 9

*Career Colls. & Schs. of Tx. v. U.S. Dep't of Educ.*,
98 F.4th 220 (5th Cir. 2024) ...................................................................................... 9

*Coal. for Humane Immigrant Rts. v. Noem*,
805 F. Supp. 3d 48 (D.D.C. Aug. 1, 2025) ...................................................... 9, 10

*Coleman v. Newburgh Enlarged City Sch. Dist.*,
503 F.3d 198 (2d Cir. 2007).................................................................................... 8

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
603 U.S. 799 (2024).................................................................................................. 9

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
591 U.S. 1 (2020)...................................................................................................... 4

*Falls v. Pitt*,
No. 16-CV-8863, 2026 WL 77919 (S.D.N.Y. Jan. 8, 2026) ............................... 3

*Haitian Evangelical Clergy Ass'n v. Trump*,
789 F. Supp. 3d 255 (E.D.N.Y. 2025) ................................................................. 8

*Haitian Evangelical Clergy v. Trump*,
No. 25-cv-1464, 2025 WL 1808743 (E.D.N.Y. July 1, 2025)......................... 10

*Heckler v. Chaney*,
470 U.S. 821 (1985)................................................................................................. 4

*I.N.S. v. Yueh-Shaio Yang*,
519 U.S. 26 (1996)................................................................................................... 5

*Kingdom v. Trump*,
No. 25-cv-691, 2025 WL 1568238 (D.D.C. June 3, 2025)................................. 8

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)................................................................................... 6

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994)............................................................................................. 10

*Make the Rd. N.Y. v. Pompeo*,
475 F. Supp. 3d 232 (S.D.N.Y. 2020)................................................................. 6

ii

*Milligan v. Pompeo*,
       502 F. Supp. 3d 302 (D.D.C. 2020) .................................................................................. 6

*Miranda v. Garland*,
       34 F.4th 338 (4th Cir. 2022) ............................................................................................ 8

*New Hampshire v. Maine*,
       532 U.S. 742 (2001) .......................................................................................................... 3

*Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
       322 F.3d 147 (2d Cir. 2003) .......................................................................................... 2, 3

*Pablo Sequen v. Albarran*,
       814 F. Supp. 3d 1005, 1027 (N.D. Cal. 2025) ......................................................... *passim*

*Patton v. Dole*,
       806 F.2d 24 (2d Cir. 1986) ............................................................................................... 6

*Rural & Migrant Ministry v. EPA*,
       565 F. Supp. 3d 578 (S.D.N.Y. 2021) .............................................................................. 9

*Salazar v. King*,
       822 F.3d 61 (2d Cir. 2016) ............................................................................................... 4

*Trump v. CASA*,
       145 S. Ct. 2540 (2025) .................................................................................................... 10

*United States v. Quintieri*,
       306 F.3d 1217 (2d Cir. 2002) ........................................................................................... 2

*Velasco Lopez v. Decker*,
       978 F.3d 842 (2d Cir. 2020) ............................................................................................. 8

*Walker v. Azar*,
       480 F. Supp. 3d 417 (E.D.N.Y. 2020) ............................................................................ 10

*West Virginia v. EPA*,
       577 U.S. 1126 (2016) ........................................................................................................ 9

*You, Xiu Qing v. Nielsen*,
       321 F. Supp. 3d 451 (S.D.N.Y. 2018) ........................................................................... 8, 9

*Zdanok v. Glidden Co.*,
       327 F.2d 944 (2d Cir. 1964) ............................................................................................. 3

iii

**Statutes**

5 U.S.C. § 701(a)(2) .......................................................................................................... 2

5 U.S.C. § 705 .................................................................................................................... 9

**Regulations**

8 C.F.R. § 1003.1(b) .......................................................................................................... 7

8 C.F.R. § 1003.38(a) .......................................................................................................... 7

**Other Authorities**

Reuel E. Schiller, Rulemaking's Promise: Administrative Law and Legal Culture in the 1960s
        and 1970s, 53 Admin. L. Rev. 1139 (2001) ........................................................ 10

