# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER and THE DOOR<br><br>*Petitioner*,<br><br>    -against-<br><br>TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the United States Department of Homeland Security; DAREN K. MARGOLIN, in his official capacity as Director, Executive Office of Immigration Review; and TODD BLANCHE, in his official capacity as Acting Attorney General, U.S. Department of Justice,<br><br>*Respondents.* | No. 25-cv-6366 (PKC)<br><br>DECLARATION OF ACTING SUPERVISORY DETENTION AND DEPORTATION OFFICER ROBERTO RODRIGUEZ |

Pursuant to 28 U.S.C. § 1746, I, Roberto Rodriguez, hereby declare under penalty of perjury that the following is true and correct:

1.    I am an Acting Supervisory Detention and Deportation Officer ("SDDO") at U.S. Immigration and Customs Enforcement ("ICE") within the U.S. Department of Homeland Security ("DHS"). I started as a Detention Enforcement Officer with legacy Immigration and Naturalization Service in July 1987. I retired in July 2021, then I came back as a re-hired employee on September 20, 2025, in the role of Deportation Officer. I have served in the capacity as an Acting SDDO since November 16, 2025. As an Acting SSDO, I oversee the management of the cases of aliens who are in immigration proceedings, and I am familiar with certain DHS procedures relating to processing and detention of aliens.

2.      As an Acting SDDO, I have access to ICE's records maintained in the ordinary course of business as a regular practice, and prepared at or near the time by, or from information transmitted by, someone with knowledge. The following representations are based on my review of DHS electronic records and databases, and consultation with my colleagues.

3.      Enforcement and Removal Operations ("ERO") follows the below procedure in assessing whether to conduct civil immigration enforcement actions against targeted aliens in or near courthouses.

4.      Office of the Principal Legal Advisor ("OPLA") Metro Region ERO embedded counsel sends an arrest referral spreadsheet to the SDDO for review daily.  ERO utilizes detailees to review the cases referred on the spreadsheet from OPLA to highlight possible individuals for arrest. Detailees review the DHS law enforcement electronic databases, specifically, Enforce Alien Removal Module ("EARM"), to verify if an alien has any prior encounters with ERO, the Criminal Alien Program, or has violated the Alternatives to Detention program.

5.      The SDDO then reviews the vetted cases highlighted by detailees for criminal history and cross references criminal electronic databases, including immediately conducting a National Crime Information Center (NCIC) check and obtaining a digital record of arrest and prosecutions (RAP) sheet from the New York Integrated Justice Portal (eJustice). ERO also reviews USCIS databases to determine whether an alien has any pending applications.

6.       Since being notified of the court order in this case on May 19, 2026, ERO complies with the requirements of the April 27, 2021 Memorandum on Civil Immigration Enforcement Actions in or near Courthouses ("April 27, 2021 Memorandum"). Specifically, to make an arrest decision, ERO assesses the factors outlined in the April 27, 2021 Memorandum that allow civil immigration enforcement actions in or near the Executive Office of Immigration Review ("EOIR")

immigration courts, such as whether: (1) the case involves a national security threat, or (2) there is an imminent risk of death, violence, or physical harm to any person, or (3) it involves hot pursuit of an individual who poses a threat to public safety, or (4) there is an imminent risk of destruction of evidence material to a criminal case.

7.      The SDDO reviews the criminal history of an alien pursuant to the April 27, 2021 Memorandum. If the potential target alien poses a threat to public safety, then the SDDO refers the case to the OPLA ERO embed counsel for a legal sufficiency review by forwarding the EARM biographical information of the alien, NCIC rap sheet, and eJustice database query to the counsel. Once the SDDO receives legal sufficiency review, the SDDO refers the case to the Field Office Director ("FOD") for approval of the arrest.

8.      In evaluating the EOIR immigration court as the location for the arrest as opposed to another feasible location, ERO views the EOIR immigration court as one of the safest locations in which an arrest could be conducted. The public, when entering 26 Federal Plaza and 290 Broadway, for example, is screened for prohibited items by security personnel and/or Federal Protective Services. Therefore, ERO can ensure both public and officer safety during an arrest at an EOIR immigration court. ERO regularly attempts to take those arrested after their immigration court hearing into custody in a less public location. Often times, this goal could be achieved by stopping the elevator with an alien subject to arrest inside on a different floor, or approaching the alien in a less public area. This approach also ensures both alien and officer safety by trying to reduce interactions with other members of the public at EOIR immigration courts, including those who may cause a disturbance during the arrest. For these aliens, ICE believes that a safe alternate arrest location does not exist or it would be too difficult to effectuate the arrest at an alternate location.

9.      The FOD will then email the approved list of targeted enforcement actions to the SDDO in advance of the aliens' hearing dates and the SDDO will execute the I-200 administrative warrant. Prior to conducting the enforcement action at or near the relevant EOIR immigration court, the SDDO will have the I-200 in hand and arrest the alien pursuant to the I-200.

10.     The arrest of V. C. at 26 Federal Plaza on May 19, 2026 was conducted using the same process described in Paragraphs 7 and 8 above. Criminal history documents, such as RAP sheets, were reviewed. Based on criminal history, this alien was determined to be a public safety threat, and EOIR was the safest location for the arrest.

11.     The arrests of the following aliens were conducted after criminal history documents were reviewed, and the arrests were conducted pursuant to the April 27, 2021 Memorandum. ICE assessed their threat to public safety as outlined in Paragraphs 6-9 above. At-large arrests in sanctuary cities like New York tend to trigger protests and intervention by agitators and bystanders, making alternative locations in New York unsafe and EOIR the safest location for the arrests. Based on these criteria the following arrests were approved by the FOD prior to arrest:

a.  A. V. − arrested at 290 Broadway on June 8, 2026;

b.  J. C. − arrested at 26 Federal Plaza on June 25, 2026;

c.  A. B. − arrested at 290 Broadway on June 25, 2026;

d.  E. V. – arrested at 290 Broadway on June 29, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York

On July 6, 2026

ROBERTO RODRIGUEZ
Digitally signed by ROBERTO RODRIGUEZ
Date: 2026.07.06 19:47:35 -04'00'

Roberto Rodriguez
Acting Supervisory Detention and Deportation Officer
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security