

July 9, 2026

*By ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: <em>African Communities Together v. Lyons</em>, No. 25 Civ. 6366 (PKC)

Dear Judge Castel:

Plaintiffs African Communities Together and The Door ("Plaintiffs") respectfully submit this reply pursuant to the Court's Order (ECF 101) in support of Plaintiffs' motion for limited discovery regarding Defendants' compliance with this Court's May 18 Stay Order (ECF 90).

In opposing Plaintiffs' motion, Defendants provide a single conclusory declaration from an ICE officer—Acting Supervisory Detention and Deportation Officer ("SDDO") Roberto Rodriguez—who has no authority to approve immigration courthouse arrests under the 2021 Policy. ECF 104 ("The Rodriguez Declaration"). The Rodriguez Declaration only raises more questions about ICE's compliance with this Court's Stay Order, confirming the need for the discovery Plaintiffs seek.

To begin, the Rodriguez Declaration omits what, if any, criteria, guidance, or training documents ICE officers—including those high-level officers whose approval is required—use or reference to determine that someone falls within the limited exceptions for arrests established in the 2021 Policy. This Court should therefore order Defendants to produce the training and guidance materials Plaintiffs seek.

Relatedly, the Rodriguez Declaration raises serious concerns about Defendants' compliance with the 2021 Policy and their reliance on the policy's exception permitting ICE to arrest someone on the basis that they "pose a threat to public safety." Critically, the declaration does not provide any criteria related to ICE's determinations that someone poses a "threat to public safety." Moreover, once ICE has determined that an individual poses such a threat, the 2021 Policy further requires ICE to determine that "it is *necessary* to take the action in or near the [immigration] courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the enforcement action at such a location." This plainly requires an individualized assessment of whether ICE can safely arrest that individual at a location other than an immigration courthouse, such as the individual's home or workplace.

1

Tellingly, the Rodriguez Declaration is silent on whether ICE conducted this required analysis for any of the five individuals arrested, and if so, who conducted it, what factors were examined, and the agency's conclusions. Instead, ICE appears to have eschewed any individualized assessment for what appears to be a blanket determination that any and all alternative locations in "New York [are] unsafe."[1] The agency should therefore be required to produce a Rule 30(b)(6) witness as Plaintiffs requested to explain how it makes these (and related) critical assessments.

Finally, further discovery is necessary to examine the basis for any and all arrests approved or executed at the New York City immigration courts since the Court's Stay Order. While acknowledging the immigration court arrests of the five people Plaintiffs identified in their motion, the Rodriguez Declaration is conspicuously silent as to whether these are the only arrests ICE has approved or executed at the Manhattan immigration courts since the Stay Order.

As for the five arrests Plaintiffs identified, SDDO Rodriguez provides zero specific details, merely asserting in conclusory fashion that the arrests complied with the 2021 Policy and asking this Court to take his word for it. The declaration makes no attempt to explain how the five arrests comply with any of the exceptions in the 2021 Policy. Specifically, Mr. Rodriguez's Declaration does not explain: (1) whether ICE determined that these five people fell within any of the listed exceptions in the 2021 Policy, including whether they posed "threats to public safety"; (2) the basis for this conclusion; (3) which ICE/DHS employees conducted this assessment; (4) what criteria were used to determine that these five individuals posed a threat to public safety; (5) whether those criteria are in writing; (6) when those criteria were formalized; and (7) how these criteria were applied to these five individuals.

These omissions are particularly striking in the case of Mr. Batista, whose arrest and ongoing detention illustrate why discovery is needed. In their response to his individual habeas petition, Defendants assert that Mr. Batista's arrest after his immigration court complied with the 2021 Policy because, in their view, he is a threat to public safety based on a year-and-a-half old B-misdemeanor trespass conviction in Texas, stemming from his entry across the U.S.-Mexico border.[2] That claim raises several questions as to how Defendants are applying the 2021 Policy,

---

[1] SDDO Rodriguez claims that such arrests are too dangerous in part because they trigger protests in "sanctuary cities like New York" [sic], but the New York City immigration courts—the only immigration courts in New York aside from an immigration court in Buffalo—hear cases from people living in a large geographic area, which includes many non-sanctuary jurisdictions. In any event, ICE's claim that "at large" arrests are unsafe, ECF 104-1 at 5, cannot be squared with the campaign of street arrests in New York the agency has been engaged in for well over a year. *See* "We Found 430 ICE Street Arrests in the New York Area. More Than 93% Targeted Latinos," Gwynne Hogan, Rosalind Adams and Haidee Chu, The City, May 27, 2026, *available at* https://projects.thecity.nyc/ice-street-arrests-investigation-racial-profiling/.

[2] Defendants' reliance on Mr. Batista's Texas trespass conviction is especially misplaced because that conviction was likely pursuant to "Operation Lonestar"—a widely criticized state-law effort to transform migration-related conduct, which is ordinarily addressed through the federal civil immigration system, into state-specific misdemeanor criminal charges. *See, e.g.,* Jolie McCullough, *Texas' border operation is meant to stop cartels and smugglers. More often, it*

including their definition of "threat to public safety," given both the nature of the conviction and the fact that it pre-dated DHS's own decision to release Mr. Batista on his own recognizance nearly a year ago. Dimitry Rousseau Decl., *Yosepf Batista v. Genalo* 1:26-cv-05408-MKV (S.D.N.Y. July 7, 2026) (ECF No. 12)). In light of this apparent noncompliance with the 2021 Policy, and the lack of any explanation in the Rodriguez Declaration, this Court should order ICE to produce all documents concerning the identified arrests, and any other arrests the agency has attempted or authorized at the New York City immigration courts.

In sum, Plaintiffs respectfully request the Court order that ICE: (1) produce any and all training or guidance materials related to the Court's Stay Order or the June 23 Vacatur Order in *Pablo Sequen*; (2) produce a witness for deposition pursuant to Fed. R. Civ. P. 30(b)(6) to testify on behalf of the agency regarding the facts and circumstances of all arrests authorized or conducted at the New York City immigration courts after the Court's Stay Order; and (3) produce all documents concerning those arrests either authorized or effectuated.

Respectfully Submitted,

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION

Noor Zafar
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION

Michael K.T. Tan
Hannah Steinberg*
Oscar Sarabia Roman*
425 California Street, Suite 700
San Francisco, CA 94104
Tel: (415) 343-0770

NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION

/s/ Amy Belsher
Amy Belsher
Elizabeth Gyori
Wafa Junaid
Claire Molholm
Robert Hodgson
125 Broad Street, 19th Floor
New York, NY 10004
Tel: (212) 607-3300

EMERY CELLI BRINCKERHOFF ABADY WARD
    & MAAZEL LLP

Katherine Rosenfeld
Samuel Shapiro
Emily Wanger
One Rockefeller Plaza, 8th Floor

MAKE THE ROAD NEW YORK

Harold Solis
Paige Austin
301 Grove Street
Brooklyn, NY 11237
Tel: (718) 418-7690

---

*arrests migrants for misdemeanor trespassing*, TEX. TRIB. (Apr. 4, 2022) (co-published with ProPublica and The Marshall Project); *Operation Lone Star: Texas-Sized Abuse of Criminal Laws to Punish Immigrants*, THE CHAMPION, June 2022, at 5.

New York, NY 10020
Tel: (212) 763-5000

\* Admitted *pro hac vice*                              *Counsel for Plaintiffs*