UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AFRICAN COMMUNITIES TOGETHER; and THE DOOR,

                Plaintiffs,

        v.

DAVID J. VENTURELLA, in his official capacity as Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the United States Department of Homeland Security; DARREN K. MARGOLIN, in his official capacity as Director, Executive Office for Immigration Review; and TODD BLANCHE, in his official capacity as Acting Attorney General, U.S. DEPARTMENT OF JUSTICE,

                Defendants.

          25 Civ. 6366 (PKC)

---

**DEFENDANTS' CORRECTED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR PARTIAL MOTION TO DISMISS AND PARTIAL MOTION FOR SUMMARY JUDGMENT**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2695/2721
Fax: (212) 637-0033
Email: jeffrey.oestericher@usdoj.gov
       tomoko.onozawa@usdoj.gov

JEFFREY S. OESTERICHER
TOMOKO ONOZAWA
Assistant United States Attorneys
*Of Counsel*

**TABLE OF CONTENTS**

ARGUMENT ...................................................................................................................................1

    I.      The Rescission of the 2021 Guidance Is Not Subject to APA Review ....................1

    II.     The ICE Guidance Is Not Contrary to Law .............................................................2

    III.    Plaintiffs' Claims Against the EOIR Defendants Should Be Dismissed as Moot.......................................................................................................................5

    IV.    The Court Should Limit the Scope of Any Final Relief to Plaintiffs in This Case.......................................................................................................................8

CONCLUSION..............................................................................................................................10

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*AFGE v. U.S. Office of Personnel Mgm't*,
820 F. Supp. 3d 260 (S.D.N.Y. 2025)................................................................................ 8

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) ...................................................................................... 9, 10

*Califano v. Yamasaki*,
442 U.S. 682 (1979)........................................................................................................ 9

*California v. Texas*,
593 U.S. 659 (2021)........................................................................................................ 9

*Comer v. Cisneros*,
37 F.3d 775 (2d Cir. 1994)............................................................................................. 7

*Cont'l Indus. Grp., Inc. v. Altunkilic*,
633 F. App'x 61 (2d Cir. 2016) ..................................................................................... 3

*DHS v. New York*,
589 U.S. 1173 (2020)................................................................................................... 10

*Doe v. McDonald*,
128 F.4th 379 (2d Cir. 2025) ..................................................................................... 7, 8

*Evans v. New York City Dep't of Education*,
No. 22 Civ. 7901 (ER), 2023 WL 8034449 (S.D.N.Y. Nov. 20, 2023) ...................... 5

*Gill v. Whitford*,
585 U.S. 48 (2018).......................................................................................................... 9

*Hecht Co. v. Bowles*,
321 U.S. 321 (1944)........................................................................................................ 9

*Heckler v. Chaney*,
470 U.S. 821 (1985)........................................................................................................ 1

*In re Enforcement of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*,
153 F.4th 142 (2d Cir. 2025) ......................................................................................... 8

*Madsen v. Women's Health Ctr., Inc.*,
512 U.S. 753 (1994)........................................................................................................ 9

*NASL Mktg., Inc. v. de Vries,*
   94 F.R.D. 309 (S.D.N.Y. 1982) ................................................................................. 3

*New York v. ICE,*
   466 F. Supp. 3d 439 (S.D.N.Y. 2020)...................................................................... 3

*Pablo Sequen v. Albarran,*
   __ F. Supp. 3d __, 2026 WL 1805114 (N.D. Cal. June 23, 2026)............................... 9

*Pasquantino v. United States,*
   __ 544 U.S. 349 (2005)............................................................................................. 9

*Pavlo v. James,*
   437 F. Supp. 125 (S.D.N.Y. 1977) ........................................................................ 3

*Ryan v. ICE,*
   974 F.3d 9 (1st Cir. 2020)............................................................................... 2, 3, 5

*Samma v. Dep't of Defense,*
   136 F.4th 1108 (D.C. Cir. 2025)............................................................................ 5

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021)................................................................................................ 9

*Trump v. Hawaii,*
   585 U.S. 667 (2018)............................................................................................. 10

*United States v. Texas,*
   599 U.S. 670 (2023)................................................................................................ 9

**Statutes**

8 U.S.C. § 1229a(b)(5)(A) ............................................................................................ 3

8 U.S.C. § 1357(a)(2)..................................................................................................... 1

