UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

AFRICAN COMMUNITIES TOGETHER and
THE DOOR,

                    Plaintiffs,

                                                            25-cv-6366 (PKC)

        -against-                                           ORDER

TODD LYONS, in his official capacity
as Acting Director, U.S. Immigration
and Customs Enforcement, et al.,

                    Defendants.

----------------------------------------------------------------x

CASTEL, U.S.D.J.

        On May 18, 2026, the Court granted a stay of the January 21, 2025 interim

guidance and the May 27, 2025 final guidance of the then-Acting Directors of ICE insofar as

they rescinded the interim guidance issued on April 27, 2021 (the "April 2021 Policy") as

applied to immigration courthouses in Manhattan.  The Court's ruling effectively reinstated the

April 2021 Policy as the operative policy governing arrests in or near immigration courts.

        On June 29, 2026, counsel for plaintiffs wrote to the Court to advise that plaintiffs

had become aware of five courthouse arrests in Manhattan immigration courts since the May 18

Order.  Plaintiffs sought to conduct discovery on the training, guidance, and criteria used by ICE

in effectuating any arrests, as well as the circumstances of each arrest.  (ECF 100 at 2.)  This

Order addresses that application.

The reinstated April 2021 Policy provides in part:

A civil immigration enforcement action may be taken in or near a courthouse if . . . it involves hot pursuit of an individual who poses a threat to public safety . . . .

In the absence of hot pursuit, a civil immigration enforcement action also may be taken in or near a courthouse against an individual who poses a threat to public safety if: (1) it is necessary to take the action in or near the courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the enforcement action at such a location, and (2) the action has been approved in advance by a Field Office Director . . . .

(ECF 24-1 at 3.)

In response to the plaintiffs' application, the government has submitted the declaration of an Acting Supervisory Detention and Deportation Officer ("SDDO") of ICE. (ECF 104-1.)  The SDDO states that since notification of the Order on May 19, the "Enforcement and Removal Operations" division of ICE has followed the April 2021 Policy.  He asserts that to ensure compliance with the April 2021 Policy, ICE personnel review the biographical information of an individual and conduct a check of National Crime Information Center records, the digital record of arrest and prosecutions from the New York Integrated Justice Portal, and United States Citizenship and Immigration Services databases to preliminarily ascertain whether the individual poses a threat to public safety.  If the "potential target alien" is considered to pose a threat to public safety, then the SDDO refers the case to the Office of the Principal Legal Advisor for a legal sufficiency review.  If the proposed arrest passes the legal sufficiency review, it is referred to the Field Office Director for approval of the arrest.  The declaration is unclear but could be read to convey that ICE categorically concludes that immigration courts are the safest feasible arrest location for a person determined to present a threat to public safety because the public "is screened for prohibited items" upon entering the

building.  Before the arrest takes place the SDDO executes a so-called I-200 warrant, and the arrest is effectuated pursuant to that warrant.

Plaintiffs' reply asserts that defendants' response establishes the need for discovery because it omits a description of "what, if any, criteria, guidance, or training documents ICE officers . . . use or reference . . . ."  (ECF 105 at 1.)  The creation of such materials, however, was not required by the Court's May 18 Order.  Because it was simply reinstating a prior policy, the May 18 Order was effective upon issuance with no grace or transition period for issuance of further explanatory documents or training.

While the plaintiffs have asserted that five arrests have occurred since the May 18 Order, they also note that "[t]he first three individuals arrested were released shortly following their arrests."  (ECF 100 at 3.)  Presumably the two other arrests are of individuals who are identified by plaintiffs in their letter as having brought their own habeas petitions in this Court.  (Id. at 1–2.)  See Lopez v. Genalo et al., 26-cv-5394 (JHR); Batista v. Genalo et al., 26-cv-5408 (MKV).  While each of these actions challenge the lawfulness of the arrest, each also challenges the lawfulness of detention without a bond hearing, regardless of the place of arrest.

None of the arrestees are members or clients of the only party in this action with standing, plaintiff The Door.  The Door's standing at this juncture is "organizational" in nature, vindicating any injury to it, and not "representative," vindicating any injury to its members.  (Opinion and Order of Sept. 12, 2025, ECF 51 at 13–20.)  The discovery The Door seeks is, in essence, a full investigation as to the manner or circumstance of "any and all arrests approved or executed at the New York City immigration courts since the Court's Stay Order."  (ECF 105 at 2; see ECF 100 at 3 (we "believe that the requested expedited discovery is necessary to gain timely information, determine *whether enforcement action is warranted*, and craft remedial solutions to

these apparent violations of the Court's order." (emphasis added)); id. at 3–4 (it "is the most reliable and efficient way to determine the facts of these arrests and advise the Court about *whether or not ICE is complying with the Court's order*." (emphasis added)).) To the extent that plaintiffs seek to discover whether there have been any violations of the May 18 Order, their application is overbroad.

There is, however, one area of concern for which the Court will require a detailed response by defendants. Simply put, the April 2021 Policy, as written, does not permit the arrest of any person who poses a threat to public safety at or near an immigration court. It requires a determination of the non-existence of an alternative safe place or a determination that it would be "too difficult to achieve" the arrest at the alternative location. As noted, it is not clear from the declaration of the SDDO that ICE makes an individualized determination of whether "it is necessary to take the action [i.e., the arrest] in or near the courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the enforcement action at such a location . . . ." (ECF 24-1 at 3.) The Court will require defendants to file a declaration setting forth their practices, identifying and explaining any deviation from the April 2021 Policy and setting forth any corrective action taken.

The defendants shall file the declaration described in the preceding paragraph within fourteen (14) days of this Order. At this juncture, plaintiffs have not made a showing that the sweeping discovery they seek is warranted. The letter application to conduct discovery beyond that required by this Order is DENIED without prejudice.

The Clerk is respectfully requested to terminate the letter motion at ECF 100.

- 4 -

- 5 -

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 16, 2026