# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AFRICAN COMMUNITIES TOGETHER and THE DOOR,<br><br>                            Plaintiffs,<br><br>      -against-<br><br>DAVID VENTURELLA in his official capacity as Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, in his official capacity as Secretary of the United States Department of Homeland Security; DAREN K. MARGOLIN, in his official capacity as Director, Executive Office of Immigration Review; and TODD BLANCHE, in his official capacity as Acting Attorney General, U.S. Department of Justice,<br><br>                        Defendants. | No. 25-cv-6366 (PKC)<br><br>DECLARATION OF ACTING ASSISTANT FIELD OFFICE DIRECTOR VANESSA COLLADO |

Pursuant to 28 U.S.C. § 1746, I, Vanessa Collado, hereby declare under penalty of perjury that the following is true and correct:

1.     I am an Acting Assistant Field Office Director ("AFOD") for the New York field office of Enforcement and Removal Operations ("ERO"), U.S. Immigration and Customs Enforcement ("ICE"), within the U.S. Department of Homeland Security ("DHS"). I have served in the capacity as an Acting AFOD since January 2026. As an Acting AFOD, I manage Deportation Officers and Supervisory Detention and Deportation Officers in the non-detained case management unit located at 26 Federal Plaza, New York, New York. I am familiar with certain DHS procedures relating to the processing and detention of aliens.

2.     As an Acting AFOD, I have access to ICE's records maintained in the ordinary course of business as a regular practice, prepared contemporaneously or shortly thereafter the

recorded events, by someone with knowledge of the events recorded therein. The following representations are based on my review of DHS electronic records and databases and consultation with my colleagues.

3.      The April 27, 2021 memo jointly issued by ICE and Customs and Border Protection, *Civil Immigration Enforcement Actions in or near Courthouses* ("April 2021 Memo"), states that "in the absence of hot pursuit, a civil immigration enforcement action also may be taken in or near a courthouse against an individual who poses a threat to public safety if: (1) it is necessary to take the action in or near the courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the enforcement action at such a location, and (2) the action has been approved in advance by a Field Office Director, Special Agent in Charge, Chief Patrol Agent, or Port Director." Thus, the April 2021 Memo requires an assessment of a "safe alternative location for such action," which is defined in the memo as "one that is safe for DHS personnel, the subject of the enforcement action, and the public."

4.      In the previous five immigration hearing location arrests of illegal aliens deemed public safety threats by ERO and referenced in the declaration of Acting Supervisory Detention and Deportation Officer Roberto Rodriguez dated July 6, 2026 (ECF No. 104-1), ERO determined that the EOIR immigration courts were the safest locations to effectuate an arrest. ERO officers accordingly sought and obtained advance approval from the Field Office Director to effectuate the four arrests between  June 8, 2026 and  June 29, 2026, at 26 Federal Plaza and 290 Broadway. ERO did not obtain advance individualized approval from the Field Office Director for the arrest of V.C. on the morning of May 19, 2026 because they were operating under previously granted general approval from the Field Office Director to target criminal aliens for arrest in immigration court, and had not yet received guidance regarding additional approval requirements.

5.      There are many operational difficulties when attempting to effectuate a safe immigration arrest in New York City outside of an EOIR immigration court hearing location. State sanctuary laws, such as New York State's Protect Our Courts Act, eliminate state courthouses from consideration as safe alternative locations for immigration arrests. New York City's sanctuary laws create  a lack of cooperation and communication from much of the local law enforcement, thereby preventing ICE from arresting illegal aliens inside the safety of New York City correctional facilities or immediately upon release from a local jail; therefore, leaving ICE with limited alternatives

6.      Additionally, if an alien scheduled for an EOIR immigration court appearance is not subject to enhanced ERO supervision, such as enrollment in an Alternative to Detentions program with a GPS ankle monitor, ERO often lacks current contact information needed to identify and properly assess for safety an alternative arrest location. Furthermore, ERO often finds it challenging to obtain alien's information from local law enforcement in New York.

7.      In recent months, ERO has experienced substantial difficulty when conducting enforcement actions in public due to disruptive agitators and criminals who impede lawful immigration arrests or otherwise hinder ICE and DHS operations. For example, on July 21, 2026, the Department of Justice charged Andrew Arrabaca with felony arson after he allegedly set fire to the employee entrance of the Jacob K. Javits Federal Building at 26 Federal Plaza. Per the DOJ press release, "[Arrabaca]'s alleged acts appear to have been motivated by his anti-Government and anti-ICE beliefs."[1] As alleged in the criminal complaint, Arrabaca was arrested after traveling to 26 Federal Plaza with weapons and explosive devices, which included BB and pellet rifles, a

---

[1] U.S. Department of Justice, *New York Man Charged With Arson After Setting Fire At Entrance Of Federal Building* (July 21, 2026), https://www.justice.gov/usao-sdny/pr/new-york-man-charged-arson-after-setting-fire-entrance-federal-building.

machete, two hatchets, and a hammer. Following his arrest, Arrabaca stated that he had targeted the Javits building entrance because "it was a busy one."[2] This is just one example of an anti-ICE event inhibiting street arrests in the New York City area.

8.    Despite these challenges, as of July 28, 2026, and moving forward, ERO is conducting individualized assessments for safe alternative arrest locations pursuant to the April 2021 Memo. Prior to July 28, 2026, based on the challenges described above, ERO had been conducting EOIR immigration court arrests upon a determination that the EOIR immigration courts were the safest locations to arrest the illegal aliens.

9.    When a targeted alien has an upcoming EOIR immigration court date, ERO reviews known information about the alien to determine whether an alternative location for arrest exists, and if so, whether an enforcement action at that location is a viable safe alternative. Some factors ERO considers include, but are not limited to: the location of the alien's current residence and place of employment; the alien's criminal history, recorded encounters with law enforcement, and other derogatory information, such as known or suspected gang or terrorist activity or affiliation; the alien's history of noncompliance with immigration reporting requirements; access to weapons; and whether any New York State or local sanctuary laws limit  ICE enforcement actions at any potential alternative arrest location.

/

/

/

/

---

[2] *Id.*

I declare under penalty of perjury that the foregoing is true and correct.

Executed at New York, New York

On July 31, 2026

VANESSA COLLADO
Digitally signed by VANESSA COLLADO
Date: 2026.07.31 16:34:36 -04'00'

Vanessa Collado
Acting Assistant Field Office Director
Enforcement and Removal Operations
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security