EMERY CELLI BRINCKERHOFF ABADY WARD & MAAZEL LLP

October 14, 2026

***Via ECF***

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

*Re:* *African Communities Together v. Lyons*, No. 25 Civ. 6366 (PKC)

Dear Judge Castel:

Along with co-counsel, we represent Plaintiffs African Communities Together and The Door ("Plaintiffs") in the above-captioned action. We write to propose next steps in the case following the Court's Opinion and Order entered September 30, 2026, granting Plaintiffs' motion for summary judgment as to Count I and otherwise denying Plaintiffs' motion. ECF No. 110.

Plaintiffs respectfully renew their request for leave to conduct limited discovery, as described herein, in anticipation of filing a motion for sanctions relating to the government's misrepresentations to the Court that were first revealed on March 24, 2026. ECF No. 77. Plaintiffs propose to conduct this limited discovery over the next 60 days, and to file their motion for sanctions (if warranted) by December 18, 2026.

On Friday, October 9, 2026, Plaintiffs requested Defendants' position on our request to conduct the limited discovery proposed below, and on a proposed briefing schedule for any potential sanctions motion to follow such discovery. Defendants' counsel advised today that the government takes no position on Plaintiffs' request for discovery. The government requests 30 days to respond to any motion filed by Plaintiffs on December 18, 2026. Plaintiffs request 14 days for any reply.

***Background***

As the Court is aware, for the first seven months of this case, the government repeatedly represented to the Court that both the January 21, 2025 memorandum, titled *Interim Guidance: Civil Immigration Enforcement Actions in or Near Courthouses*, and the May 27, 2025 memorandum, titled *Civil Immigration Enforcement Actions in or Near Courthouses* dated May 27, 2025 (together, the "2025 Guidance") applied to civil immigration enforcement actions in or near Executive Office for Immigration Review immigration courts. *See, e.g.*, ECF No. 39 at 13, 23-24 (arguing that "the 2025 Courthouse Arrest Guidance memo which Plaintiffs seek to challenge (ECF No. 24-4) reflects ICE's balancing of several discretionary factors[]" and that the

Guidance addresses concerns about chilling access to immigration courts by "including provisions designed to ensure that enforcement actions within courthouses are conducted in an orderly, safe and non-disruptive manner").

The Court relied upon these misstatements in denying Plaintiffs' first motion for a stay of the policy, on September 12, 2025. *See* ECF No. 51 at 31 ("The guidance is not specific to immigration courthouses but has application to all courthouses.").

On March 24, 2026, the government abruptly reversed the position it had maintained throughout this case and disclaimed its earlier representations to the Court. Defense counsel filed a letter stating that their clients had made a "material mistaken statement of fact" to the Court, explaining (contrary to their earlier statements) that the 2025 Guidance did not and had never applied to arrests at immigration courts. *See* ECF No. 77 (letter from United States Attorney's Office advising the Court that ICE had informed counsel that day that it was now ICE's position that the 2025 Guidance did not and had never applied to arrests at or near immigration courts).

On March 26, 2026, following the government's disclosure, this Court issued an Order *sua sponte*: "The United States Attorney for this District is directed to take all necessary steps to cause the preservation until further Order of this Court of all communications between and among a member of the USAO staff and/or any defendant in this action or his or her predecessor, successor, subordinates or representatives, including the 'assigned ICE counsel.' Further the United States Attorney shall also inform the defendants in this action and their predecessors and successors in office, as well as the 'assigned ICE counsel,' that they are Ordered to preserve until further Order of this Court any internal or external communications concerning (1) the May 27, 2025 Memorandum from Acting Director Lyons; and/or (2) this action." ECF No. 80 (Order entered March 26, 2026).

On April 6, 2026, the parties wrote jointly to the Court regarding how they proposed to proceed in light of the government's disclosure, with Plaintiffs seeking leave to conduct discovery in aid of a sanctions motion and the parties providing an agreed-upon briefing schedule for that discovery motion. *See* ECF No. 81.

On April 15, 2026, the parties appeared before the Court for a scheduling conference at which time the Court addressed Plaintiffs' request to pursue discovery in anticipation of moving for sanctions, stating:

> I think, in truth and reality, the question of discovery and the question of sanctions is an important one. It's a very important one. But it is one that is going to come into plain view with greater clarity when I find out what the actual positions of the parties are on the merits. So that is something I am going to defer until I get to the summary judgment briefing on this. It's not going away. It's not going anywhere. But it's not timely now because conduct that hasn't occurred yet may be highly relevant to the sanctions motion. So that's why I see that as something that should be deferred until I know more about the positions of the parties.

Tr. of April 15, 2026 Proceedings at 18-19.

On May 18, 2026, with the benefit of additional briefing and the government's true position before it, the Court revised its earlier opinion and stayed the 2025 Guidance at three immigration courthouses located in Manhattan. *See* ECF No. 90. The Court determined that "defendants' concession that the 2025 ICE Courthouse Arrest Policies never applied to immigration courts warrants reexamination of the prior ruling, both to correct a clear error and prevent a manifest injustice." *Id.* at 4.