**INTRODUCTION**

Though framed as an "opposition," the government's brief does not oppose or even address Plaintiffs' request that the Court revisit its September 12, 2025 Opinion and Order, ECF 51 ("Stay Op."), and it has elsewhere conceded that the Court must revisit it, ECF 77 at 1. Nor does the government mention the cause of this latest round of briefing: its material misrepresentation in this case concerning the relevance of the interim and final 2025 Memoranda on ICE arrests at courthouses. Nonetheless, the government now admits that *no* agency memoranda—past or present—authorizes or explains its decision to deviate from ICE's prior policy and in its place permit virtually unrestricted arrests at immigration courts. ECF 88 at 4–9 ("Opp.").[1] The government concedes that the only ICE memo that ever applied by its terms to arrests at those courts was the April 27, 2021 Memo, which virtually prohibited such arrests. *Id*.

Left without *any* justification for its decision to rescind that 2021 policy, the government makes no attempt to defend itself against the merits of Plaintiffs' claim that ICE's change in policy was arbitrary and capricious, conceding the issue. *See generally* Opp. Specifically, the government does not and cannot argue that ICE's change in policy meets the standard this Court identified because the agency has failed to (1) acknowledge the change from its prior policy, (2) articulate "good reasons" for that reversal, or (3) explain why it is departing from the prior policy's core principle protecting access to immigration courts. Stay Op. at 38.

The government's only arguments are that the rescission of the April 27, 2021 Memo is

---

[1] In the background section of its brief, the government repeatedly cites its administrative record. *See* Opp. at 1, 4–8. The Court should disregard these citations for two reasons. First, the government had not submitted this record at the time the Court ruled on the motion to stay and that new evidence is outside the scope of this Rule 54 motion. *See infra* at 2–3. Second, it is a certified record for the 2025 Memo which the government now concedes does not govern ICE's arrest policy at immigration courts. ECF 64 at 1.

unreviewable and that the harms and equities weigh against a stay. These arguments are all either improper attempts to relitigate arguments rejected by the Court, new arguments improperly raised in this motion, or meritless. The Court should therefore stay the government's harmful and wholly unjustified departure from the April 27, 2021 Memo.

## ARGUMENT

### I.     ICE's Rescission of the 2021 Memo and Implementation of the Immigration Court Arrest Policy Is Subject to APA Review.

The government argues that ICE's rescission of the April 27, 2021 Memo is committed to agency discretion by law and unreviewable under the APA. Stay Op. at 9–12. This argument fails for three independent reasons. First, this Court has already decided the issue. The Stay Opinion expressly considered whether the Immigration Court Arrest Policy was "unreviewable because [it] fall[s] within the APA's exception to judicial review for 'agency action . . . committed to agency discretion by law," Stay Op. at 25 (quoting § 5. U.S.C. 701(a)(2)), and rejected these arguments, *id*. at 39 ("Plaintiff's challenge to the policies is not a challenge to any individual exercise of discretion and is not beyond the scope of judicial review.").

That ruling is law of the case and is not subject to revision on this Rule 54(b) motion. "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002). Revision of an interlocutory order under Rule 54(b) is warranted only in narrow circumstances, including to correct a clear error or prevent manifest injustice. *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003). The Second Circuit has further cabined Rule 54(b) review, noting that while a court has "discretion to revisit earlier rulings in the same case," there is a "caveat that 'where litigants have once battled for the court's decision, they should neither be required, nor without good reason

2

permitted, to battle for it again.'" *Id.* (quoting *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964)). Accordingly, Rule 54(b) is *not* "a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Falls v. Pitt*, No. 16-CV-8863, 2026 WL 77919, at *1 (S.D.N.Y. Jan. 8, 2026).

The basis for reconsideration here—the government's misrepresentation about the interim and final 2025 Memos—has no bearing on the Court's finding that Plaintiffs' APA claims were reviewable, which rested on independent legal grounds. Accordingly, this Court should decline to consider the government's attempt to reassert the same threshold arguments that were considered and rejected by this Court as contrary to Rule 54.