**Regulations**

8 C.F.R. § 239.2(a)(7)..................................................................................................... 5

8 C.F.R. § 1003.0(c)....................................................................................................... 7

8 C.F.R. § 1003.9(c)....................................................................................................... 7

**ARGUMENT**

**I.    The Rescission of the 2021 Guidance Is Not Subject to APA Review**

The rescission of the 2021 Guidance[1] as to immigration courthouse arrests is not subject to APA review because there is no meaningful standard against which to judge the agency's exercise of discretion. Subject to limited exceptions not relevant here, *see* 8 U.S.C. § 1357(a)(2), (3), the INA does not indicate *where* a civil immigration enforcement action should or should not occur. Plaintiffs have cited no statutory language or legislative history evincing Congressional intent to circumscribe the ICE Defendants' discretion to choose the locations of specific civil immigration enforcement actions and to define "meaningful standards for defining the limits of that discretion." *Heckler v. Chaney*, 470 U.S. 821, 834–35 (1985).

Plaintiffs claim incorrectly that ICE's prior guidance documents "suppl[y] this Court with ample 'law to apply.'" Pls.' Mem. of Law in Opp. to Defs.' Partial Mots. to Dismiss and for Summ. J. (ECF No. 99) ("Pls.' Opp. Br.") at 4. Even if this Court were to consider ICE's prior guidance documents—which by their terms, have no legally binding effect and so cannot serve as law to apply (*see* AR 6, 17, 23, 27, 33, 49, 50)—they do not provide a meaningful standard for assessing the agency's discretionary decision to rescind, amend, or promulgate location-specific guidance. As the administrative record demonstrates, DHS has long developed, revised, and/or rescinded guidance addressing various locations for civil immigration enforcement actions, which has balanced the government's interests in enforcing immigration law against the potential effects of its enforcement activities. (AR 4–6, 7–19, 29–50). Absent any justiciable standard in ICE's prior guidance documents that the Court can apply to evaluate ICE's decision to rescind the 2021

---

[1] The defined terms and abbreviations cited herein are the same as those cited in Defendants' opening brief. *See* Defs.' Corrected Mem. of Law in Supp. of Partial Mot. to Dismiss and Partial Mot. for Summ. J. ("Defs.' Br.") (ECF No. 97)

Guidance's restrictions on immigration courthouse arrests, there is "no law to apply" in determining whether the rescission is arbitrary and capricious.

## II.    The ICE Guidance Is Not Contrary to Law

### A.    There is No Common Law Privilege Against Courthouse Arrests

Plaintiffs emphasize that "at common law, the privilege [against courthouse arrests] applied broadly to *all* civil arrests, and later service of process, so long as its application satisfied a purpose-based test: 'promot[ing] the purposes of justice.'" Pls.' Opp. Br. at 7.  Defendants do not dispute that the common-law privilege applied to service of process and civil arrests, when "a plaintiff in a civil action obtained personal jurisdiction over a defendant" by having that defendant arrested under a writ of *capias ad respondendum*. *Ryan v. ICE*, 974 F.3d 9, 21 (1st Cir. 2020). And as Defendants have argued, the privilege against case-initiating arrest and the privilege against service of process of a person attending court were extensions of a now-outdated principle that a state court's jurisdiction over a person rested on that person's physical presence. Defs.' Br. at 14–16.  But after the widespread recognition of long-arm jurisdiction, that physical-presence requirement is now basically obsolete. *Id.* at 16.

To be sure, the privilege against courthouse arrest or service of process served two purposes: "to remove a disincentive for inhibiting parties and witnesses from coming forward" and "to ensure that arrests did not disrupt the orderly operation of the courts." *Ryan*, 974 F.3d at 21. Plaintiffs also argue that the privilege had "the purpose of ensuring the administration of justice." Pls.' Opp. Br. at 10.  The latter two justifications are not affected by the obsolescence of the physical-presence requirement, but Plaintiffs rely heavily on them in arguing that the common-law protection extends to arrests unrelated to the initiation of a lawsuit. *Id.* at 7–9.  But that proves too much: as the First Circuit has acknowledged, "the privilege has never been thought to protect against criminal arrests or other forms of criminal process." *Ryan*, 974 F.3d at 27.  There is no