On September 30, 2026, the Court granted Plaintiffs' motion for summary judgment as to Count I, finding that the "2025 ICE Courthouse Arrest Policy purported to rescind the April 2021 Guidance that expressly applied to arrests in or near immigration courts but did not provide an acknowledgment of or reasoned explanation for the change in policy. It is therefore arbitrary and capricious." ECF No. 110 at 29. In that decision, the Court addressed the impact of Defendants' belated disclosure that the 2025 Guidance had never applied to arrests at or near immigration courthouses, and the fact that Defendants had, in consultation with ICE, "embraced a contrary opinion throughout the litigation." *Id.* at 6. The Court further stated that the government's "changed position resulted in the Court's issuance of the Second Stay Opinion staying enforcement of the 2025 ICE Courthouse Arrest Policy." *Id.* at 7.

***Plaintiffs Seek to Conduct Limited Discovery in Anticipation of Moving for Sanctions***

Plaintiffs seek to conduct the following limited discovery regarding Defendants' misrepresentations throughout the first seven months of this case, reserving the right to seek further relevant discovery should it be warranted. Plaintiffs propose to serve on Defendants the attached Request for Production of Documents, *see* Exhibit A, and to conduct depositions of the four government employees allegedly involved in or responsible for providing the material misstatements.[1]

It is important to identify and disclose the facts about the government's misrepresentations for a seven-month period to this Court, the parties, and the public, misrepresentations that substantively impacted the course of this litigation. The government's candor about the reasons for changing its policies and the lawfulness of those changes are of critical importance to the administration of justice. Plaintiffs propose limited, targeted discovery to gather these facts.

[1] Plaintiffs seek to depose: (1) the individual(s) at ICE who provided the information to the United States Attorney's Office ("USAO") that the 2025 ICE Guidance applied to immigration courthouse arrests. *See* ECF No. 77 ("The undersigned were specifically informed by ICE that the 2025 ICE Guidance applied to immigration courthouse arrests."); (2) the "counsel for ICE" who advised the USAO on March 24, 2026 that the 2025 ICE Guidance "does not and has never applied to civil immigration enforcement actions in or near Executive Office for Immigration Review ("EOIR") immigration courts." *Id.*; (3) "[T]he assigned ICE counsel" who approved "every brief in this case" and "any oral representations to the Court and Plaintiffs." *Id.*; and (4) Liana J. Castro, Assistant Director, Field Operations, Enforcement and Removal Operations, ICE (author of "Reminder" at ECF No. 77-1, as issued on March 19, 2026 ("This broadcast serves as a reminder that the May 27, 2025, Guidance does not apply to Executive Office for Immigration Review (Immigration) courts, regardless of their location.")).

Plaintiffs anticipate that the government may object to some of the requested discovery on the basis that it seeks privileged materials. Any purported privilege concerns can be addressed by the Court during the discovery period, and should, in any event, be minimal. The government has already disclosed the substance of some communications between ICE and counsel, *see* ECF No. 77, thereby waiving any privilege that might otherwise apply to other communications between ICE and counsel. *See, e.g.*, *In re von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (attorney's public statements about substance of communications with client waived privilege as to the non-public components of communications); *In re Symbol Techs., Inc. Sec. Litig.,* No. 05 Civ. 3923 (DRH) (AKT), 2017 WL 1233842, at *16-18 (E.D.N.Y. Mar. 31, 2017) (finding privilege waived when party partially disclosed the substance of privileged documents in court filing); *Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 945 F. Supp. 2d 431, 435-36 (S.D.N.Y. 2013) (finding attorney client privilege waived by Laotian government and ordering production of documents). Further, the government cannot claim privilege over communications designed to facilitate or conceal the commission of a fraud on the Court, *see, e.g.*, *United States v. Ceglia*, No. 12-CR-876 (VSB), 2015 WL 1499194, at *4-9 (S.D.N.Y. Mar. 30, 2015) (ordering disclosure of attorney-client communications that furthered defendants' fraudulent litigation tactic); *Thai-Lao Lignite (Thailand) Co*., 945 F. Supp. 2d at 434 (finding crime-fraud exception applied where privileged communications were made in furtherance of Laotian government's fraud on the court), which is precisely what occurred here when the government made misrepresentations to the Court, secured rulings in its favor based on those misrepresentations, and then later disavowed them.

If appropriate, following the close of this limited discovery period, Plaintiffs intend to move for sanctions based on the discovery conducted. Such sanctions would be sought under the Court's inherent powers to protect the administration of justice, among other potential avenues.

The Court's attention to this matter is appreciated.

Very truly yours,

*/s/ Katherine Rosenfeld*

Katherine Rosenfeld
Sam Shapiro

c. All counsel (via ECF)