Second, the government has conceded in parallel litigation that the rescission of the April 27, 2021 Memo is reviewable under the APA. In *Pablo Sequen v. Albarran*, the government represented on the record that the rescission "permits Plaintiffs to assert a claim under the [APA] challenging civil enforcement actions in or near courthouses." Response at 1–2, No. 25-cv-06487, ECF 199 (N.D. Cal. Apr. 2, 2026). The same policy, rescinded by the same memoranda, cannot be reviewable in one federal court and unreviewable in another. *See New Hampshire v. Maine*, 532 U.S. 742, 743 (2001) (noting courts routinely "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment").

Third, the argument fails on its merits. ICE does not have unreviewable discretion to radically change its arrest policy at immigration courts without explanation. ICE's longstanding policy and practice of largely refraining from arrests at immigration courts, which was memorialized in its April 27, 2021 Memo expressly prohibiting arrests at immigration courthouses

3

absent limited circumstances, provides this Court with ample "law to apply."[2] *Salazar v. King*, 822 F.3d 61, 76 (2d Cir. 2016) (explaining that "informal agency guidance" constitutes a "judicially manageable standard" for purposes of this analysis); *see also Pablo Sequen v. Albarran*, 814 F. Supp. 3d 1005, 1027 (N.D. Cal. 2025), at *9 ("ICE and EOIR's prior policies governing courthouse arrests . . . provide a standard.").

In arguing otherwise, the government conflates two distinct questions: whether ICE has discretion to make individual arrest decisions at immigration courts, which Plaintiffs do not dispute for present purposes, and whether ICE can rescind a formal written policy governing that discretion without acknowledging the change or providing reasons. The Supreme Court addressed that distinction in *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1 (2020), holding while individual non-enforcement decisions are presumptively unreviewable, *cf. Heckler v. Chaney*, 470 U.S. 821, 831–32 (1985), a formal written policy that imposes affirmative obligations is subject to APA review when rescinded, *Regents*, 591 U.S. at 16–18. The April 27, 2021 Memo is exactly that. It prohibited civil immigration enforcement actions "in or near a courthouse," expressly including immigration courts, except in narrow circumstances, reasoning that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and as a result, impair the fair administration of justice." ECF 24-1 at 2; ECF 23-2. As Plaintiffs demonstrated in their opening brief, even where an agency's discretion is "unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication . . . its irrational departure from that policy may violate the APA." ECF 45 at 2

---

[2] As the government concedes, Opp. at 12, if the Court were to find Plaintiffs are correct that the common law privilege against courthouse arrests is incorporated into the Immigration and Nationality Act, that would also independently provide the applicable law, *see* ECF 23 at 13–16; ECF 45 at 7–11. However, Plaintiffs do not ask the Court to revisit that portion of the Stay Opinion and otherwise assume it remains law of the case for purposes of this motion.

(quoting *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996)). ICE's decision to rescind the April 27, 2021 Memo without acknowledgment, explanation, or consideration of the reliance interests it had generated is reviewable under the APA.

II.    **The Government Fails to Address Plaintiffs' Irreparable Harms, Relying Instead on Foreclosed and Erroneous Arguments.**

The government neither contests that the Immigration Court Arrest Policy has harmed and continues to irreparably harm The Door's core business activities nor disputes that Plaintiffs' members have suffered immense and ongoing harm from arrest and detention, such as separation from loved ones and loss of access to education. *See* ECF 68 at 16. Instead, the government contests Plaintiffs' showing of irreparable harm in three short sentences providing scant legal support for their meritless and/or foreclosed arguments. *First*, the government argues for the first time that "[a] return to the 2021 Guidance does not insulate Plaintiffs from civil immigration enforcement actions in immigration courts so long as the criteria in the 2021 Guidance are met." Opp. at 13. But new arguments unrelated to the basis of a motion to revisit pursuant to Rule 54(b) are not permitted. *See supra* at 2–3.