2

reason to conclude that criminal arrests in courthouses would impede "the administration of justice" or be less disruptive to the functioning of courts than civil arrests. *See Ryan*, 974 F.3d at 27 ("[A]lthough criminal arrests in courthouses risk deterring parties and witnesses from coming forward and also risk disrupting ongoing proceedings, courts have refrained from extending the privilege to criminal arrests due to the overriding sovereign interests in enforcing the penal laws and protecting the public."). Moreover, that the privilege has been recognized in the context of service of process—whose "relatively small burden" is "far-less disruptive" to the operation of courts than an arrest under a writ of *capias ad respondendum*, *New York v. ICE*, 466 F. Supp. 3d 439, 445 (S.D.N.Y. 2020), *vacated and remanded by New York v. ICE*, No. 20-2622, 2023 WL 2333979 (2d Cir. Feb. 28, 2023)—suggests that encouraging traveling witnesses and litigants to voluntarily appear in court is the more important of the two rationales.[2]

    **B.**    **The INA Did Not Incorporate a Common-Law Privilege**

As set forth in Defendants' brief, the INA could not have codified any purported common-

---

[2] As Defendants have argued, Defs.' Br. at 17, and Plaintiffs point out, *see* Pls.' Opp. Br. at 8–9, since the dawn of long-arm jurisdiction, courts have applied the privilege only where non-domiciliary witnesses not otherwise subject to a jurisdiction's long-arm statutes have been served with civil process while *voluntarily* attending court in that jurisdiction. *See, e.g., Pavlo v. James*, 437 F. Supp. 125, 126 (S.D.N.Y. 1977); *NASL Mktg., Inc. v. de Vries*, 94 F.R.D. 309, 309 (S.D.N.Y. 1982); *Cont'l Indus. Grp., Inc. v. Altunkilic*, 633 F. App'x 61, 63 (2d Cir. 2016). Plaintiffs, by analogy, argue that the privilege therefore applies to immigration courthouse arrests because "appearances in immigration court are voluntary," not mandatory. Pls.' Opp. Br. at 8 n.8. But this contradicts Plaintiffs' repeated allegations that the INA mandates an alien's appearance at a removal proceeding. *See* 8 U.S.C. § 1229a(b)(5)(A). *See also* Compl. ¶¶ 1 ("These profoundly unfair practices undermine the rule of law and the integrity of immigration courts by effectively turning mandatory court hearings into traps."); 18 (alleging that immigration courthouse arrests "could deter noncitizens from attending mandatory court proceedings"); 49 ("DHS attorneys move to dismiss individuals' full removal proceedings . . . during noncitizens' mandatory master calendar hearings"); 55 (alleging that immigration court arrests place Plaintiffs' members "at risk of arrest" "[i]n attending their mandatory hearings," and chilling members "from appearing for those mandatory court proceedings").

law privilege because by the time Congress established a comprehensive immigration-arrest statutory scheme in the INA, any such privilege was a historical artifact, it never applied to arrests by the government for law-enforcement purposes, and the scope of the privilege was ambiguous at best. *See* Defs.' Br. at 17–18. Plaintiffs disregard these obstacles, simply declaring, based on now-defunct English common law and general policy statements, that "[a]ll evidence . . . points to the privilege clearly applying to sovereign arrests at English common law and such caselaw's incorporation into American common law well before [the passage of the INA in] 1952." Pls.' Opp. Br. at 13. But as the Supreme Court observed in *Pasquantino v. United States*, "the early English cases rest on a far different foundation from that on which the . . . rule came to rest." 544 U.S. 349, 366 (2005); *see id.* at 363 ("[d]rawing sure inferences regarding Congress' intent from such foreign citations is perilous"). And none of the cases would "plainly prevent" courthouse arrests by the government for law-enforcement purposes. *Id.* at 364. Though Plaintiffs insist that "caselaw at English common law clearly demonstrates that Crown-initiated arrests were covered by the privilege," Pls.' Opp. Br. at 12, those cases involved civil arrests against bankrupt debtors that were initiated by the Crown as a creditor; they were not arrests conducted in furtherance of a sovereign law-enforcement interest. *See, e.g., Ex Parte Russell* (1812), 19 Ves. Jr. 162, 165 (Crown could not civilly arrest a bankruptcy debtor "for a debt due by him to the Crown"); *Ex Parte Helsby* (1832), 1 Dea. & C. 16, 26 (same); *Ex Parte Temple* (1814), 2 V. & B. 391, 394 (same).