Even if the Court is inclined to consider this entirely new argument, it is meritless. Under the terms of the 2021 Memo, only a small, clearly defined group of people could be targeted for arrest. *See* ECF 24-1 at 1. The government's new policy—under which anyone and everyone is a target—has led to the harm the 2021 Memo sought to avoid: chilled access to required proceedings. *Id*. at 2; *see also Pablo Sequen*, 814 F. Supp. 3d at 1040 (discussing how noncitizens chilled from attending required removal proceedings suffer the "irreparable injury" of "permanent loss of [their] opportunity to have their claims heard, and their resulting removal"). The deterrent effect of this change in policy has directly interfered with The Door's core business activities. *See* ECF 23 at 23; ECF 86 at 16. Further, the government does not dispute that the vast majority of Plaintiffs'

members, including those individually identified to this Court, would not have been arrested under the April 27, 2021 Memo. *See* Opp. at 13; ECF 23-1 ¶¶ 35–43; ECF 68-1; ECF 68-4.[3] Indeed, the government has made no factual showing that noncitizens arrested pursuant to the challenged policy were public safety threats who could have been arrested at immigration court under the April 27, 2021 Memo. And it does not dispute Plaintiffs' evidence showing that most arrested noncitizens had no criminal history, *see* ECF 23 at 7; ECF 23-6 ¶ 34. *See* Opp. at 13.

*Second*, the government offers no authority to support its baseless assertion—contradicted by this Circuit's caselaw—that Plaintiffs' members who are unlawfully deprived of their liberty, and separated from their families, can be made whole by financial compensation. *See Patton v. Dole*, 806 F.2d 24, 28 (2d Cir. 1986) (monetary damages for loss of liberty inadequate); *Make the Rd. N.Y. v. Pompeo*, 475 F. Supp. 3d 232, 268 (S.D.N.Y. 2020) ("indefinite family separation" constitutes irreparable harm); *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 321 (D.D.C. 2020); *Pablo Sequen*, 814 F. Supp. 3d at 1039–40. And the government effectively concedes The Door has suffered and continues to face irreparable harm to its core business activities due to the government's policy. *See* ECF 86 at 16. No award of money damages would allow The Door to support members arrested and deported under the Immigration Court Arrest Policy. *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016) (frustration of organization's mission of registering voters was irreparable because "there can be no do over and no redress" after registration deadline).

*Third*, the government's contention that a noncitizen may at some future date ultimately "appeal" a "dismissal of their removal proceedings and subsequent arrest," Opp. at 13 (citing 8

---

[3] The government does not dispute that the Court may consider Plaintiffs' supplemental evidence concerning associational standing. *See* ECF 86 at 16–17; *see generally* Opp.

C.F.R. § 1003.38(a)), is not only inaccurate and irrelevant to the irreparable harm analysis but also inconsistent with its other positions in this case. As discussed above, detention itself constitutes irreparable harm, and it is undisputed that the challenged policy has led to detention. Even if the administrative appeal provision on which the government relies could lead to release (it cannot, as discussed *infra*), the long delays in those appeals being adjudicated by the Board of Immigration Appeals ("BIA")—on which Plaintiffs proffered factual evidence that the government does not dispute, *see* ECF 45-1 ¶¶ 12–14—would only exacerbate the irreparable harm experienced by Plaintiffs and their members. Further, the appeals process only concerns appeals of "[d]ecisions of Immigration Judges [IJs]" to the BIA. 8 C.F.R. § 1003.38(a); *see also id*. § 1003.1(b) (discussing appellate jurisdiction of the BIA). The government does not explain how *ICE*'s decision to detain a noncitizen would be subject to reversal on an appeal of the *IJ*'s decision to dismiss removal proceedings. Indeed, the government's *own* arguments against Plaintiffs' APA claims rest entirely on the premise that DHS and its subcomponent agency, ICE, has broad unreviewable civil arrest authority under the INA. *See* Opp. at 11–12.[4]

Finally, even if a noncitizen could challenge their arrest through an appeal to the BIA, such an appeal would be futile because the BIA's parent agency, the Executive Office for Immigration Review (EOIR), has *sanctioned* ICE's new arrest policy in and around immigration courts. *See* ECF 23-2 ¶¶ 30–32 (discussing EOIR guidance issued on January 28, 2025 permitting widespread

---

[4] Even if release could result from the administrative appeals process, appeal is only available to noncitizens challenging a dismissal of their removal proceedings. *See* 8 C.F.R. § 1003.38(a). Release would thus not be available to the many noncitizens who are arrested even though their proceedings were not dismissed. *See* ECF 23 at 7 ("ICE is now arresting individuals *irrespective* of whether or not the IJ dismisses their full removal proceedings."); *see id*. (citing fact evidence in the record); *see also* ECF 68-4 ¶¶ 10–14 (member of ACT arrested even though his removal proceedings were not dismissed). The government's argument therefore overlooks the irreparable harm experienced by an entire category of noncitizens—including Plaintiffs' members—who have been arrested and have no recourse through this appeals process.

immigration court arrests due to change in DHS policy); *see Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) ("To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.'") (citation omitted).