To the contrary, "[h]ad Congress inspected the case law in 1952 with any degree of care, . . . it would have concluded . . . that there was no clear historical precedent for extending the privilege to arrests on behalf of the sovereign," and that there was no basis to infer "that the privilege protected against any and all forms of civil arrest, including the civil immigration arrests

that it was authorizing in the INA." *Ryan*, 974 F.3d at 26. There is thus no reason to conclude that "in 1952, Congress would have considered the civil immigration arrests authorized in the INA to come within the scope of the common law privilege." *Id.*

### III.    Plaintiffs' Claims Against the EOIR Defendants Should Be Dismissed as Moot

Plaintiffs' APA claims against the EOIR Defendants are moot because the Policy Memo withdrew the challenged EOIR Guidance Email. Supplemental Declaration of Amy Belsher, dated Jan. 7, 2025 ("Belsher Supp. Decl.") (ECF No. 73), Ex. A. *See, e.g., Samma v. Dep't of Defense*, 136 F.4th 1108, 1113–14 (D.C. Cir. 2025) (agency's rescission of challenged policy mooted APA challenge, because "no order from this court would have any meaningful effect on the rights of the parties"); *Evans v. New York City Dep't of Education*, No. 22 Civ. 7901 (ER), 2023 WL 8034449, at *4 (S.D.N.Y. Nov. 20, 2023), *aff'd*, 2024 WL 4501963 (2d Cir. Oct. 16, 2024) (challenge to municipal vaccine mandate was moot when mandate was lifted). Plaintiffs' arguments to the contrary lack merit. Pls.' Opp. Br. at 13–21.

First, the stated purpose of the Policy Memo was to "withdraw [] an email sent on May 30, 2025," with a directive that "[a]ll Immigration Judges should continue to not rely on it in adjudicating cases." Belsher Supp. Decl., Ex. A at 1, 3. Plaintiffs nonetheless insist that their APA claims against the EOIR Defendants are not moot because the Policy Memo "*refuses* to 'cancel'" the EOIR Guidance Email. Pls.' Opp. Br. at 14 (emphasis in original). But "cancelling" the EOIR Guidance Email and "withdrawing" it is a distinction without a difference.

Likewise, the Policy Memo withdrew provisions in the EOIR Guidance Email which this Court held were contrary to law. First, this Court's September 12, 2025 Order ("Sept. 2025 Order") (ECF No. 51) held that because the EOIR Guidance Email was "in conflict with" 8 C.F.R. § 239.2(a)(7), "[t]his contradiction alone renders the EOIR Policy on Dismissals contrary to law." Sept. 2025 Order at 27. The Policy Memo acknowledged that the EOIR Guidance Email's

"attempt to paraphrase relevant law was poorly drafted," and formally withdrew the guidance—including its problematic paraphrasing of the regulation—in its entirety.  Belsher Supp. Decl. Ex. A, at 2, 3.  In addition, this Court held that the EOIR Guidance Email "may be fairly read to counsel the Immigration Judge to exercise his or her discretion to waive the necessity of a written motion by DHS and grant on-the-spot oral dismissals without permitting a response . . . because of the exigencies of higher caseloads in detained cases."  Sept. 2025 Order at 28.  As the Policy Memo affirmed, the EOIR Guidance Email "was not an EOIR Policy" and "could not direct or bind any Immigration Judge to make a specific decision in a case in a particular way," Belsher Supp. Decl. Ex. A, at 1–3, but EOIR nonetheless withdrew the Email and directed immigration judges to not rely on it or use it to decide a case.  *Id.* at 3.

Plaintiffs also assert that their claims are not moot because "IJs around the country continue to follow" the EOIR Dismissal Email after the Policy Memo withdrew it on September 23, 2025.  Pls.' Opp. Br. at 17–18.  In so doing, however, Plaintiffs rely on declarations based on undated incidents, data not provided to the government, and hearsay coming from three jurisdictions outside of this District.  *See* Declaration of William Botsch dated Jan. 7, 2026 (ECF No. 72-2) ¶¶ 6, 8 (alleged hearsay statements from immigration judges in Miami, Florida granting oral motions to dismiss on three dates after September 2025); Declaration of Amy Lange dated Jan. 7, 2026 (ECF No. 72-3) ¶¶ 1–3 (citing unspecified "data" not included with declaration that "since September 24, 2025, 34 cases have been dismissed by" immigration judges in Fort Snelling, Minnesota); Declaration of Emily Miller dated Jan. 7, 2026 (ECF No. 72-4) ¶¶ 7–8 (alleged hearsay statements from immigration judges in El Paso, Texas, granting oral motions to dismiss on two dates after September 2025, and citing unspecified "data" not included with declaration).  Plaintiffs also claim that immigration judges are subject to termination or have been terminated