## III.    The Balance of Equities and the Public Interest Strongly Favor a Stay.

The public interest strongly favors granting Plaintiffs' request for a stay. Against profound harms to noncitizens and their families, *see* ECF 86 at 19–21, the government offers only the "public interest" in "immigration enforcement." Opp. at 19.[5] But the government's new policies only undermine immigration law by chilling court attendance. *See* ECF 86 at 7–8, 18–19; *Pablo Sequen*, 814 F. Supp. 3d at 1041 (explaining that the government has an interest in "ensuring that noncitizens appear for their removal proceedings"). While "there is a public interest in enforcing immigration law," *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 469 (S.D.N.Y. 2018), the government does not have an interest in implementing an unreasoned change in policy that only hinders "access to courthouses" and "the fair administration of justice," ECF 24-1 at 1. *See Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 276 (E.D.N.Y. 2025) (in granting a 705 stay, holding that "the perpetuation of unlawful agency action is not in the public interest" (citations omitted)); *see also Kingdom v. Trump*, No. 25-cv-691, 2025 WL 1568238, at *12 (D.D.C. June 3, 2025) (weighing public interest in favor of a 705 stay when it found a likely APA violation). Here, as the "government's [arbitrary and capricious] actions have . . . violated [the]

---

[5] As support, the government relies on a Fourth Circuit decision inconsistent with caselaw in this Circuit. *Compare* Opp. at 19 (citing *Miranda v. Garland*, 34 F.4th 338, 356, 364 (4th Cir. 2022)) *with Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (finding "no public interest" in incarcerating noncitizens who pose no risk of flight or danger). In addition to being irrelevant, the government failed to cite *Miranda* in their prior briefing and should not be permitted to raise it for the first time here. *See supra* at 2–3.

law[,] . . . the public interest . . . lies in preventing [the government's] further abuse." *You, Xiu Qing*, 321 F. Supp. 3d at 469; *see Pablo Sequen*, 814 F. Supp. 3d at 1040–41 (rejecting argument that the public interest in immigration enforcement disfavors a stay of the same immigration court arrest policy at issue here).

IV.     **Relief Under 8 U.S.C. § 705 Relief Stays the Agency Action.**

The government's argument that relief should be narrowly tailored to Plaintiffs, Opp. at 14–17, ignores the operation of the APA. "[I]n the APA, Congress . . . depart[ed] from th[e] baseline" that "equitable relief is ordinarily limited to the parties" and "empower[ed] the judiciary to act directly against the challenged agency action." *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 838 (2024) (Kavanaugh, J., concurring); *see Career Colls. & Schs. of Tx. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (similar). Section 705 authorizes this Court to "postpone the effective date of an *agency action* or to preserve status or rights pending conclusion of the review proceedings," 5 U.S.C. § 705 (emphasis added), and thus the stay is of the agency action itself—not the agency action as applied to plaintiffs. *See Career Colls.*, 98 F.4th at 255 (rejecting argument that § 705 stay "needs to be limited to [plaintiff] or its members"); *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 103–04 (D.D.C. Aug. 1, 2025) ("*CHIRLA*") ("[S]ection 705 . . . authorizes the reviewing court to 'postpone the effective date of an agency action or preserve status or rights' full stop, not only as to plaintiffs before the court"). Courts have thus consistently recognized that § 705 stays halt the challenged policies in their entirety—not just as to the plaintiffs. *See, e.g.*, *West Virginia v. EPA*, 577 U.S. 1126 (2016) (staying agency action in full); *CHIRLA*, 805 F. Supp. 3d at 105 (granting nationwide 705 stay); *Cabrera v. U.S. Dep't of Labor*, No. 25-cv-1909, 2025 WL 2092026, at *8 (D.D.C. July 25, 2025) (same); *Rural & Migrant Ministry v. EPA*, 565 F. Supp. 3d 578, 605 (S.D.N.Y. 2021) (same);

*Walker v. Azar*, 480 F. Supp. 3d 417 (E.D.N.Y. 2020) (same).