6

for not relying on the EOIR Dismissal Email despite its withdrawal, however Plaintiffs have not provided any concrete evidence to support this claim. Pls.' Opp. Br. at 20.[3]

Finally, Plaintiffs claim that their APA claims are not moot under the voluntary cessation exception because the EOIR Guidance Email could "recur." Pls.' Opp. Br. at 18–20. However, the Policy Memo is clear that the EOIR Guidance Email will not recur because it stated that: (1) EOIR never intended to institute a "policy" in the first place, Belsher Supp. Decl. Ex. A, at 1, 3; and (2) "[n]o individual in EOIR leadership . . . may direct an Immigration Judge to decide a case in a particular way" because doing so would violate existing regulations, *id.* at 1–2 (citing 8 C.F.R. §§ 1003.0(c), 1003.9(c)). In light of these facts, "there is no reasonable expectation that the conduct will recur," and Plaintiffs' APA claims against the EOIR Defendants should be dismissed as moot. *Comer v. Cisneros*, 37 F.3d 775, 800 (2d Cir. 1994).

In its opening brief, the Government argued that "this Court should dismiss Plaintiffs' claims against the EOIR Defendants for lack of standing under Rule 12(b)(1), because they have failed to establish . . . standing to continue pursuing their challenge to that policy." Defs.' Br. at 22–24. However, as Plaintiffs correctly pointed out in their opposition brief, Pls.' Opp. at 22–23, the Government's arguments conflated standing with mootness, insofar as "[s]tanding is determined as of the filing of the complaint," and "[a]ny events occurring after that time do not pertain to standing; the only question is whether they render [plaintiff's] case moot." *Doe v.*

---

[3] For example, Plaintiffs cite to the Declaration of Olivia Cassin, a former immigration judge in New York City who alleges she was terminated on November 21, 2025 "without a stated cause." Declaration of Olivia Cassin dated Dec. 1, 2025 (ECF No. 68-6) ¶ 1. Cassin claims, without any evidence, that "IJs who continued to exercise independent judgement and grant remote appearance or deny the government's motions to dismiss knew these decisions were being scrutinized," and "colleagues who did not act as an extension of ICE's removal effort [were] being fired all around us." *Id.* ¶ 22. These vague assertions do not establish "EOIR has tacitly *endorsed* the practice of IJs granting motions to dismiss on improper grounds." Pls.' Opp. Br. at 16 (emphasis in original).

*McDonald*, 128 F.4th 379, 384 (2d Cir. 2025).   Accordingly, the Government withdraws its arguments to dismiss Plaintiffs' claims against the EOIR Defendants for lack of standing.

However, the facts in the record which supported the Government's previous (but mistaken) standing arguments apply with full force to its argument that Plaintiffs' claims against the EOIR Defendants are moot. "[The] mootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation."   *Doe*, 128 F.4th at 384. *See also In re Enforcement of Philippine Forfeiture Judgment Against All Assets of Arelma, S.A.*, 153 F.4th 142, 160 (2d Cir. 2025) ("a plaintiff's stake in the outcome of litigation . . . must be maintained throughout all stages of litigation in order for the case not to be moot.").   Plaintiffs' supplemental declarations filed in December 2025 demonstrate that Plaintiffs and their members have not suffered any requisite injury as a result of the EOIR Guidance Email after EOIR withdrew the e-mail nationwide and without temporal limitations. *See* Defs.' Br. at 23–25.   Accordingly, their claims against the EOIR Defendants are moot.

## IV.     The Court Should Limit the Scope of Any Final Relief to Plaintiffs in This Case

Plaintiffs' opposition brief argues that final relief should "vacate the challenged policies in full, not just as to Plaintiffs in this case." Pls.' Opp. Br. at 24.   As an initial matter, this argument should be deemed waived because it was not raised in Plaintiffs' opening brief (ECF No. 92), or in their prior briefs in this case. *See AFGE v. U.S. Office of Personnel Mgm't*, 820 F. Supp. 3d 260, 278 (S.D.N.Y. 2025) (holding that argument raised in reply brief, and "not raised in the plaintiffs' opening brief," "has been waived").   Moreover, as discussed above and in the Government's opening brief, Defs.' Br. at 31, Plaintiffs' request for "full vacatur" of the EOIR Guidance Email is moot because EOIR voluntarily rescinded that email on a nationwide basis.