Contrary to the government's arguments, Opp. at 14–15, *CASA* did not alter that rule. *CASA*'s reasoning was specific to the Judiciary Act of 1789 and never addressed the APA; in fact, it explicitly reserved "the distinct question whether the [APA] authorizes federal courts to vacate federal agency action." *Trump v. CASA*, 145 S. Ct. 2540, 2554 n.10 (2025); *see also id.* at 2567 (Kavanaugh, J., concurring) (recognizing that "plaintiffs may [still] ask a court to preliminarily 'set aside' a new agency rule" under § 706(2)). Accordingly, after *CASA*, courts have regularly issued full § 705 stays of agency action. *See, e.g.*, *Haitian Evangelical Clergy v. Trump*, No. 25-cv-1464, 2025 WL 1808743, at *9 (E.D.N.Y. July 1, 2025); *CHIRLA*, 805 F. Supp. 3d at 103–04.[6]

Finally, the government's contention that relief should be limited to New York, Opp. at 15–17, ignores the fact that ACT has chapters outside of New York City. *See* ECF 23-8 ¶ 5 (explaining ACT has chapters in the Washington D.C. metro area and Pennsylvania). Accordingly, to "provide complete relief to the plaintiffs," relief must extend beyond New York. *See Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted) (cited by Defendants).

## CONCLUSION[7]

For the foregoing reasons, Plaintiffs respectfully request the Court grant their motion.

---

[6] The government additionally cites a House Report, Opp. at 15, but at the time of this Report, the majority of agency actions were adjudications that would impact just the litigant, not non-parties; rulemaking was less common. *See* Reuel E. Schiller, Rulemaking's Promise: Administrative Law and Legal Culture in the 1960s and 1970s, 53 Admin. L. Rev. 1139, 1145 (2001) ("Before the 1960s agencies acted mainly through case-by-case adjudications."). Accordingly, the Report's statement that relief would "normally, if not always, be limited to the parties complainant" is thus simply a descriptive claim about the relative frequency of party-specific relief in that era, where the "normal[]" challenge was a plaintiff challenging an order limited to that person alone, so the "normal[]" relief would be limited to that plaintiff.

[7] The Court should not require Plaintiffs to post a bond. At oral argument on the stay motion, the government disclaimed its argument that Plaintiffs should be required to post a bond. *See* Sept. 2, 2025, Tr. 47:11-22. It may not attempt to revive that argument in this posture. *See supra* at 2–3.

10

Dated: May 13, 2026
       New York, New York

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
     FOUNDATION

/s/
Amy Belsher
Elizabeth Gyori
Wafa Junaid
Claire Molholm
Thomas Munson
M. Porter
Robert Hodgson
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300

EMERY CELLI BRINCKERHOFF ABADY WARD
     & MAAZEL LLP

/s/
Katherine Rosenfeld
Samuel Shapiro
Emily Wanger
One Rockefeller Plaza, 8th Floor
New York, NY 10020
Tel: (212) 763-5000

AMERICAN CIVIL LIBERTIES UNION
     FOUNDATION

/s/
Noor Zafar
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

AMERICAN CIVIL LIBERTIES UNION
     FOUNDATION

/s/
Michael K.T. Tan
Hannah Steinberg
Oscar Sarabia Roman
425 California Street, Suite 700
San Francisco, CA 94104
Tel: (415) 343-0770

MAKE THE ROAD NEW YORK

/s/
Harold Solis
Paige Austin
301 Grove Street
Brooklyn, NY 11237
Tel: (718) 418-7690

*Counsel for Plaintiffs*

11

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this memorandum complies with the allocated page limit (ten pages) pursuant to Rule 3(D) of this Court's Individual Practices in Civil Cases.

/s/ *Katherine Rosenfeld*
Katherine Rosenfeld