As for Plaintiffs' request that the Court enter a nationwide vacatur of ICE's 2025 rescission of the 2021 Guidance, interpreting Section 706(2) of the APA to authorize a "full" nationwide vacatur, "not just as to Plaintiffs in this case," *id*, would depart from longstanding remedial principles.  Remedies "ordinarily operate with respect to specific parties," rather than on "legal rules in the abstract," *California v. Texas*, 593 U.S. 659, 672 (2021) (citations and internal quotations omitted), and equitable remedies such as injunctive relief are not exempt from this principle.  The "general rule" is that equitable relief "'should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).  There is no indication that when Congress enacted the APA against the background rule that statutory remedies should be construed in accordance with "traditions of equity practice," *Hecht Co. v. Bowles,* 321 U.S. 321, 329 (1944), it sought to "upset the bedrock practice of case-by-case judgments with respect to the parties in each case." *Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring).  Under Article III, plaintiffs must demonstrate standing not only for each claim asserted, but also "for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).  Once standing to seek a particular remedy is established, Article III requires that "[a] plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018).

Interpreting Section 706(2) to authorize "full" vacatur would create friction between competing court orders—specifically, the "nationwide vacatur" of the 2025 Interim Guidance and the Final Guidance ordered in *Pablo Sequen v. Albarran*, __ F. Supp. 3d __, 2026 WL 1805114, at *41 (N.D. Cal. June 23, 2026), and the nationwide vacatur urged by Plaintiffs here—and lead to the same problems posed by nationwide injunctions. *United States v. Texas*, 599 U.S. 670, 702

9

(2023) (Gorsuch, J., concurring) ("As with universal injunctions, vacatur can stymie the orderly review of important questions, lead to forum shopping, render meaningless rules about joinder and class actions, and facilitate efforts to evade the APA's normal rulemaking processes"); *Arizona*, 40 F.4th at 396 (Sutton, C.J., concurring) ("The effect of [nationwide] injunctions is to prevent the National Government from enforcing a rule or executive order without (potentially) having to prevail in all 94 district courts and all 12 regional courts of appeals."); *DHS v. New York*, 589 U.S. 1173, 1175 (2020) (Gorsuch, J., concurring) ("The real problem here is the increasingly common practice of trial courts ordering relief that transcends the cases before them.  Whether framed as injunctions of 'nationwide,' 'universal,' or 'cosmic' in scope, these orders share the same basic flaw—they direct how the defendant must act toward persons who are not parties to the case."); *Trump v. Hawaii*, 585 U.S. 667, 713, 721 (2018) (Thomas, J., concurring) ("[d]istrict courts. . . have begun imposing universal injunctions without considering their authority to grant such sweeping relief" and discussing why "universal injunctions are legally and historically dubious").

Accordingly, should this Court grant final relief with respect to the rescission of the 2021 Guidance and/or the withdrawn EOIR Guidance Email, the scope of such relief should be consistent with the Court's September 12, 2025 and May 18, 2025 stay orders (ECF Nos. 51, 90) and be limited to the Plaintiffs in this case.

## CONCLUSION

Defendants respectfully request that the Court grant their motion for summary judgment as to the ICE Defendants and grant their motion to dismiss as to the EOIR Defendants.

Dated: July 10, 2026
      New York, New York

                      JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By:      */s/ Tomoko Onozawa*
JEFFREY S. OESTERICHER
TOMOKO ONOZAWA
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:   (212) 637-2695/2721
Email: jeffrey.oestericher@usdoj.gov
        tomoko.onozawa@usdoj.gov

11

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the undersigned hereby certifies that, measured by the word processing program used to prepare this brief, this brief complies with the word-count limitation of the rule, which is a maximum of 3,500.  Excluding the caption, table of contents, table of authorities, signature blocks, or any required certificates, but including material contained in footnotes or endnotes, there are 3,499 words in this brief.

Dated: New York, New York
       July 10, 2026

                                       _____*/s/ Tomoko Onozawa*_____
                                       TOMOKO ONOZAWA
                                       Assistant United States Attorney